# 14 CV 8988

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

                   :

NML CAPITAL, LTD.,

                  :

            Plaintiff,

                  :

         v.

                  :

THE REPUBLIC OF ARGENTINA,

                  :

          Defendant.

                  :

------------------------------------ X

RECEIVED NOV 12 2014 14 Civ. U.S.D.C. S.D.N.Y. CASHIERS

**COMPLAINT**

Plaintiff, NML Capital, Ltd., ("NML"), by its undersigned counsel, as and for its Complaint against Defendant Republic of Argentina ("Argentina"), alleges as follows:

## NATURE OF THE ACTION

1.    This is a breach of contract action based on certain bonds issued by Argentina and beneficially owned by NML ("NML's Bonds," as defined in paragraph 9 below). NML's Bonds were issued pursuant to a Fiscal Agency Agreement, dated October 19, 1994 (the "FAA") between Argentina and Bankers Trust Company, as Fiscal Agent. A true and correct copy of the FAA is annexed hereto as Exhibit A.

2.    Argentina has failed to make contractually-mandated principal and interest payment on NML's Bonds. For its relief, NML seeks payment of the principal amount of the bonds together with any accrued and unpaid interest, as provided for in the FAA.

3.    Argentina has also failed to comply with its obligations pursuant to the Equal Treatment Provision of the FAA, paragraph 1(c) of the FAA, which provides

for equal treatment in terms of rank and priority of payment for beneficial owners of bonds issued pursuant to the FAA with respect to any unsecured and unsubordinated External Indebtedness, as defined in the FAA (the "Equal Treatment Provision"). For its relief, NML seeks specific performance of Argentina's payment obligations pursuant to the Equal Treatment Provision of the FAA.

### THE PARTIES

4.   Plaintiff NML is a corporation organized and existing under the laws of the Cayman Islands.

5.   Defendant Republic of Argentina is a Foreign State as defined in 28 U.S.C. § 1603.

### JURISDICTION AND VENUE

6.   The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330, as Argentina is a Foreign State which has explicitly and unconditionally waived sovereign immunity with respect to actions arising out of the FAA by holders of bonds issued thereunder and is, therefore, not entitled to immunity under 28 U.S.C. §§ 1605-07 or under any applicable international agreement.

7.   In addition, Argentina consented in the FAA to submit to the jurisdiction of the Court in respect to actions arising out of the FAA or bonds issued thereunder. Pursuant to Section 22 of the FAA, Argentina appointed Banco de la Nación Argentina, 299 Park Avenue, New York, New York, 10171, as its authorized agent for service of process. Paragraph 23 of the FAA provides that the FAA shall be "governed by, and interpreted in accordance with, the laws of the State of New York."

2

8.    Venue is proper in this district by agreement of the parties and pursuant to 28 U.S.C. § 1391(f).

## FACTUAL ALLEGATIONS

9.    NML owns beneficial interests in certain Argentine bonds issued pursuant to the FAA—specifically, in 8.375% Bonds, 11% Bonds, 11-3/8% Bonds and 15.5% Bonds—as set forth below (collectively "NML's Bonds").

The 8.375% Global Bonds

10.    NML is the beneficial owner of $855,000 principal amount of 8.375% Global Bonds issued by the Republic of Argentina, ISIN No. US040114AH34 (the "8.375% Bonds").

11.    The 8.375% Bonds are a Series of Securities under the terms of the FAA.

12.    The 8.375% Bonds matured on December 20, 2003, at which time the entire principal amount of the 8.375% Bonds became due and payable.

The 11% Global Bonds

13.    NML is the beneficial owner of $1,535,000 principal amount of 11% Global Bonds issued by the Republic of Argentina, ISIN No. US040114AZ32 (the "11% Bonds").

14.    The 11% Bonds are a Series of Securities under the terms of the FAA.

15.    The 11% Bonds matured on December 4, 2005, at which time the entire principal amount of the 11% Bonds became due and payable.

The 11-3/8% Global Bonds

3

16.   NML is the beneficial owner of $1,008,000 principal amount of 11-3/8% Global Bonds issued by the Republic of Argentina, ISIN No. US040114AR16 (the "11-3/8% Bonds").

17.   The 11-3/8% Bonds are a Series of Securities under the terms of the FAA.

18.   The 11-3/8% Bonds were scheduled to mature on January 30, 2017, but as NML and other creditors made demand for payment of principal following Argentina's default, the entire principal amount of the 11-3/8% Bonds is due and payable.

The 15.5% Global Bonds

19.   NML is the beneficial owner of $151,745 principal amount of 15.5% Global Bonds issued by the Republic of Argentina, ISIN No. US040114GF14 (the "15.5% Bonds").

20.   The 15.5% Bonds are a Series of Securities under the terms of the FAA.

21.   The 15.5% Bonds were scheduled to mature on December 19, 2049, but as NML and other creditors made demand for payment of principal following Argentina's default, the entire principal amount of the 15.5% Bonds is due and payable.

The Republic of Argentina's Default

22.   Pursuant to Section 12 of the FAA, the following occurrences, among others, constitute Events of Default:

(a) Non-Payment:  the Republic fails to pay any principal amount of any of the Securities of such Series when due and payable or fails to pay any interest on any of the

4

Securities of such Series when due and payable and such failure continues for a period of 30 days; or

\*   \*   \*

(d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic.

Exhibit A ¶ 12.

23.     Upon the occurrence of an Event of Default described in Section 12(a) or 12(d) of the FAA, Section 12 further provides that each bondholder may, by notice in writing to the office of the Fiscal Agent, declare the principal amount of the bonds held by it to be due and payable immediately, together with all accrued and unpaid interest.

24.     On December 24, 2001, Argentina declared a moratorium on the payment of principal and interest with respect to all of its foreign debt.

25.     Since then, Argentina has failed to make payments of interest owed on the 8.375% Bonds, 11% Bonds, 11-3/8% Bonds or the 15.5% Bonds to NML.

<u>NML's Actions Against Argentina for Payment of Principal and Interest</u>

26.     Beginning in November 2003, NML brought a total of eleven actions against Argentina in this Court based on Argentina's failure to pay principal and interest on NML's Bonds.

27.     The Court has entered summary judgment or final judgment in eight of those actions, as follows:

a.     *NML Capital, Ltd v. The Republic of Argentina*, 03 Civ. 8845, was filed on November 7, 2003. Final Judgment in the amount of $284,184,632.30, plus post-judgment interest, was entered on January 10, 2007;

   b.  *NML Capital, Ltd v. The Republic of Argentina*, 05 Civ.

2434, was filed on February 28, 2005.  A Second Amended (final) Judgment in

the amount of $311,177,898, plus post-judgment interest, was entered on October

26, 2011;

   c.  *NML Capital, Ltd v. The Republic of Argentina*, 06 Civ.

6466, was filed on August 25, 2006.  An Amended (final) Judgment in the

amount of $533,378,361, plus post-judgment interest, was entered on June 15,

2009;

   d.  *NML Capital, Ltd v. The Republic of Argentina*, No. 07

Civ. 1910 (S.D.N.Y.), was filed on March 5, 2007.[1]  Summary Judgment was

granted for the principal amount, plus accrued interest, on April 10, 2008, and that

summary judgment order was modified on April 14, 2008;

   e.  *NML Capital, Ltd v. The Republic of Argentina*, 07 Civ.

2690, was filed on April 2, 2007.  An Amended (final) Judgment in the amount of

$148,781,936, plus post-judgment interest, was entered on June 15, 2009;

   f.  *NML Capital, Ltd v. The Republic of Argentina*, 07 Civ.

6563, was filed on July 20, 2007.  Summary Judgment was granted for the

principal amount, plus accrued interest, on April 10, 2008, and that summary

judgment order was modified  on April 14, 2008;

---

[1] Simultaneously with the filing of this Complaint, NML applied to Court for entry
of final judgments in *NML Capital, Ltd v. The Republic of Argentina*, 07 Civ.
1910, 07 Civ. 6563, and 08. Civ. 2541.

g.    *NML Capital, Ltd v. The Republic of Argentina*, N08 Civ. 2541, was filed on March 13, 2008. Summary Judgment was granted for the principal amount, plus accrued interest, on March 4, 2009, and that summary judgment order was modified on March 6, 2009;

h.    *NML Capital, Ltd v. The Republic of Argentina*, 08 Civ. 3302, was filed on April 2, 2008. An Amended (final) Judgment in the amount of $290,270,631, plus post-judgment interest, was entered on June 15, 2009.

28.    Argentina has made no voluntary payment to NML in connection with any of NML's Bonds.

The Republic of Argentina's Violations of the Equal Treatment Provision

29.    The FAA contains an Equal Treatment Provision that states:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic . . . . **The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).**

Exhibit A ¶ 1(c) (emphasis added).

30.    According to its plain language, the Equal Treatment Provision prohibits Argentina from making or attempting to make a payment to a holder of External Indebtedness without making a ratable payment to NML on NML's bonds.

31.    In 2001, Argentina declared a moratorium (the "Moratorium") on the bonds governed by the FAA (as well as on other bonds).

32.    Argentina has passed legislation each year renewing the Moratorium.

33.   In 2005, Argentina attempted to restructure its defaulted debt by offering a bond exchange to all holders of non-performing, including the bonds governed by the FAA (the "2005 Exchange").

34.   The Prospectus for the 2005 Exchange stated:

> Existing defaulted bonds eligible for exchange that are not tendered may remain in default indefinitely. . . . The Government has announced that it has no intention of resuming payment on any bonds eligible to participate in [the] exchange offer. . . . that are not tendered or otherwise restructured as part of such transaction. Consequently, if you elect not to tender your bonds in an exchange offer there can be no assurance that you will receive any future payments in respect to your bonds.

35.   Holders of approximately 25% of Argentina's non-performing bonds did not participate in the 2005 Exchange.

36.   NML did not participate in the 2005 Exchange.

37.   In 2005, Argentina began making semi-annual interest payments to holders of bonds issued in the 2005 Exchange (such bonds, the "2005 Exchange Bonds," and such holders, the "2005 Exchange Bondholders").

38.   Argentina paid all subsequent interest due on the 2005 Exchange Bonds until the payment that came due on June 30, 2014.  On June 26, 2014 Argentina attempted to initiate payment to certain holders of 2005 Exchange Bonds by transmitting funds to the Bank of New York Mellon ("BNY") as trustee.  By reason of Orders issued by the Court, BNY did not further transmit these funds to holders of the 2005 Exchange Bonds. *NML Capital, Ltd v. The Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

39.   Upon information and belief, Argentina intends to continue paying or attempting to pay interest on all 2005 Exchange Bonds as it becomes due.

40.   To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,017 (the "Lock Law") on February 9, 2005.  A true and correct copy of the Lock Law and a certified translation are annexed hereto as Exhibit B.

41.   In its January 28, 2010 Prospectus, Argentina explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation on the 2005 Debt Exchange, Congress subsequently passed Law 26,017, known as the "Lock Law."  The Lock Law prohibited the Executive Branch from reopening the 2005 Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange . . . .**

(emphasis added).

42.   Article 1 of the Lock Law provides that Bonds not tendered in the 2005 Exchange would be subject to the following provisions:

a.   Article 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

b.   Article 3 - The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

c.   Article 4 - The national Executive Power must— within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions— order the pertinent administrative acts and fulfill the

necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

Exhibit B.

43.   Argentina violated the Equal Treatment Provision of the FAA by lowering the rank of its payment obligations under NML's Bonds below that of other unsecured and unsubordinated External Indebtedness by relegating NML's Bonds to a non-paying class pursuant to the Lock Law.

44.   In 2009, in preparation for a new bond exchange that took place in 2010 (the "2010 Exchange"), the Argentine Senate and Chamber of Deputies passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange.  A true and correct copy of Law 26,547 and a certified translation are annexed hereto as Exhibit C.

45.   Law 26,547 provides:

   a.   Article 1.  The operation of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010, or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the public instruments covered by said law is completed, whichever occurs first.

   b.   Article 3.  The financial terms and conditions that may be offered may not be equal to or better than those offered to creditors in the debt restructuring established by Decree No. 1735/04.

   c.   Article 5. ... It is forbidden to offer to the holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings.

Exhibit C.

46.    The prospectus for Argentina's 2010 Exchange stated:

> Eligible Securities in default that are not exchanged pursuant to the Invitation may remain in default indefinitely.  In light of its financial and legal constraints, *Argentina does not expect to resume payments on any eligible Securities in default that remain outstanding following the expiration of the Invitation.*  Argentina has opposed vigorously, and intends to continue to oppose, attempts by holders who did not participate in its prior exchange offers to collect on its defaulted debt through . . . litigation . . .  and other legal proceedings against Argentina. Argentina remains subject to significant legal constraints regarding its defaulted debt. . . .
> Consequently, if you elect not to tender your Eligible Securities in default pursuant to the Invitation *there can be no assurance that you will receive any future payments or be able to collect through litigation in respect of your Eligible Securities in default.*

47.    NML did not participate in the 2010 Exchange (NML and other Argentine bond holders that participated in neither the 2005 Exchange nor the 2010 Exchange, the "Non-tendering Bondholders").

48.    Argentine courts have held that the Lock Law and the Moratorium prevent them from recognizing and enforcing Non-tendering Bondholders' New York judgments.

49.    Argentina violated the Equal Treatment Provision of the FAA by relegating NML's Bonds to a non-paying class pursuant to Law 26,517.

50.    In 2010, Argentina began making semi-annual interest payments to holders of bonds issued in the 2010 Exchange (such bonds, the "2010 Exchange Bonds," and such holders, the "2010 Exchange Bondholders.").

11

51.   Argentina paid all interest due on the 2010 Exchange Bonds until the payment due on June 30, 2014.  On June 26, 2014 Argentina attempted to initiate payment to certain holders of 2010 Exchange Bonds by transmitting funds to BNY as trustee.  By reason of Orders issued by the Court, BNY did not further transmit those funds to holders of the 2010 Exchange Bonds.  *NML Capital, Ltd v. The Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

52.   Upon information and belief, Argentina intends to continue paying or attempting to pay interest on all 2010 Exchange Bonds as it becomes due.

53.   Upon information and belief, without an order of the Court, Argentina will continue to pay or attempting to pay the 2005 and 2010 Exchange Bondholders while paying nothing to NML in violation of the Equal Treatment Provision.

54.   NML has been damaged as a result of Argentina's violations and will continue to be damaged by the continuing violations of the Equal Treatment Provision.

55.   In October 2010, NML sought specific performance of the Equal Treatment Provision in three pre-judgment cases.[2]

56.   On December 7, 2011, the Court held that Argentina's actions, as described in paragraphs 31-54, *supra*, violated the Equal Treatment Provision of the FAA and granted partial summary judgment to NML on claims for specific performance of the

---

[2]    *NML Capital, Ltd v. The Republic of Argentina* 08 Civ. 6978, 09 Civ. 1707, 09 Civ. 1708 ("Pre-judgment Cases").

Equal Treatment Provision. A true and correct copy of the Court's December 7, 2011 Order is annexed hereto as Exhibit D.

57.   On February 23, 2012, the Court:

a.   held that NML had no adequate remedy at law and that, absent equitable relief, NML would suffer irreparable harm;

b.   held that the equities strongly supported injunctive relief;

c.   held that Argentina had the financial wherewithal to meet its payment obligations to NML in those cases; and

d.   issued an injunction to remedy Argentina's continuing violations of the Equal Treatment Provision, which required Argentina to specifically perform its obligations under the Equal Treatment Provision by making ratable payment to NML whenever it paid the 2005 or 2010 Exchange Bondholders the amounts due on their bonds.

A true and correct copy of the Court's February 23, 2012 Order is annexed hereto as Exhibit E.

58.   On October 26, 2012, the Second Circuit affirmed the Court's February 23, 2012 Order, but remanded the injunction for clarification. *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. Oct. 26, 2012) (ECF No. 442).

59.   Although the Second Circuit's judgment was not final, Argentina petitioned for a writ of certiorari to the United States Supreme Court on October 7, 2013. The petition was denied. *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 12-1494 (S. Ct. Oct. 7, 2013).

13

60.   On November 21, 2012, the Court issued an Amended Order requiring Argentina to specifically perform its obligations under the Equal Treatment Provision by making ratable payment to NML whenever it paid the 2005 and 2010 Exchange Bondholders the amounts due on their bonds.  A true and correct copy of the Court's November 21, 2012 Order (the "Amended February 23 Order") is annexed hereto as Exhibit F.

61.   In response to the Orders of the Court and the affirmances of the Second Circuit in NML's Pre-judgment Cases, Argentine officials, including President Kirchner, have repeatedly stated that Argentina has no intention of ever paying NML.

62.   For example, in November 2012, after the Second Circuit affirmed the February 23, 2012 Order and remanded the injunction for clarification, President Kirchner stated that Argentina was going to pay the Exchange Bonds, but "not one dollar to the 'vulture funds.'"

63.   During the oral argument of the appeal from the Court's Amended February 23 Order, Argentina's counsel told the Second Circuit Court of Appeals that Argentina would not voluntarily obey any order requiring ratable payment to NML.

64.   On August 23, 2013, the Second Circuit affirmed the Amended February 23 Order. *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. Aug. 23, 2012) (ECF No. 1001).

65.   Shortly thereafter, President Kirchner announced that Argentina would offer a new bond exchange that would replace the New York law-governed Exchange Bonds with new bonds governed by Argentine law and payable in Argentina.

14

This plan to evade the rulings of United States courts evidences Argentina's continuing intention not to fulfill its obligations pursuant to the Equal Treatment Provision.

66.    Argentina subsequently filed another petition for a writ of certiorari, seeking review by the Supreme Court of the Second Circuit's affirmance of the Amended February 23 Order.  That petition was also denied.  *Exchange Bondholder Group v. NML Capital, Ltd., et al.*, No. 13-991 (S. Ct. June 16, 2014).

67.    After this second petition for writ of certiorari was denied, Argentina's Economy Minister Axel Kicillof announced a plan—nearly identical to the plan announced in August 2013 by President Kirchner—to evade the Court's Amended February 23 Order by swapping the Exchange Bonds for new bonds payable in Argentina and outside the Court's reach.

68.    On June 20, 2014, the Court promptly issued an Order ruling that Minister Kicillof's proposed bond swap was in violation of the Court's Orders.  A true and correct copy of the Court's June 20, 2014 Order is annexed hereto as Exhibit G.

69.    Six days later, on June 26, 2014, Argentina attempted to initiate payment to certain holders of the Exchange Bonds by transmitting funds to BNY as trustee, without making ratable payment to NML.

70.    On August 6, 2014, the Court issued an Order finding that the June 26, 2014 payment by Argentina to BNY was illegal and in violation of the Court's previous Orders.  A true and correct copy of the Court's August 6, 2014 Order is annexed hereto as Exhibit H.

71.    Argentina's President Kirchner subsequently announced that Argentina would enact legislation to change the manner in which it makes payments on

the Exchange Bonds, such that BNY would be removed as trustee for certain Exchange Bonds and all Exchange Bonds would be paid from a single account in Argentina through a financial institution called *Nación Fideicomisos* that Argentina controls. Argentina has taken steps to carry out this plan. The "Legal Notice" published in The New York Times on September 22, 2014, is attached as Exhibit I hereto. These actions are another attempt by Argentina to evade the rulings of the Court and to flout its obligations under the Equal Treatment Provision.

72. As a result of these flagrant and unlawful activities, NML moved by order to show cause to hold Argentina in civil contempt of court. On September 29, 2014, the Court issued an Order holding Argentina in civil contempt; and on October 3, 2014, the Court issued an Amended and Supplemental Order regarding Argentina's civil contempt. A true and correct copy of the Court's September 29, 2014 Order is annexed hereto as Exhibit J, and a true and correct copy of the Court's October 3, 2014 Order is annexed hereto as Exhibit K.

73. As a result of the Orders of the Court, the doctrine of issue preclusion (also known as collateral estoppel) bars Argentina from denying (a) that it has not breached its contractual obligation to pay principal and interest on the Bonds, and (b) that both Argentina's issuance of higher-ranking bonds in the 2005 and 2010 Bond Exchanges and Argentina's continuing payments and attempts to pay the holders of these bonds—while paying nothing to NML—constitute violations of the Equal Treatment Provision of the FAA.

74. NML now seeks payment of the principal amount of NML's Bonds together with any accrued and unpaid interest and specific performance of the Equal

Treatment Provision in this case with respect to its beneficial holdings of bonds issued pursuant to the FAA.

## FIRST CLAIM FOR RELIEF
(For Breach of Contract on the 8.375% Bonds)

75.   NML repeats and realleges the allegations set forth in paragraphs 1 through 74 herein.

76.   The 8.375% Bonds matured on December 20, 2003, at which time the entire principal amount of the Bonds became due and payable.

77.   Argentina has failed to make any payments of principal or interest on the 8.375% Bonds to NML.

78.   By reason of the foregoing Argentina has breached its contractual obligations to NML, and Argentina is liable to NML for damages in amount to be determined at trial, but not less than $855,000, together with all accrued and unpaid interest due pursuant to the terms of the 8.375% Bonds and New York law.

## SECOND CLAIM FOR RELIEF
(For Breach of Contract on the 11% Bonds)

79.   NML repeats and realleges the allegations set forth in paragraphs 1 through 74 herein.

80.   The 11% Bonds matured on December 4, 2005, at which time the entire principal amount of the Bonds became due and payable.

81.   Argentina has failed to make any payments of principal or interest on the 11% Bonds to NML.

82.   By reason of the foregoing Argentina has breached its contractual obligations to NML, and Argentina is liable to NML for damages in amount to be

17

determined at trial, but not less than $1,535,000, together with all accrued and unpaid

interest due pursuant to the terms of the 11% Bonds and New York law.

## THIRD CLAIM FOR RELIEF
(For Breach of Contract on the 11-3/8% Bonds)

83.    NML repeats and realleges the allegations set forth in paragraphs 1

through 74 herein.

84.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a

moratorium and the non-payment of interest constitute Events of Default on the 11-3/8%

Bonds entitling NML to declare the principal amount of the 11-3/8% Bonds, together

with all accrued and unpaid interest, to be due and payable immediately.

85.    Argentina has been advised, by written notice to Argentina's Fiscal

Agent, that payment of the principal amount of the 11-3/8% Bonds together with any

accrued and unpaid interest is due and payable immediately.

86.    Argentina has failed to make any payments of principal or interest on

the 11-3/8% Bonds to NML.

87.    By reason of the foregoing Argentina has breached its contractual

obligations to NML, and Argentina is liable to NML for damages in amount to be

determined at trial, but not less than $1,008,000, together with all accrued and unpaid

interest due pursuant to the terms of the 11-3/8% Bonds and New York law.

## FOURTH CLAIM FOR RELIEF
(For Breach of Contract on the 15.5% Bonds)

88.    NML repeats and realleges the allegations set forth in paragraphs 1

through 74 herein.

18

89.   Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the non-payment of interest constitute Events of Default on the 15.5% Bonds entitling NML to declare the principal amount of the 15.5% Bonds, together with all accrued and unpaid interest, to be due and payable immediately.

90.   Argentina has been advised, by written notice to Argentina's Fiscal Agent, that payment of the principal amount of the 15.5% Bonds together with any accrued and unpaid interest is due and payable immediately.

91.   Argentina has failed to make any payments of principal or interest on the 15.5% Bonds to NML.

92.   By reason of the foregoing Argentina has breached its contractual obligations to NML, and Argentina is liable to NML for damages in amount to be determined at trial, but not less than $151,745, together with all accrued and unpaid interest due pursuant to the terms of the 15.5% Bonds and New York law.

## FIFTH CLAIM FOR RELIEF
(For Specific Enforcement of the Equal Treatment Provision)

93.   NML repeats and realleges the allegations set forth in paragraphs 1 through 74 above.

94.   Pursuant to ¶ 1(c) of the FAA (i.e. the Equal Treatment Provision), Argentina provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . ."

19

95.   Argentina, therefore, may not make or attempt to make any payment on its 2005 and 2010 Exchange Bonds without also making a ratable payment at the same time to NML on NML's beneficial interests in bonds issued pursuant to the FAA.

96.   Argentina has engaged in a course of conduct violative of the Equal Treatment Provision.

97.   Through the passage of Law 26,017 (i.e. the Lock Law), Argentina issued a new series of bonds with payment obligations that rank higher than those held by NML in violation of the Equal Treatment Provision.

98.   Through the passage of Law 26,547 Argentina issued a new series of bonds with payment obligations that rank higher than those held by NML in violation of the Equal Treatment Provision.

99.   The bonds issued in the 2005 Exchange and the 2010 Exchange are External Indebtedness.

100.  Argentina's legislative actions forbidding payment on non-tendered bonds violate the Equal Treatment Provision

101.  Argentina's past payments of interest to 2005 Exchange Bondholders, while paying nothing to NML, violated the Equal Treatment Provision.

102.  Argentina's continuing payments of interest or attempts to pay interest to 2005 Exchange Bondholders without ratable payment to NML will be further and continuing violations of the Equal Treatment Provision.

103.  Argentina's past payments of the scheduled interest to 2010 Exchange Bondholders, while paying nothing to NML, violated the Equal Treatment Provision.

104. Argentina's continuing payments of interest or attempts to pay interest to 2010 Exchange Bondholders without ratable payment to NML will be further and continuing violations of the Equal Treatment Provision.

105. NML has suffered irreparable injury from Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces the Equal Treatment Provision with a mandatory injunction requiring Argentina to pay NML ratably whenever it pays or attempts to pay interest to 2005 or 2010 Exchange Bondholders.

106. Remedies available at law are inadequate to compensate NML for such injury.

107. NML has performed its part of the contract with Argentina.

108. Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

109. The balance of the equities tips toward the issuance of an injunction.

110. The public interest would not be disserved by a permanent injunction.

WHEREFORE, Plaintiff NML demands judgment against the Republic of Argentina, as follows:

a. On the First Claim for Relief, awarding Plaintiff NML a money judgment in an amount to be determined at trial, but not less than $855,000, together with all accrued and unpaid interest due pursuant to the terms of the 8.375% Bonds and New York law.

b.      On the Second Claim for Relief, awarding Plaintiff NML a money judgment in an amount to be determined at trial, but not less than $1,535,000, together with all accrued and unpaid interest due pursuant to the terms of the 11% Bonds and New York law.

c.      On the Third Claim for Relief, awarding Plaintiff NML a money judgment in an amount to be determined at trial, but not less than $1,008,000, together with all accrued and unpaid interest due pursuant to the terms of the 11-3/8% Bonds and New York law.

d.      On the Fourth Claim for Relief, awarding Plaintiff NML a money judgment in an amount to be determined at trial, but not less than $151,745, together with all accrued and unpaid interest due pursuant to the terms of the 15.5% Bonds and New York law.

e.      On the Fifth Claim for Relief, an Order specifically enforcing the Equal Treatment Provision, by requiring ratable payment to NML whenever Argentina makes or attempts to make payments on the 2005 and 2010 Exchange Bonds.

f.    Awarding Plaintiff NML its costs, attorneys' fees and such other

and further relief as the Court shall deem just and proper.

Dated: New York, New York
       November 12, 2014

DECHERT LLP

By: _____
Robert A. Cohen
(robert.cohen@dechert.com)
Dennis H. Hranitzky
(dennis.hranitzky@dechert.com)
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone (212) 698-3500
Facsimile (212) 698-3599
*Attorneys for Plaintiff NML Capital,
Ltd.*

# EXHIBIT A

File No.33-83954 Exhibit B
Rule 424(b)(4)

RECD S.E.C.

OCT 2 4 1994

016

# FISCAL AGENCY AGREEMENT

between

# THE REPUBLIC OF ARGENTINA

and

# BANKERS TRUST COMPANY, Fiscal Agent

Dated as of October 19, 1994

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| 1. | Securities Issuable in Series . . . . . . . . . . . . . . | 1 |
| 2. | Appointment of Fiscal Agent; Paying Agents . . . . . . . . | 3 |
| 3. | Authentication . . . . . . . . . . . . . . . . . . . . . | 3 |
| 4. | Registration, Transfers and Exchanges . . . . . . . . . . | 4 |
| 5. | Global Securities . . . . . . . . . . . . . . . . . . . . | 6 |
| 6. | Payment . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| 7. | Additional Amounts . . . . . . . . . . . . . . . . . . . | 11 |
| 8. | Mutilated, Destroyed, Stolen or Lost Certificates . . . . | 11 |
| 9. | Redemption and Purchases . . . . . . . . . . . . . . . . | 12 |
| 10. | Cancellation and Destruction . . . . . . . . . . . . . . | 14 |
| 11. | Negative Pledge and Covenants . . . . . . . . . . . . . . | 14 |
| 12. | Default; Acceleration of Maturity . . . . . . . . . . . . | 17 |
| 13. | Limit on Liability; Acceptance of Appointment . . . . . . | 19 |
| 14. | Expenses and Indemnity . . . . . . . . . . . . . . . . . | 20 |
| 15. | Successor Fiscal Agent . . . . . . . . . . . . . . . . . | 20 |
| 16. | Meetings of Holders of Securities; Modifications . . . . . | 22 |
| 17. | Further Issues . . . . . . . . . . . . . . . . . . . . . | 26 |
| 18. | Reports . . . . . . . . . . . . . . . . . . . . . . . . | 26 |
| 19. | Forwarding of Notice; Inquiries . . . . . . . . . . . . . | 27 |
| 20. | Listings . . . . . . . . . . . . . . . . . . . . . . . . | 27 |
| 21. | Notices . . . . . . . . . . . . . . . . . . . . . . . . | 27 |
| 22. | Consent to Service; Jurisdiction . . . . . . . . . . . . | 28 |
| 23. | Governing Law and Counterparts . . . . . . . . . . . . . | 29 |

-i-

2

                                                           Page

24.  Headings . . . . . . . . . . . . . . . . . . . . . . .  29


    Exhibit A - Form of Registered Security

*3*

THE REPUBLIC OF ARGENTINA

FISCAL AGENCY AGREEMENT dated as of October 19, 1994, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1.    Securities Issuable in Series.  (a)  The Republic may issue its notes, securities, debentures or other evidences of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series").  The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement.  The text of the Securities of a Series delivered to the Fiscal Agent (as hereinafter defined) for authentication on original issuance pursuant to Section 3 of this Agreement shall establish (i) the specific designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series); (ii) any limit on the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or of the Securities of such Series); (iii) the price or prices (expressed as a percentage of the aggregate principal amount thereof) at which the Securities of such Series will be issued; (iv) the date or dates on which the principal and premium, if any, of the Securities of such Series is payable; (v) the rate or rates (which may be fixed or floating) per annum at which the Securities of such Series shall bear interest, if any, the date or dates from which such interest, if any, shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of holders of the Securities of such Series to whom interest is payable; (vi) the place or places where the principal of, and premium, if any, and interest on the Securities of such Series are payable; (vii) the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, in whole or in part, at the option of the Republic or otherwise; (viii) the obligation, if any, of the Republic to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions and the price or prices at which, the

period or periods within which, and the terms and conditions
upon which Securities of such Series shall be redeemed,
purchased or repaid, in whole or in part, pursuant to such
obligation; (ix) the minimum denomination and any multiples
thereof of the Securities of such Series, which may be in
U.S. dollars, another foreign currency, units of two or more
currencies or amounts determined by reference to an index;
(x) the currency or currencies in which the principal,
premium, if any, or interest on such Securities may be
payable; (xi) the manner in which the amount of payments of
principal, premium, if any, or interest on such Securities
is to be determined and if such determination is to be made
with reference to any index; (xii) any covenants or
agreements of the Republic and events which give rise to the
right of a holder of a Security of such Series to accelerate
the maturity of such Security other than such covenants,
agreements or events specified herein; and (xiii) any other
terms of the Securities of such Series.  Securities may be
issuable pursuant to warrants (if so provided in the text of
such Securities) and the Fiscal Agent may act as warrant
agent or in any similar capacity in connection therewith.

     (b)   The Securities of a Series are to be issued
in fully registered form only, without interest coupons, and
will be issuable in the denominations specified in the text
of the Securities of such Series, substantially in the form
of Exhibit A hereto ("registered Securities").  The
Securities of a Series may also have such additional
provisions, omissions, variations or substitutions as are
not inconsistent with the provisions of this Agreement, and
may have such letters, numbers or other marks of
identification and such legends or endorsements placed
thereon as may be required to comply with any law or with
any rules made pursuant thereto or with the rules of any
securities exchange or governmental agency or as may,
consistent herewith, be determined by the officials
executing such Securities, as evidenced by their execution
of such Securities.  All Securities of a particular Series
shall be otherwise substantially identical except as to
denomination and as provided herein.

     (c)   The Securities will constitute (except as
provided in Section 11 below) direct, unconditional,
unsecured and unsubordinated obligations of the Republic and
shall at all times rank pari passu and without any
preference among themselves.  The payment obligations of the
Republic under the Securities shall at all times rank at
least equally with all its other present and future
unsecured and unsubordinated External Indebtedness (as
defined in this Agreement).

2

2.   Appointment of Fiscal Agent; Paying Agents.
(a)  The Republic hereby appoints Bankers Trust Company, at present having its office at 4 Albany Street, New York, New York 10006 as fiscal agent, transfer agent, registrar and principal paying agent of the Republic for the Securities, upon the terms and conditions set forth herein.  Bankers Trust Company accepts such appointments, and along with its successors as such fiscal agent, is hereinafter referred to as the "Fiscal Agent".  The Republic reserves the right to appoint different fiscal agents for different series of securities.

(b)  The Republic may appoint one or more additional agents (hereinafter called a "Paying Agent" or the "Paying Agents") for the payment (subject to the applicable laws and regulations) of the applicable payment of principal, premium, if any, and interest or Additional Amounts (as defined in Section 7 hereof), if any, on the Securities at such place or places as the Republic may determine pursuant to an agreement (each, a "Paying Agency Agreement"); provided that the Republic will maintain at all times until no Security is outstanding a Paying Agent (who may be the Fiscal Agent) in the Borough of Manhattan, The City of New York.  The Republic will keep the Fiscal Agent informed as to the name, address, and telephone and facsimile numbers of each Paying Agent appointed by it and will notify the Fiscal Agent of the resignation of any Paying Agent.  The Fiscal Agent shall arrange with each Paying Agent for the payment, as provided herein, of the principal and interest or Additional Amounts, if any, on the Securities on terms previously approved in writing by the Republic (further references herein to principal and interest shall be deemed to also refer to any Additional Amounts).

3.   Authentication.  (a)  The Fiscal Agent shall, upon delivery of the Securities to it by the Republic, and a written order or orders to authenticate and deliver Securities in a stated aggregate principal amount, (i) authenticate and register not more than said aggregate principal amount of Securities and deliver them in accordance with the written order or orders of the Republic and (ii) thereafter authenticate and register Securities and deliver them in accordance with the provisions of Sections 4, 5 and 9 of this Agreement.  The total principal amount of the Securities to be issued and outstanding at any time shall not be limited hereby.

(b)  The Fiscal Agent may, with the prior written consent of the Republic, appoint by an instrument or instruments in writing one or more agents (which may include

3

6

itself) for the authentication of Securities of a Series
and, with such consent, vary or terminate any such
appointment upon written notice and approve any change in
the office through which any authenticating agent acts. The
Republic (by written notice to the Fiscal Agent and the
authenticating agent whose appointment is to be terminated)
may also terminate any such appointment at any time. The
Fiscal Agent hereby agrees to solicit written acceptances
from the entities concerned (in form and substance
satisfactory to the Republic) of such appointments. In its
acceptance of such appointment, each such authenticating
agent shall agree to act as an authenticating agent pursuant
to the terms and conditions of this Agreement.

            (c)   Until definitive Securities of a Series are
prepared, the Republic may execute, and there shall be
authenticated and delivered in accordance with the
provisions hereof (in lieu of definitive Securities of such
Series), temporary Securities of such Series. Such
temporary Securities of a Series shall be subject to the
same limitations and conditions and entitled to the same
rights and benefits as definitive Securities of such Series,
except as provided herein or therein. Temporary Securities
of a Series shall be exchangeable for definitive Securities
of such Series when such definitive Securities are available
for delivery; and upon the surrender for exchange of such
temporary Securities of a Series, the Republic shall execute
and there shall be authenticated and delivered, in
accordance with the provisions of Sections 3 and 4 hereof,
in exchange for such temporary Securities of a Series, a
like aggregate principal amount of definitive Securities of
such Series and of like tenor. The Republic shall pay all
charges, including (without limitation) stamp and other
taxes and governmental charges, incident to any exchange of
temporary Securities for definitive Securities. All
temporary Securities shall be identified as such and shall
describe the right of the holder thereof to effect an
exchange for definitive Securities and the manner in which
such an exchange may be effected.

            4.   Registration, Transfers and Exchanges. (a)
The Fiscal Agent, as agent of the Republic for such purpose,
will at all times keep at the office of the Fiscal Agent in
the Borough of Manhattan, The City of New York, a register
or registers for the registration and registration of
transfers and exchanges of Securities, in which shall be
entered the names and addresses of the registered holders of
Securities and the particulars of the Securities held by
such registered holders. Subject to Section 5 hereof, upon
surrender for transfer of any Security of any Series at said
office, the Fiscal Agent shall authenticate, register and

deliver in the name of the transferee or transferees a new Security or Securities of any Series for a like aggregate principal amount. Subject to Section 5 hereof, upon surrender of any Security at said office for exchange, the Fiscal Agent shall authenticate, register and deliver in exchange for such Security a new Security or new Securities of the appropriate authorized denomination(s) and for a like aggregate principal amount in accordance with the provisions of the Securities.

(b)   All new Securities authenticated and delivered by the Fiscal Agent upon registration of transfer or in exchange for Securities of other denominations shall be so dated that neither gain nor loss of interest shall result from such registration of transfer or exchange.

(c)   All Securities presented or surrendered for registration of transfer, exchange or payment shall be accompanied by a written instrument or instruments of transfer in form satisfactory to the Fiscal Agent, duly executed by the registered holder or its attorney duly authorized in writing and with the signatures thereon duly guaranteed by a commercial bank or trust company having its principal office in The City of New York or by a member of the New York Stock Exchange.

(d)   The Fiscal Agent shall not impose any service charge on the registered holder on any such registration, transfer or exchange of Securities; however, the Republic may require of the party requesting such transfer or exchange, as a condition precedent to the exercise of any right of transfer or exchange contained in this Agreement or in the Securities, the payment of a sum sufficient to cover any stamp or other tax or other governmental charge payable in connection therewith.

(e)   The Republic, the Fiscal Agent and any Paying Agent may treat the person in whose name any Security is registered as the owner of such Security for the purpose of receiving payment of principal of and interest on such Security, and all other purposes whatsoever, whether or not such Security be overdue, and none of the Republic, the Fiscal Agent or any Paying Agent shall be affected by any notice to the contrary and any such payment shall be a good and sufficient discharge to the Republic, the Fiscal Agent and any Paying Agent for the amount so paid.

(f)   The Fiscal Agent shall not be required to register any transfer or exchange of Securities during the period from the Regular Record Date (as defined in such Securities) to the Interest Payment Date (as defined in such

5

Securities) and for the purposes of any interest payment made in accordance with Section 6 hereof, such payment shall be made to those persons in whose names the Securities are registered on such Regular Record Date.

5.  **Global Securities.**  The Securities of any Series may be issued in whole or in part in the form of one or more global securities ("Global Securities") that will be deposited with, or on behalf of, a depositary (the "Depositary") relating to such Series.  Global Securities may be issued only in fully registered form and in either temporary or definitive form.  Unless and until it is exchanged in whole or in part for Securities in definitive form, a Global Security may not be transferred except as a whole by the Depositary for such Global Security to a nominee of such Depositary or by a nominee of such Depositary to such Depositary or another nominee of such Depositary or by such Depositary or any nominee of such Depositary to a successor Depositary or any nominee of such successor.

Upon the issuance of a Global Security, the Depositary for such Global Security will credit on its book-entry registration and transfer system the respective principal amounts of the Securities represented by such Global Security to the accounts of Persons that have accounts with such Depositary ("Participants").  The accounts to be credited shall be designated by the agents or underwriters with respect to such Securities or by the Republic if such Securities are offered and sold directly by the Republic.  Ownership of beneficial interests in a Global Security will be limited to Participants or Persons that may hold interests through Participants.  Ownership of beneficial interests in a Global Security will be shown on, and the transfer of that ownership will be effected only through, records maintained by the applicable Depositary (with respect to interests of Participants) and records of Participants (with respect to interests of Persons who hold through Participants).  Owners of beneficial interests in a Global Security (other than Participants) will not receive written confirmation from the applicable Depositary of their purchase.  Each beneficial owner is expected to receive written confirmation providing details of the transaction, as well as periodic statements of its holdings, from the Depositary (if such beneficial owner is a Participant) or from the Participant through which such beneficial owner entered into the transaction (if such beneficial owner is not a Participant).  The laws of some states require that certain purchasers of securities take physical delivery of such securities in definitive form.  Such limits and such

laws may impair the ability to own, pledge or transfer beneficial interests in a Global Security.

So long as the Depositary for a Global Security, or its nominee, is the registered owner of such Global Security, such Depositary or such nominee, as the case may be, will be considered the sole owner or holder of the Securities represented by such Global Security for all purposes under this Agreement.  Except as specified below or with respect to the terms of Securities of a Series, owners of beneficial interests in a Global Security will not be entitled to have any of the individual Securities represented by such Global Security registered in their names, and will not receive or be entitled to receive physical delivery of any such Securities in definitive form and will not be considered the owners or holders thereof under such Securities or this Agreement.  Accordingly, each Person owning a beneficial interest in a Global Security must rely on the procedures of the Depositary for such Global Security and, if such Person is not a Participant, on the procedures of the Participant through which such Person owns its interest, to exercise any rights of a holder under the Securities or this Agreement.  The Republic understands that under existing industry practices, if the Republic requests any action of holders, or an owner of a beneficial interest in such Global Security desires to take any action which a holder is entitled to take under the Fiscal Agency Agreement, the Depositary for such Global Security would authorize the Participants holding the relevant interests to take such action, and such Participants would authorize beneficial owners owning through such Participants to take such action or would otherwise act upon the instructions of beneficial owners holding through them.

Payments of principal of and any premium and any interest on Securities registered in the name of a Depositary or its nominee will be made to the Depositary or its nominee, as the case may be, as the holder of the Global Security representing such Securities.  None of the Republic, any Paying Agent or the Fiscal Agent, in its capacity as registrar for such Debt Securities, will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial interests.

The Republic expects that the Depositary for a series of Securities or its nominee, upon receipt of any payment of principal, premium or interest in respect of a Global Security representing such Securities will credit

7

Participants' accounts with payments in amounts proportionate to their respective beneficial interests in the principal amount of such Global Security as shown on the records of such Depositary.  The Republic also expects that payments by Participants to owners of beneficial interests in such Global Security held through such Participants will be governed by standing instructions and customary practices, as is now the case with securities held for the accounts of customers in bearer form or registered in "street name".  Such payments will be the responsibility of such Participants.

If at any time the Depositary notifies the Republic that it is unwilling or unable to continue as Depositary for the Securities, or if the Republic notifies the Depositary that it will no longer continue as Depositary for the Securities, or if at any time the Depositary ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depositary, the Republic shall appoint a successor Depositary with respect to such Securities.  If a successor Depositary for such Securities is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depositary notifies the Fiscal Agent or the Republic of the acceleration of the indebtedness under the Securities in accordance with the terms of the Securities, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series), in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

The Republic may at any time and in its sole discretion determine not to have any of the securities held in the form of Global Securities.  In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series, in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

Upon the exchange of the Global Securities for Securities in definitive registered form the Global Securities shall be canceled by the Fiscal Agent.

8

Securities in definitive registered form issued in exchange
for the Global Securities pursuant to this section shall be
registered in such names as the Depositary, pursuant to
instructions from its direct or indirect participants or
otherwise, shall instruct the Fiscal Agent or the Republic.
The Fiscal Agent shall deliver such Securities in definitive
registered form to or as directed by the persons in whose
names such definitive registered Securities are so
registered and will direct all payments to be made in
respect of such Securities in definitive registered form to
the registered holders thereof on or after such exchange
regardless of whether such exchange occurred after the
record date for such payment.

All Securities in definitive registered form,
issued upon the exchange of the Global Securities, shall be
valid obligations of the Republic, evidencing the same debt,
and entitled to the same benefits under this Agreement, as
the Global Securities surrendered upon such exchange.

6.    Payment.  (a)  The Republic will pay to the
Fiscal Agent, the amounts, at the times and for the purposes
set forth herein and in the text of the Securities of a
Series, not later than 1:00 p.m. New York City time to an
account to be specified by the Fiscal Agent, on the day on
which the same shall become due, all amounts to be paid on
the Securities of such Series as required by the terms of
the Securities, and the Republic hereby authorizes and
directs the Fiscal Agent, from the funds so paid to it, to
make payments in respect of the Securities in accordance
with their terms and the provisions set forth below.  If any
date for payment in respect of a Security is not a Business
Day, such payment shall be made on the next following
Business Day.  "Business Day" means a day on which banking
institutions in The City of New York and at the applicable
place of payment are not authorized or obligated by law or
executive order to be closed.  The Fiscal Agent shall
arrange directly with any Paying Agent who may have been
appointed pursuant to the provisions of Section 2 hereof for
the payment from funds so paid by the Republic of the
principal of (and premium, if any) and any interest on the
Securities of such Series as set forth herein and in the
text of said Securities.  Notwithstanding the foregoing,
where the terms of such Securities expressly so provide and
the Republic so notifies the Fiscal Agent the Republic may
provide directly a Paying Agent with funds for the payment
of the principal thereof and premium and interest, if any,
payable thereon under an agreement with respect to such
funds containing substantially the same terms and conditions
set forth in this Section; and the Fiscal Agent shall have

no responsibility with respect to any funds so provided by the Republic to any such Paying Agent.

(b)  All payments with respect to the Global Securities shall be made by the Fiscal Agent to the Depositary in accordance with the regular procedures established from time to time by the Depositary.

(c)  Payment of principal and premium, if any, in respect of Securities in definitive registered form issued pursuant hereto shall be made at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to this Agreement against surrender of such Securities. Any interest on Securities of a Series shall be paid, unless otherwise provided in the text of the Securities of such Series, to the persons in whose names such Securities are registered on the register maintained for such purposes at the close of business on the record dates designated in the text of the Securities of such Series. If so provided with respect to the Securities of a Series, payments of interest due prior to or on maturity may be made by forwarding by post or otherwise delivering a check to the registered addresses of registered holders of Securities, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Securities. Such check shall be made payable to the order of the registered holder or, in the case of joint registered holders, to the order of all such joint holders (failing instructions from them to the contrary) and shall be sent to the address of that one of such joint holders whose name stands first in the register as one of such joint holders. The Fiscal Agent shall mail or otherwise deliver such checks to the names and addresses of registered holders of Securities sufficiently in advance of the relevant due date for payment that receipt of such checks by registered holders on or before the due date is reasonably assured.

(d)  All money paid to the Fiscal Agent under Section 6(a) of this Agreement shall be held by it in a separate account from the moment when such money is received until the time of actual payment, in trust for the registered holders of Securities to be applied by the Fiscal Agent to payments due on the Securities at the time and in the manner provided for in this Agreement and the Securities. Any money deposited with the Fiscal Agent for the payment in respect of any Security remaining unclaimed for two years after such principal or interest shall have become due and payable shall be repaid to the Republic upon written request without interest, and the registered holder

10

of Security may thereafter look only to the Republic for any payment to which such holder may be entitled.

7. **Additional Amounts.** All payments of principal, premium, if any, and interest in respect of the Securities by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax (together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such additional amounts ("Additional Amounts") as will result in receipt by the holders of Securities of such amounts of principal, premium and interest as would have been received by them had no such withholding or deduction been required, except that no such Additional Amounts shall be payable with respect to any Security:

    (a) to a holder (or to a third party on behalf of a holder) where such holder is liable for such Taxes in respect of any Security by reason of his having some connection with the Republic other than the mere holding of such Security or the receipt of principal, premium or interest in respect thereof; or

    (b) presented for payment more than 30 days after the Relevant Date, as defined herein, except to the extent that the holder thereof would have been entitled to Additional Amounts on presenting the same for payment on the last day of such period of 30 days.

"Relevant Date" in respect of any Security means the date on which payment in respect thereof becomes due or (if the full amount of the money payable on such date has not been received by the Fiscal Agent on or prior to such due date) the date on which notice is duly given to the holders in the manner described in Section 21 below that such moneys have been so received and are available for payment. Any reference herein to "principal" and/or "interest" shall be deemed to include any Additional Amounts which may be payable under the Securities.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

11

8.  **Mutilated, Destroyed, Stolen or Lost Certificates.** (a)  In case any Security certificate is mutilated, defaced, destroyed, stolen or lost, application for replacement shall be made to the Fiscal Agent who shall promptly transmit such application to the Republic.  Such application shall be accompanied by the mutilated or defaced certificate or receipt of proof, satisfactory to the Republic in its discretion, of the destruction, theft or loss of the certificate, and upon receipt by it of an indemnity satisfactory to the Republic and the Fiscal Agent, the Republic shall execute a new certificate of like tenor, and upon written instructions from the Republic the Fiscal Agent shall thereupon cancel the mutilated or defaced certificate if applicable and authenticate, register and deliver such new certificates in exchange for the mutilated or defaced certificate or in substitution for the destroyed, stolen or lost certificate.  Such new certificate will be so dated that neither gain nor loss in interest will result from such exchange or substitution.  All expenses associated with procuring such indemnity and with the preparation, authentication and delivery of a new certificate will be borne by the registered holder of the mutilated, defaced, destroyed, stolen or lost certificate.

(b)  Whenever any Security, alleged to have been lost, stolen or destroyed in replacement for which a new Security has been issued, is presented to the Fiscal Agent or any Paying Agent for payment at maturity or at redemption or for registration of transfer or exchange, the Fiscal Agent or the Paying Agent, as the case may be, shall immediately notify the Republic in respect thereof and shall deal with such Security in accordance with the Republic's instructions.

9.  **Redemption and Purchases.**  (a)  Unless otherwise permitted by the terms of the Securities of a Series, Securities will not be redeemable prior to maturity at the option of the Republic or the registered holders thereof.

(b)  The Republic hereby authorizes and directs the Fiscal Agent to administer the sinking fund with respect to the Securities of any Series having a mandatory sinking fund or similar provision in accordance with the provisions set forth in the terms of the Securities of such Series.  If the provisions of the Securities of a Series permit the Republic to redeem Securities of such Series at its option, then the Republic shall, unless otherwise provided in the terms of the Securities of such Series, give written notice to the Fiscal Agent of the principal amount of Securities of such Series to be so redeemed not less than 60 days prior to

the optional redemption date. If the provisions of the Securities of a Series permit the Republic to redeem Securities of such Series only upon the occurrence or satisfaction of a condition or conditions precedent thereto, then prior to the giving of notice of redemption of the Securities of such Series, the Republic shall deliver to the Fiscal Agent a certificate stating that the Republic is entitled to effect such redemption and setting forth in reasonable detail a statement of facts showing that such condition or conditions precedent have occurred or been satisfied. If the provisions of the Securities of a Series obligate the Republic at the request of the holders to redeem Securities of such Series upon the occurrence of certain events (each hereinafter referred to as a "Redemption Event"), then the Republic shall promptly deliver written notice to the Fiscal Agent that a Redemption Event has occurred. Promptly after receiving written notice of a Redemption Event, the Fiscal Agent shall deliver written notice to each holder of the Securities of such Series stating that a Redemption Event has occurred and that such holder may tender its Securities by delivering written notice of its election to tender for redemption, together with the certificate or certificates for the Securities to be redeemed, to the Fiscal Agent within 60 days of the Fiscal Agent's notice (hereinafter referred to as the "Option Period"). Thereafter, the Republic shall (i) in the manner provided in the provisions of the Securities of such Series and as contemplated by Section 6 hereof, arrange with the Fiscal Agent (and each Paying Agent for the purpose, if applicable) for the provision of funds sufficient to make payments to such holders in respect of such redemptions, and (ii) redeem such Securities within 60 days of the expiration of the Option Period. The Fiscal Agent shall provide the Republic from time to time during and upon expiration of the Option Period with reasonable detailed information as to Securities tendered for redemption.

All notices of redemption of or Redemption Events relating to Securities of a Series to the holders thereof shall be made in the name and at the expense of the Republic and shall be given in accordance with the provisions applicable thereto set forth in the terms of the Securities of such Series.

Whenever less than all the Securities of a Series with the same interest rate and maturity at any time outstanding are to be redeemed at the option of the Republic, the particular Securities of such Series with such interest rate and maturity to be redeemed shall be selected not more than 60 days prior to the redemption date by the Fiscal Agent from the outstanding Securities of such Series

not previously called for redemption by such usual method as
the Fiscal Agent shall deem fair and appropriate, which
method may provide for the selection for redemption of
portions of the principal amount of registered Securities of
such Series the minimum denominations of which, if any, will
be specified in the terms of the Securities of such Series.
Upon any partial redemption of a registered Security of a
Series, the Fiscal Agent shall authenticate and deliver in
exchange therefor one or more registered Securities of such
Series, of any authorized denomination and like tenor as
requested by the holder thereof, in aggregate principal
amount equal to the unredeemed portion of the principal of
such Security.

(c)  The Republic may at any time purchase
Securities at any price in the open market or otherwise,
provided that in any such case such purchase or purchases
are in compliance with all relevant laws, regulations and
directives.  Securities so purchased by the Republic, may,
at the Republic's discretion, be held, resold or surrendered
to the Fiscal Agent for cancellation.  The Securities so
purchased, while held by or on behalf or for the benefit of
the Republic shall not entitle the registered holder thereof
to vote at any meetings of registered holders of Securities
and shall not be deemed to be outstanding for the purposes
of calculating quorums at meetings of the registered holders
of the Securities.  Notwithstanding the foregoing, the
Republic will not acquire any beneficial interest in any
Securities unless it gives prior written notice of each
acquisition to the Fiscal Agent.  The Fiscal Agent will be
entitled to rely without further investigation on any such
notification (or lack thereof).

(d)  If the Republic elects to cancel any
Securities when Securities have been issued in the form of a
Global Security, it may request the Fiscal Agent to instruct
the Depositary to reduce the outstanding aggregate principal
amount of the Global Securities in accordance with the
regular procedures of the Depositary in effect at such time.

10.  Cancellation and Destruction.  All Securities
which are paid at maturity or upon earlier repurchase, or
are mutilated, defaced or surrendered in exchange for other
certificates, shall be cancelled by the Fiscal Agent who
shall register such cancellation.  The Fiscal Agent shall,
as soon as practicable after the date of any such
cancellation, furnish the Republic with a certificate or
certificates stating the serial numbers and total number of
Securities that have been cancelled.  The Fiscal Agent shall
destroy all cancelled Securities in accordance with the
instructions of the Republic and shall furnish to the

14

*17*

Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all Securities destroyed hereunder.

11.  Negative Pledge and Covenants.  So long as any Security remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the holders of the Securities (as provided in Section 16).

Notwithstanding the foregoing, the Republic may permit to subsist:

(i)  any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii)  any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii)  any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized securities issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

15

18

(iv)   any Lien in existence on the date of this Agreement;

(v)   any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi)   any Lien on any of the Par and Discount Bonds; and

(vii)   any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this Agreement:

"External Indebtedness" means obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic, any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, securities, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

"Domestic Foreign Currency Indebtedness" means (i)
the following indebtedness:  (a) Bonos del Tesoro issued
under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos
de Consolidación issued under Law No. 23,982 and Decree No.
2140/91, (c) Bonos de Consolidación de Deudas Previsionales
issued under Law No. 23,982 and Decree No. 2140/91, (d)
Bonos de la Tesorería a 10 Años de Plazo issued under Decree
No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería
a 5 Años Plazo issued under Decree No. 211/92 and Decree No.
526/92, (f) Ferrobonos issued under Decree No. 52/92 and
Decree No. 526/92 and (g) Bonos de Consolidación de Regalías
Hidrocarburíferas a 16 Años de Plazo issued under Decree No
2284/92 and Decree No. 54/93; (ii) any indebtedness issued
in exchange, or as replacement, for the indebtedness
referred to in (i) above; and (iii) any other indebtedness
payable by its terms, or which at the option of the holder
thereof may be payable, in a currency other than the lawful
currency of the Republic of Argentina which is (a) offered
exclusively within the Republic of Argentina or (b) issued
in payment, exchange, substitution, discharge or replacement
of indebtedness payable in the lawful currency of the
Republic of Argentina; provided that in no event shall the
following indebtedness be deemed to constitute "Domestic
Foreign Currency Indebtedness":  (1) Bonos Externos de la
República Argentina issued under Law No. 19,686 enacted on
June 15, 1972 and (2) any indebtedness issued by the
Republic in exchange, or as replacement, for any
indebtedness referred to (1) above.

        12.   Default; Acceleration of Maturity.  If any of
the following events ("Events of Default") with respect to
the Securities of any Series occurs and is continuing:

        (a)   Non-Payment:  the Republic fails to pay any
principal of any of the Securities of such Series when due
and payable or fails to pay any interest on any of the
Securities of such Series when due and payable and such
failure continues for a period of 30 days; or

        (b)   Breach of Other Obligations:  the Republic
does not perform or comply with any one or more of its other
obligations in the Securities of such Series or in this
Agreement, which default is incapable of remedy or is not
remedied within 90 days after written notice of such default
shall have been given to the Republic by the Fiscal Agent;
or

        (c)   Cross Default:  any event or condition shall
occur which results in the acceleration of the maturity
(other than by optional or mandatory prepayment or
redemption) of the Securities of any other Series or of any

Public External Indebtedness of the Republic having an aggregate principal amount of U.S. $30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, the Securities of any other Series or any such Public External Indebtedness having an aggregate principal amount of U.S. $30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic or;

(e) Validity: the validity of the Securities of such Series shall be contested by the Republic;

then the holders of not less than 25 percent in aggregate principal amount of the Securities of such Series by notice in writing to the Republic at the specified office of the Fiscal Agent shall declare the principal amount of all the Securities of such Series to be due and payable immediately, and, in the case of (a) and (d) above, each holder of Securities of such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Securities of such Series shall have been cured; provided that in the case of (b), (d) and (e) above, such event is materially prejudicial to the interests of the holders of the Securities of such Series, and provided further, that if, at any time after the principal of the Securities of such Series shall have been so declared due and payable, and before any sale of property under any judgment or decree for the payment of the monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Fiscal Agent a sum sufficient to pay all matured amounts of interest and principal upon all the Securities which shall have become due and otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each of the Securities at the rate of interest applicable thereto, to the date of such payment or deposit) and the expenses of the Fiscal Agent, and reasonable compensation to the Fiscal Agent, its agents, legal advisers, and any and all defaults under the Securities of such Series, other than the non-payment of principal on the

Securities of such Series which shall have become due solely
by declaration, shall have been remedied, then, and in every
such case, the holders of 75 percent in aggregate principal
amount of the Securities of such Series then outstanding,
after a meeting of holders of Securities held in accordance
with the procedures described in Section 16 below, by
written notice to the Republic at the specified office of
the Fiscal Agent, may on behalf of the holders of all of the
Securities of such Series waive all defaults and rescind and
annul such declaration and its consequences: but no such
waiver or rescission and annulment shall extend to or shall
affect any subsequent default, or shall impair any right
consequent thereon.

13. (a) _Limit on Liability_. In acting under
this Agreement the Fiscal Agent and any Paying Agent are
acting solely as agents of the Republic and do not assume
any obligation or relationship of agency or trust for or
with any of the holders of the Securities, except that all
funds held by the Fiscal Agent for payment of principal or
interest shall be held in trust, subject to the provisions
of Section 5.

(b) _Acceptance of Appointment_. The Fiscal Agent
and each Paying Agent accepts its obligations set forth in
or arising under this Agreement, the Paying Agency
Agreements and the Securities upon the terms and conditions
hereof and thereof, including the following, to all of which
the Republic agrees and to all of which the holders of the
Securities shall be subject:

(i) the Fiscal Agent may consult as to legal
matters with lawyers selected by it, who may be
employees of or regular independent counsel to the
Republic, and the Fiscal Agent shall be protected and
shall incur no liability for action taken, or suffered
to be taken, with respect to such matters in good faith
and in accordance with the opinion of such lawyers; and

(ii) the Fiscal Agent and each Paying Agent, and
their officers, directors and employees, may become the
holder of, or acquire any interest in, any Securities,
with the same rights that it or they would have if it
were not the Fiscal Agent or a Paying Agent hereunder,
or they were not such officers, directors, or
employers, and may engage or be interested in any
financial or other transaction with the Republic and
may act on, or as depository, trustee or agent for, any
committee or body of holders of Securities or other
obligations of the Republic as freely as if it were not

19

the Fiscal Agent or a Paying Agent hereunder or they were not such officers, directors, or employees.

14.  Expenses and Indemnity.  (a)  In connection with the Fiscal Agent's appointment and duties as Fiscal Agent, the Republic will pay the Fiscal Agent compensation agreed upon by them.  The Republic will indemnify the Fiscal Agent and each Paying Agent against any loss or liability and agrees to pay or reimburse the Fiscal Agent and each Paying Agent for any reasonable expense, which loss, liability or reasonable expense may be incurred by the Fiscal Agent or any Paying Agent by reason of, or in connection with, the Fiscal Agent's or any Paying Agent's appointment and duties as such, except as such result from the negligence, bad faith or wilful misconduct of the Fiscal Agent or any Paying Agent or their respective directors, officers, employees or agents.  In addition, the Republic shall pursuant to arrangements separately agreed upon by the Republic and the Fiscal Agent, transfer to the Fiscal Agent, upon presentation of substantiating documentation satisfactory to the Republic, amounts sufficient to reimburse the Fiscal Agent for certain out-of-pocket expenses reasonably incurred by it and by any Paying Agent in connection with their services.  The obligation of the Republic under this paragraph shall survive payment of the Securities and resignation or removal of the Fiscal Agent.

(b)  The Fiscal Agent and each Paying Agent agrees to indemnify and hold harmless the Republic against all direct claims, actions, demands, damages, costs, losses and liabilities (excluding consequential and punitive damages) arising out of or relating to the bad faith or wilful misconduct of the Fiscal Agent or any Paying Agent or their respective directors, officers, employees or agents.

15.  Successor Fiscal Agent.  (a)  The Republic agrees that there shall at all times be a Fiscal Agent hereunder, and that the Fiscal Agent shall be a bank or trust company organized and doing business under the laws of the United States of America or of the State of New York, in good standing and having a place of business in the Borough of Manhattan, The City of New York, and authorized under such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal Agent hereunder may be merged or converted, or any corporation with which the Fiscal Agent may be consolidated, or any corporation or bank resulting from any merger, conversion or consolidation to which the Fiscal Agent shall sell or otherwise transfer all or substantially all of the corporate trust business of the Fiscal Agent, provided that

20

23

it shall be qualified as aforesaid, shall be the successor
Fiscal Agent under this Agreement without the execution or
filing of any paper or any further act on the part of any of
the parties hereto, but subject to prior notice to and the
prior approval of the Republic.

(b)  The Fiscal Agent may at any time resign by
giving written notice to the Republic of its resignation,
specifying the date on which its resignation shall become
effective (which shall not be less than 120 days after the
date on which such notice is given unless the Republic shall
agree to a shorter period); provided that no such notice
shall expire less than 30 days before or 30 days after the
due date for any payment of principal or interest in respect
of the Securities.  The Republic may remove the Fiscal Agent
at any time by giving written notice to the Fiscal Agent
specifying the date on which such removal shall become
effective.  Such resignation or removal shall only take
effect upon the appointment by the Republic of a successor
Fiscal Agent and upon the acceptance of such appointment by
such successor Fiscal Agent.  Any Paying Agent may resign or
may be removed at any time upon like notice, and the
Republic in any such case may appoint in substitution
therefor a new Paying Agent or Paying Agents.

(c)  The appointment of the Fiscal Agent hereunder
shall forthwith terminate, whether or not notice of such
termination shall have been given, if at any time the Fiscal
Agent becomes incapable of performing its duties hereunder,
or is adjudged bankrupt or insolvent, or files a voluntary
petition on bankruptcy or makes an assignment for the
benefit of its creditors or consents to the appointment of a
liquidator or receiver of all or any substantial part of its
property or admits in writing its inability to pay or meet
its debts as they mature or suspends payment thereof, or if
a resolution is passed or an order made for the winding up
or dissolution of the Fiscal Agent, or if a liquidator or
receiver of the Fiscal Agent of all or any substantial part
of its property is appointed, or if any order of any court
is entered approving any petition filed by or against it
under the provisions of any applicable bankruptcy or
insolvency law or if any public officer takes charge or
control of the Fiscal Agent or its property or affairs for
the purposes of rehabilitation, conservation or liquidation.

(d)  Prior to the effective date of any such
resignation or removal of the Fiscal Agent, or if the Fiscal
Agent shall become unable to act as such or shall cease to
be qualified as aforesaid, the Republic shall appoint a
successor Fiscal Agent, qualified as aforesaid.  Upon the
appointment of a successor Fiscal Agent and its acceptance

21

24

of such appointment, the retiring Fiscal Agent shall, at the direction of the Republic and upon payment of its compensation and expenses then unpaid, deliver and pay over to its successor any and all securities, money and any other properties then in its possession as Fiscal Agent and shall thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and to the Republic an instrument accepting such appointment hereunder, and thereupon such successor without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor, with like effect as if originally named Fiscal Agent hereunder.

(e)  If the Fiscal Agent resigns or ceases to act as the Republic's fiscal agent in respect of the Securities pursuant to Section 15(c) of this Agreement, the Fiscal Agent shall only be entitled to annual fees otherwise payable to it under this Agreement on a pro rata basis for that period since the most recent anniversary of this Agreement during which the Fiscal Agent has acted as fiscal agent hereunder.  In the event that the Fiscal Agent ceases to act as the Republic's fiscal agent in respect of the Securities for any other reason, the Fiscal Agent shall be entitled to receive the full amount of the annual fees payable to it in respect of the Securities pursuant to Section 14 of this Agreement.

16.  <u>Meetings of Holders of Securities;</u> <u>Modifications</u>.  (a)  A meeting of registered holders of Securities of any Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given or taken by registered holders of Securities of any Series or to modify, amend or supplement the terms of the Securities of any Series or this Agreement as hereinafter provided.  The Fiscal Agent may at any time call a meeting of registered holders of Securities of any Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine.  Notice of every meeting of registered holders of Securities of any Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of any Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting.  In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the outstanding

25

Securities of any Series (as defined in subsection (d) of this Section) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of any Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

To be entitled to vote at any meeting of registered holders of Securities of any Series, a person shall be a registered holder of Outstanding Securities of any Series or a person duly appointed by an instrument in writing as proxy for such a holder.  Any person appointed by an instrument in writing as proxy for a registered holder need not be a registered holder of Outstanding Securities of any Series.  At any meeting each registered holder shall be entitled to one vote for each of those amounts held by such holder which represent the lowest denomination in which Securities of such Series as to which such holder is a holder may be transferred.  The persons entitled to vote a majority in principal amount of the Outstanding Securities of any Series shall constitute a quorum.  At the reconvening of any meeting adjourned for a lack of a quorum, the persons entitled to vote 25% in principal amount of the Outstanding Securities of any Series shall constitute a quorum for the taking of any action set forth in the notice of the original meeting.  The Fiscal Agent may make such reasonable and customary regulations as it shall deem advisable for any meeting of registered holders of Securities of any Series with respect to the appointment of proxies in respect of registered holders of Securities, the record date for determining the registered holders of Securities who are entitled to vote at such meeting (which date shall be set forth in the notice calling such meeting hereinabove referred to and which shall be not less than 30 nor more than 90 days prior to such meeting, the adjournment and chairmanship of such meeting) the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(b)  (i)  At any meeting of registered holders of Securities of a Series duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the Securities of any Series with respect to the action being taken), or (ii) with the written consent of the owners of

23

not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the text of the Securities of any Series with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Securities of any Series or this Agreement, in any way, and the registered holders of Securities of any Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given, or taken by registered holders of Securities of any Series; provided, however, that no such action may, without the consent of the registered holder of each Security of such Series, (A) change the due date for the payment of the principal of (or premium, if any,) or any installment of interest on any Security of such Series, (B) reduce the principal amount of any Security of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Security, the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which or the required places at which payment with respect to interest, premium or principal in respect of Securities of such Series is payable, (D) amend the definition of Redemption Event in the Securities of such Series or the procedures provided therefore, (E) shorten the period during which the Republic is not permitted to redeem the Securities of such Series if, prior to such action, the Republic is not permitted to do so, (F) reduce the proportion of the principal amount of Securities of such Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of such Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (G) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of any Series, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities.  Any such modification, authorization or waiver shall be binding on the registered holders of Securities of any Series and, if the Fiscal Agent so requires, such

24

27

modification shall be notified to the registered holders of Securities of any Series as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Securities of any Series to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

(c)  Any instrument given by or on behalf of any registered holder of a Security in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof.  Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of a Series will be conclusive and binding on all registered holders of Securities of such Series, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities of such Series. Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of such Series or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Securities of such Series, in all cases as provided in the Securities of such Series.

Securities of any Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to such Series may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action. New Securities modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction,

notice, consent, waiver or other action may be prepared by
the Republic, authenticated by the Fiscal Agent (or any
authenticating agent appointed pursuant to Section 3 hereof)
and delivered in exchange for Outstanding Securities of any
Series.

(d)   For purposes of the provisions of this
Agreement and the Securities of any Series, any Security
authenticated and delivered pursuant to this Agreement
shall, as of any date of determination, be deemed to be
"Outstanding", except:

(i)   Securities of any Series theretofore
cancelled by the Fiscal Agent or delivered to the
Fiscal Agent for cancellation or held by the Fiscal
Agent for reissuance but not reissued by the Fiscal
Agent; or

(ii)   Securities of any Series which have become
due and payable at maturity or otherwise and with
respect to which monies sufficient to pay the principal
thereof, premium, if any, and any interest thereon
shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the
registered holders of the requisite principal amount of
Outstanding Securities of any Series are present at a
meeting of registered holders of Securities for quorum
purposes or have consented to or voted in favor of any
request, demand, authorization, direction, notice, consent,
waiver, amendment, modification or supplement hereunder,
Securities of any Series owned directly or indirectly by the
Republic shall be disregarded and deemed not to be
Outstanding.

17.   Further Issues.  The Republic may from time
to time, without notice to or the consent of the registered
holders of the Securities of a Series, create and issue
further securities ranking pari passu with the Securities of
such Series in all respects (or in all respects except for
the payment of interest accruing prior to the issue date of
such further securities or except for the first payment of
interest following the issue date of such further
securities) and so that such further securities shall be
consolidated and form a single series with the Securities of
such Series and shall have the same terms as to status,
redemption or otherwise as the Securities.

18.   Reports.  (a)  The Fiscal Agent shall furnish
to the Republic such reports as may be required by the
Republic relative to the Fiscal Agent's performance under

this Agreement.  The Republic may, whenever it deems it necessary, inspect books and records maintained by the Fiscal Agent pursuant to this Agreement, if any.

(b)  The Fiscal Agent shall (on behalf of the Holders) submit such reports or information as may be required from time to time in relation to the issue and purchase of Securities by applicable law, regulations and guidelines promulgated by the United States government.

(c)  The Republic covenants to notify the Fiscal Agent in writing immediately on becoming aware of any Event of Default or any event or circumstance which could with the giving of notice or lapse of time become an Event of Default (a "Potential Event of Default").

(d)  The Republic will send to the Fiscal Agent, on or before December 31 in each year (beginning with December 31, 1994), and within 14 days after any written notice by the Fiscal Agent, a certificate of the Republic signed by a duly authorized official of the Republic to the effect that, having made all reasonable inquiries, to the best knowledge of such duly authorized official, no Event of Default or Potential Event of Default has occurred and is continuing on the date of such certificate or, if an Event of Default or a Potential Event of Default has occurred, the circumstances surrounding it and the steps that the Republic has taken or proposes to take to remedy it.

(e)  The Republic will send to the Fiscal Agent as soon as practicable after being so requested by the Fiscal Agent a certificate of the Republic, signed by a duly authorized official of the Republic stating the aggregate principal amount of the Securities held by or on behalf of the Republic at the date of such certificate.

19.  <u>Forwarding of Notice; Inquiries</u>.  (a)  If the Fiscal Agent shall receive any notice or demand addressed to the Republic pursuant to the provisions of the Securities, the Fiscal Agent shall promptly forward such notice or demand to the Republic.

(b)  The Fiscal Agent shall respond promptly to any inquiries received from any registered holder of Securities regarding the matters covered by paragraphs (b), (c) or (d) of Section 18 of this Agreement.

20.  <u>Listings</u>.  In the event that the terms of the Securities of any Series provide for a listing on any stock exchange, the Republic agrees to use all reasonable endeavors to maintain the listing of the Securities on such

30

exchange. If, however, it is unable to do so, having used
such endeavors, or if the maintenance of such listing is
agreed by the Fiscal Agent to be unduly onerous and the
Fiscal Agent is satisfied that the interests of registered
holders of the Securities would not thereby be materially
prejudiced, it will instead use all reasonable endeavors to
obtain and maintain a listing of the Securities on such
other stock exchange or exchanges as it may decide.

    21. __Notices.__ (a) Any communications from the
Republic to the Fiscal Agent with respect to this Agreement
shall be addressed to Bankers Trust Company, 4 Albany
Street, New York, New York 10006, Fax No.: 212-250-6961 or
212-250-6392, Tel. No.: 212-250-6571 and any communications
from the Fiscal Agent to the Republic with respect to this
Agreement shall be addressed to the Subsecretaría de
Financiamiento, Hipolito Yrigoyen 250, Piso 10 - Oficina
1001, 1310 - Buenos Aires, Attention: Deuda Externa, Fax
No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such
other address as shall be specified in writing by the Fiscal
Agent or by the Republic, as the case may be) and shall be
delivered in person or sent by first class prepaid post or
by facsimile transmission subject, in the case of facsimile
transmission, to confirmation by telephone to the foregoing
addresses. Such notice shall take effect in the case of
delivery in person, at the time of delivery, in the case of
delivery by first class prepaid post seven (7) business days
after dispatch and in the case of delivery by facsimile
transmission, at the time of confirmation by telephone.

    (b) All notices to the registered holders of
Securities of a Series will be published in such
publications at such locations as any of the Securities of
such Series are listed for the period of time of such
listing and as otherwise provided pursuant to the terms of
the Securities of such Series. If at any time publication
in any such publication is not practicable, notices will be
valid if published in an English language newspaper with
general circulation in the respective market regions as the
Republic with the approval of the Fiscal Agent, shall
determine. (In addition, notices will be published in
Spanish in a newspaper of general circulation in Argentina,
as the Republic shall determine.) Any such notice shall be
deemed to have been given on the date of such publication
or, if published more than once or on different dates, on
the first date on which publication is made. Written notice
will also be given to the Depositary, if at the time of such
notice any of the Securities is represented by a Global
Security.

22. <u>Consent to Service; Jurisdiction</u>. The Republic hereby appoints Banco de la Nación Argentina, at its office located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose) as its authorized agent (the "Authorized Agent") upon whom process may be served in any action arising out of or based on the Securities or this Agreement by the holder of any Security which may be instituted in any state or federal court in The City of New York, and expressly accepts the jurisdiction of any such court in respect of such action. Such appointment shall be irrevocable until all amounts in respect of the principal of and any interest due and to become due on or in respect of all the Securities have been provided to the Fiscal Agent pursuant to the terms hereof, except that, if for any reason, such Authorized Agent ceases to be able to act as Authorized Agent or to have an address in the Borough of Manhattan, The City of New York, the Republic will appoint another person in the Borough of Manhattan, The City of New York, selected in its discretion, as such Authorized Agent. Prior to the date of issuance of any Securities hereunder, the Republic shall obtain the consent of Banco de la Nación Argentina to its appointment as such Authorized Agent, a copy of which acceptance it shall provide to the Fiscal Agent. The Republic shall take any and all action, including the filing of any and all documents and instruments, that may be necessary to continue such appointment or appointments in full force and effect as aforesaid. Upon receipt of such service of process, the Authorized Agent shall advise the Subministry of Finance promptly by telecopier at 011-54-1-349-6080. Service of process upon the Authorized Agent at the address indicated above, as such address may be changed within the Borough of Manhattan, The City of New York by notice given by the Authorized Agent to each party hereto, shall be deemed, in every respect, effective service of process upon the Republic. The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any aforesaid action arising out of or in connection with this Agreement brought in any such court has been brought in an inconvenient forum. Neither such appointment nor such acceptance of jurisdiction shall be interpreted to include actions brought under the United States federal securities laws. This appointment and acceptance of jurisdiction is intended to be effective upon execution of this agreement without any further act by the Republic before any such court and introduction of a true copy of this Agreement into evidence shall be conclusive and final evidence of such waiver.

32

Notwithstanding the foregoing, any action arising out of or based on the Securities may be instituted by the holder of any Security in any competent court in the Republic of Argentina.

The Republic hereby irrevocably waives and agrees not to plead any immunity from the jurisdiction of any such court to which it might otherwise be entitled in any action arising out of or based on the Securities or this Agreement by the holder of any Security.

23.  <u>Governing Law and Counterparts</u>.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24.  <u>Headings</u>.  The headings for the sections of this Agreement are for convenience only and are not part of this Agreement.

33

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA

By:  /s/ Noemi LaGreca
     Name:  Noemi LaGreca
     Title: Financial
            Representative of
            Argentina in the
            United States

BANKERS TRUST COMPANY

By:  /s/ Wanda Camacho
     Name:  Wanda Camacho
     Title: Assistant
            Secretary

31

34

EXHIBIT A

FORM OF REGISTERED SECURITY

[Form of Face
of Security]

[If the Security is a global Security, insert a legend
relating to limitations on the transferability of such
global Security in such form as may be required by the U.S.
Depositary.]

[INSERT ANY LEGEND(S) REQUIRED BY THE INTERNAL REVENUE CODE]

THE REPUBLIC OF ARGENTINA

[Title of Series of Securities]

No. R-_____                                    [Principal Amount]

Issue Price:

Original Issue Date:

Maturity Date:

Currency of Denomination:

Option to Receive Payments
in Specified Currency:              _____Yes   _____No

Authorized Denominations:

Form:                               ( )  Book-Entry
                                    ( )  Certificated

Initial Interest
Payment Date:

Interest Rate:

Interest Rate Reset:                ( )  The Interest Rate may not
                                         be changed prior to
                                         Maturity Date.

35

( )   The Interest Rate may be
      changed prior to Stated
      Maturity (see attached).

**Optional Reset Dates**
**(if applicable):**

**Interest Payment Dates:**

**Optional Extension of**
**Maturity Date:**                _____Yes  _____No

    **Final Maturity:**

**Total Amount of OID:**

**Yield to Maturity:**

**Initial Accrual Period OID:**

**Optional Redemption:**           _____Yes  _____No

    **Optional Redemption Dates:**

    If applicable as described above, the Redemption Price
    shall initially be        % of the principal amount of
    this Security to be redeemed and shall decline at each
    anniversary of the Initial Redemption Date by      % of
    the principal amount to be redeemed until the
    Redemption Price is 100% of such principal amount;
    *provided, however*, that if this Security is a Discount
    Note (as defined below), the Redemption Price shall be
    the Amortized Face Amount (as defined below) of this
    Note.

**Optional Repayment:**            _____Yes  _____No

    **Optional Repayment Dates:**

    **Optional Repayment Prices:**

**Conversion into or**
**Exchange for**
**Other Securities**               ( )   This Security may not be
                                         converted into or
                                         exchanged for other
                                         securities.

                                   ( )   This Security may be
                                         converted into or

2

*36*

exchanged for _____
[specify securities].

Terms of Conversion
or Exchange
(if applicable):

Indexed Note: _____ Yes (see attached) _____ No

Exchange Rate Agent:

Other Terms: _____ Yes _____ No

A-3

THE REPUBLIC OF ARGENTINA (herein called the "Republic"), for value received, hereby promises to pay to

or registered assigns, the principal sum of _____ U.S. Dollars (U.S.$_____) [other currency] on _____ [If the Security is to bear interest prior to maturity, insert--, and to pay interest thereon from _____ or from the most recent Interest Payment Date to which interest has been paid or duly provided for, [specify frequency] in arrears on [and _____) in each year, commencing _____ (each an "Interest Payment Date"), at the rate [of _____ % per annum] [to be determined in accordance with the provisions hereinafter set forth], until the principal hereof is paid or made available for payment. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in the Fiscal Agency Agreement hereinafter referred to, be paid to the person (the "registered Holder") in whose name this Security (or one or more predecessor Securities) is registered in the register of such Securities maintained pursuant to the Fiscal Agency Agreement at the close of business on the date (whether or not a business day) [, as the case may be] (each a "Regular Record Date") [,] [_____ calendar days] next preceding such Interest Payment Date; provided, however, that the first payment of interest on any Security originally issued on a date between a Regular Record Date and an Interest Payment Date or on an Interest Payment Date will be made on the Interest Payment Date following the next succeeding Regular Record Date to the registered Holder on such next succeeding Regular Record Date.  Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the registered Holder on such Regular Record Date and may either be paid to the person in whose name this Security (or one or more predecessor Securities) is registered at the close of business on a special record date for the payment of such interest to be fixed by the Republic, notice whereof shall be given to registered Holders of Securities of this Series not less than 10 days prior to such special record date, or be paid at any time in any other lawful manner [not inconsistent with the requirements of any securities exchange on which the Securities of this series may be listed, and upon such notice as may be required by such exchange.]

        [Insert floating interest rate provisions, if applicable.]

        [If the Security is not to bear interest prior to maturity, insert--(the "Stated Maturity").  The principal of

A-4

*38*

821 7112 YEOR WEN JO ESAHC           PD^62^11   'S£  ,1£ IDD
85'4  IGDRX

this Security shall not bear interest except in the case of
a default in payment of principal upon acceleration, upon
redemption or at Stated Maturity.]

Principal of (and premium, if any, on) [and
interest payable at maturity or upon earlier redemption or
repayment in respect of] this Security shall be payable in
immediately available funds against surrender hereof at the
corporate trust office of the Fiscal Agent hereinafter
referred to and at the offices of such other Paying Agents
as the Republic shall have appointed pursuant to the Fiscal
Agency Agreement.  Payments of principal of (and premium, if
any[, on]) [and interest on] this Security shall be made in
same-day funds in accordance with the foregoing and subject
to applicable laws and regulations, by [(if the Republic so
elects) transfer to an account denominated in U.S. dollars
which is maintained by the payee with (any) [a] bank
[located in _____].  If the Republic does not so
elect, payments of principal (and premium, if any) shall be
made against surrender of this Security [if applicable,
insert--, and payments of interest shall be made,] by]
forwarding by post or otherwise delivering a check [on or
before the due date for such payment] to the registered
address of the registered Holder of this Security.  [If
applicable, insert payment provisions for Securities
denominated in a currency other than U.S. dollars].  This
Security is a direct obligation of the Republic and does not
have the benefit of any separate undertaking of other
government entities (including Banco Central).  The Republic
covenants that until all amounts in respect of the principal
and interest due and to become due on or in respect of this
Security have been paid as provided herein or in the Fiscal
Agency Agreement, it will at all times maintain offices or
agencies in the Borough of Manhattan, The City of New York
for the payment of the principal of (and premium, if any[,
on]) [and interest on] the Securities as herein provided.

Reference is hereby made to the further provisions of
this Security set forth on the reverse hereof, which further
provisions shall for all purposes have the same effect as if
set forth at this place.

Unless the certificate of authentication hereon has
been executed by the Fiscal Agent by manual signature, this
Security shall not be valid or obligatory for any purpose.

IN WITNESS WHEREOF, the Republic has caused this instrument to be duly executed.

Dated:

THE REPUBLIC OF ARGENTINA

By_____
           [Title]

Attest:

_____
     [Title]

Date of Authentication:

This is one of the Securities of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

BANKERS TRUST COMPANY, as Fiscal Agent

By_____
    Authorized Signatory

A-6

[Form of reverse
of Security]

This Security is one of a duly authorized issue of securities of the Republic (herein called the "Securities") issued and to be issued in one or more series in accordance with a Fiscal Agency Agreement, dated as of _____ (herein called the "Fiscal Agency Agreement"), between the Republic and Bankers Trust Company, as Fiscal Agent (herein called the "Fiscal Agent"), which term includes any successor fiscal agent under the Fiscal Agency Agreement), copies of which Fiscal Agency Agreement are on file and available for inspection at the corporate trust office of the Fiscal Agent in the Borough of Manhattan, The City of New York.  This Security is one of the Securities of the Series designated on the face hereof[, limited in aggregate principal amount to U.S.$_____].  The Fiscal Agency Agreement may be amended from time to time in accordance with the terms thereof.

The Securities will constitute the direct, unconditional, unsecured and unsubordinated obligations of the Republic.  Each Series will rank *pari passu* with each other Series, without any preference one over the other by reason of priority of date of issue or currency of payment or otherwise, and at least equally with all other present and future unsecured and unsubordinated External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic.

The Securities of this Series are issuable only in fully registered form.  The Securities are issuable in [the] authorized denomination[s] of [currency/U.S.$_____ [and [any integral multiple thereof] [integral multiples of [currency/U.S.$_____ above that amount]].

Until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid, the Republic shall maintain in the Borough of Manhattan, The City of New York, an office or agency where Securities may be surrendered for registration of transfer or exchange.  The Republic has initially appointed the corporate trust office of the Fiscal Agent as its agent in the Borough of Manhattan, The City of New York, for such purpose and has agreed to cause to be kept at such office a register in which subject to such reasonable regulations as it may prescribe, the Republic will provide for the registration of Securities and of transfers of Securities.  The Republic reserves the right to vary or terminate the appointment of the Fiscal Agent as security

A-7

registrar or transfer agent or to appoint additional or
other registrars or transfer agents or to approve any change
in the office through which any security registrar or any
transfer agent acts, provided that there will at all times
be a security registrar in the Borough of Manhattan, The
City of New York.

Subject to the provisions on the face hereof
concerning transfer restrictions, the transfer of a Security
is registrable on the aforementioned register upon surrender
of such Security at the corporate trust office of the Fiscal
Agent duly endorsed by, or accompanied by a written
instrument of transfer in form attached hereto duly executed
by, the registered Holder thereof or his attorney duly
authorized in writing.  Upon such surrender of this Security
for registration of transfer, the Republic shall execute,
and the Fiscal Agent shall authenticate and deliver, in the
name of the designated transferee or transferees, one or
more new Securities, dated the date of authentication
thereof, of any authorized denominations and of a like
aggregate principal amount.

Subject to the provisions on the face hereof
concerning transfer restrictions, at the option of the
registered Holder upon request confirmed in writing,
Securities may be exchanged for Securities of any authorized
denominations and of a like aggregate principal amount, upon
surrender of the Securities to be exchanged at the corporate
trust office of the Fiscal Agent.  Any registration of
transfer or exchange will be effected upon the Fiscal Agent
being satisfied with the documents of title and identity of
the person making the request and subject to such reasonable
regulations as the Republic may from time to time agree with
the Fiscal Agent.  Whenever any Securities are so
surrendered for exchange, the Republic shall execute, and
the Fiscal Agent shall authenticate and deliver, the
Securities which the registered Holder making the exchange
is entitled to receive.  The new Security issued upon such
exchange shall be so dated that neither gain nor loss of
interest shall result from such exchange.  [If the Security
is a permanent global Security, insert--Notwithstanding the
foregoing, the exchange of this Security is subject to
certain limitations set forth in the Fiscal Agency Agreement
and on the face hereof.]

[In the event of a redemption of the Securities of
this series in part, the Republic shall not be required (i)
to register the transfer of or exchange any Security during
a period beginning at the opening of business 15 days
before, and continuing until, the date notice is given
identifying the Securities to be redeemed, or (ii) to

A-8

register the transfer of or exchange any Security, or
portion thereof, called for redemption.]

All Securities issued upon any registration of
transfer or exchange of Securities shall be the valid
obligation of the Republic evidencing the same indebtedness
and entitled to the same benefits this Security has at the
time of such registration of transfer or exchange.

No service charge shall be made for any
registration of transfer or exchange, but the Republic may
require payment of a sum sufficient to cover any tax or
other governmental charge payable in connection therewith,
other than an exchange in connection with a partial
redemption of a Security not involving any registration of a
transfer.

Prior to due presentment of this Security for
registration of transfer, the Republic, the Fiscal Agent and
any agent of the Republic or the Fiscal Agent may treat the
person in whose name this Security is registered as the
owner hereof for all purposes, whether or not this Security
is overdue, and neither the Republic nor the Fiscal Agent
nor any such agent shall be affected by notice to the
contrary.

In any case where the due date or the payment of
the principal of (and premium, if any[, on]) [or interest
on] any Security[, or the date fixed for redemption of any
Security,] shall be, at any place from which any check in
respect thereof is to be mailed or where such Security is to
be surrendered for payment [or, in the case of payments by
transfer, where such transfer is to be made], a day on which
banking institutions [If the Securities are denominated in
U.S. dollars, insert--in The City of New York] [If the
Securities are denominated in a currency other than U.S.
Dollars, insert--in [name of financial center of the country
in whose currency the securities are denominated] are
authorized or obligated by law to close [If the Securities
are denominated in a currency other than U.S. Dollars,
insert--or a day on which banking institutions in [name of
non-U.S. financial center] are not carrying out transactions
in [name of non-U.S. currency]], then such payment need not
be made on such date at such place but may be made on the
next succeeding day at such place which is not a day on
which banking institutions are authorized or obligated by
law to close, with the same force and effect as if made on
the date for such payment payable in respect of any such
delay.

A-9

43

The Republic shall provide to the Fiscal Agent at its principal office in the Borough of Manhattan, The City of New York, prior to each date on which a payment on or in respect of the Securities of this series shall become due, monies in such amounts which (together with any amounts then held by the Fiscal Agent and available for the purpose) are sufficient to make such payment.  Any monies provided by the Republic to the Fiscal Agent for the payment on or in respect of the Securities of this series and remaining unclaimed at the end of two years after such payment shall have become due shall then be returned to the Republic, and upon the return of such monies all liabilities of the Fiscal Agent with respect thereto shall cease, without, however, limiting in any way any obligation the Republic may have to pay the principal of (or premium, if any[, on]) [or interest on] this Security as the same shall become due.

So long as any Security remains outstanding, save for the exceptions set forth in the Fiscal Agency Agreement, the Republic will not create or permit to subsist, or permit Banco Central to create or permit to subsist, any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by not less than 66 2/3% of the registered holders of Securities of any Series then outstanding.

If an Event of Default (as defined in the Fiscal Agency Agreement) occurs and is continuing then the holders of not less than 25 percent in aggregate principal amount of the Securities of this Series, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount of all the Securities of this Series to be due and payable as set forth in the Fiscal Agency Agreement.

All payments of principal, premium, if any, and interest on this Security by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax

A-10

(together "Taxes"), unless such withholding or deduction is required by law.  In such event, the Republic shall pay such Additional Amounts as will result in receipt by the holders of Securities of this Series of such amounts of principal, premium and interest which would have been received by them had no such withholding or deduction been required, save for the exceptions set forth in the Fiscal Agency Agreement.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

[The Securities of this Series will not be subject to any sinking fund and will not be redeemable except as described below.]

[The Securities of this Series are subject to redemption upon not less than 30 days' notice given as hereinafter provided, [if applicable, insert--(1) on _____ in any year commencing with the year ____ and ending with the year ____ through operation of the sinking fund for this series at a redemption price equal to 100% of the principal amount, (2)] [at any time [on or after _____, 19__], as a whole or in part, at the election of the Republic, at the following redemption prices (expressed as percentages of the principal amount of the Securities to be redeemed]: If redeemed [on or before _____, ___%, _____ of the years indicated,

| Year | Redemption Price | Year | Redemption Price |
|------|------------------|------|------------------|
|      |                  |      |                  |

and thereafter at a redemption price equal to ___% of the principal amount, and (3)] under the circumstances described in the next succeeding paragraph at a redemption price equal to 100% of the principal amount of the Securities to be redeemed, together in each case with accrued interest (except if the redemption date is an Interest Payment Date) to the redemption date, but interest installments on Securities that are due on or prior to such redemption date will be payable to the holders of such Securities of record at the close of business on the relevant Record Dates referred to above; provided, that if the redemption date occurs between a Record Date and an Interest Payment Date, the interest due and payable will be paid to the holders of

such Securities of record at the close of business on such
Record Date.  [Partial redemptions must be in an amount not
less than U.S.$_____ principal amount of Securities.]

[As and for a sinking fund for the retirement of
the Securities of this Series, the Republic will, until all
Securities of this Series are paid or payment thereof
provided for, deposit with the Fiscal Agent, prior to
_____ in each year, commencing in ____ and ending in ____,
an amount in cash sufficient to redeem on such _____
[not less than U.S.$_____ and not more than]
U.S.$_____ principal amount of Securities of this Series
at the redemption price specified above for redemption
through operation of the sinking fund.  [The minimum amount
of any sinking fund payment as specified in this Paragraph
is herein referred to as a "mandatory sinking fund payment",
and any payment in excess of such minimum amount is herein
referred to as an "optional sinking fund payment".]  The
cash amount of any [mandatory] sinking fund payment is
subject to reduction as provided below.  Each sinking fund
payment shall be applied to the redemption of Securities in
this Series on such _____ as herein provided.  [The
right to redeem Securities of this Series through optional
sinking fund payments shall not be cumulative and to the
extent not availed of on any sinking fund redemption date
will terminate.]]

[Notwithstanding the foregoing, the Republic may
not, prior to _____, redeem any Securities of this Series
as [and optional sinking fund payment] contemplated by the
preceding paragraph as a part of, or in anticipation of, any
refunding operation by the application, directly or
indirectly, of monies borrowed having an interest cost to
the Republic (calculated in accordance with general accepted
financial practice) of less than __% per annum.]

[Securities of this Series acquired or redeemed by
the Republic otherwise than through [mandatory] sinking fund
payments may be credited against subsequent [mandatory]
sinking fund payments otherwise required to be made [in the
inverse order in which they become due].]

[The Republic (i) may deliver outstanding
Securities of this Series (other than any previously called
for redemption) and (ii) may apply as a credit Securities of
this series which have been redeemed otherwise than through
the application of [mandatory] sinking fund payments, in
each case in satisfaction of all or any part of any
[mandatory] sinking fund payment and the amount of such
[mandatory] sinking fund payment shall be reduced
accordingly.]

[In the case of any partial redemption of Securities of this Series pursuant to the sinking fund or at the option of the Republic, the Securities to be redeemed shall be selected by the Fiscal Agent not more than 60 days prior to the redemption date from the outstanding Securities not previously called for redemption, by such method as the Fiscal Agent shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to U.S.$_____ or any integral multiple thereof) of the principal amount of Securities of a denomination larger than U.S.$_____].

[This Security shall be redeemed, at the option of the registered Holder thereof, upon the occurrence, on or after _____, of a Redemption Event (as hereinafter defined), at the redemption price equal to 100% of the principal amount of this Security, together with interest accrued thereon to the date of redemption; provided, however, that the right of the registered Holder to present this Security [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided).] for redemption shall, if the Republic gives a Notice of Redemption Event (as hereinafter defined), terminate upon expiration of the Option Period (as hereinafter defined) relating to such Redemption Event.  In the event of the occurrence of more than one Redemption Event, each such Redemption Event shall be deemed to confer upon the registered Holder of this Security a separate right of redemption.]

[The Republic agrees that, if a Redemption Event occurs, it will promptly give written notice thereof to the Fiscal Agent (a "Notice of Redemption Event").  Promptly after receiving such Notice of Redemption Event, the Fiscal Agent shall give written notice to the registered Holder of this Security (a "Notice of Right to Tender") stating that a Redemption Event has occurred and including a form of notice (a "Redemption Notice") pursuant to which the registered Holder of this Security may elect to cause redemption.  The Republic may, but shall not be obligated to, fix a record date for the purpose of determining the registered Holders of Securities of this series entitled to elect to cause redemption of any such Holder elects to cause redemption of this Security, deliver the Redemption Notice, together with the certificate or certificates representing the Securities to be redeemed [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] to the Fiscal Agent within a period of 60 days (the "Option Period") of the date of the Notice

A-13

of Right to Tender, and (ii) the Republic shall select a
date for redemption (the "Redemption Date"), which shall be
within 60 days from the end of the Option Period, and, on
the Redemption Date, shall redeem the Securities tendered
for redemption within the Option Period.  At least 10 days
prior to the Redemption Date, the Republic shall [(i)]
deliver notice of the Redemption Date in the manner provided
for herein to each registered Holder who requested
redemption[, or (ii) publish notice of the Redemption Date
in the manner provided for herein, as the case may be].]

[If the Security is a permanent global Security,
insert--It is understood that, notwithstanding the foregoing
provisions relating to redemption at the option of a
registered Holder and without otherwise limiting any right
of any other registered Holder to act by agent or proxy, the
Fiscal Agent may treat a person authorized, in a manner
satisfactory to the Fiscal Agent, by the U.S. Depositary to
take action in respect of a portion of this permanent global
Security as the registered Holder of such portion of such
Security and may make arrangements satisfactory to it, the
Republic and the U.S. Depositary in connection with this
partial redemption of this permanent global Security.]

[Insert description of those events, if any, which
constitute Redemption Events.]

[If notice of redemption has been given in the
manner set forth herein, the Securities so to be redeemed
shall become due and payable on the redemption date
specified in such notice and upon presentation and surrender
of the Securities [if the Security is a permanent global
Security, insert--, or evidence of ownership of the
Securities represented by this permanent global Security
satisfactory to the Fiscal Agent,] at the place or places
specified in such notice, the Securities shall be paid and
redeemed by the Republic at the places, in the manner and
currency and at the redemption price herein specified
together with accrued interest (unless the redemption date
is an Interest Payment Date) to the redemption date.  From
and after the redemption date, if monies for the redemption
of Securities called for redemption shall have been made
available at the corporate trust office of the Fiscal Agent
for redemption on the redemption date, the Securities called
for redemption shall cease to bear interest, and the only
right of the holder of such Securities shall be to receive
payment of the redemption price together with accrued
interest (unless the redemption date is an Interest Payment
Date) to the redemption date as aforesaid.  If monies for
the redemption of the Securities are not made available for
payment until after the redemption date, the Securities

A-14

called for redemption shall not cease to bear interest until
such monies have been so made available.]

[Any Security which is to be redeemed only in part
shall be surrendered with, if the Republic or the Fiscal
Agent so requires, due endorsement by, or a written
instrument of transfer in form satisfactory to the Republic
and the Fiscal Agent duly executed by, the holder thereof or
such holder's attorney duly authorized in writing, and the
Republic shall execute, and the Fiscal Agent shall
authenticate and deliver to the registered Holder of such
Security without service charge, a new Security or
Securities of this Series, of any authorized denomination as
required by such Holder, in aggregate principal amount equal
to and in exchange for the unredeemed portion of the
principal of the Security so surrendered.]

A meeting of registered holders of Securities of
this Series may be called at any time and from time to time
to make, give or take any request, demand, authorization,
direction, notice, consent, waiver or other action provided
by the Fiscal Agency Agreement or the Securities of this
Series to be made, given or taken by registered holders of
Securities of this Series or to modify, amend or supplement
the terms of the Securities of this Series or the Fiscal
Agency Agreement as hereinafter provided.  The Fiscal Agent
may at any time call a meeting of registered holders of
Securities of this Series for any such purpose to be held at
such time and at such place as the Fiscal Agent shall
determine.  Notice of every meeting of registered holders of
Securities of this Series, setting forth the time and the
place of such meeting and in general terms the action
proposed to be taken at such meeting, shall be given as
provided in the terms of the Securities of this Series, not
less than 30 nor more than 60 days prior to the date fixed
for the meeting.  In case at any time the Republic or the
registered holders of at least 10% in aggregate principal
amount of the Outstanding Securities of this Series (as
defined in the Fiscal Agency Agreement) shall have requested
the Fiscal Agent to call a meeting of the registered holders
of Securities of this Series for any such purpose, by
written request setting forth in reasonable detail the
action proposed to be taken at the meeting, the Fiscal Agent
shall call such meeting for such purposes by giving notice
thereof.

At any meeting of registered holders of Securities
duly called and held as specified above, upon the
affirmative vote, in person or by proxy thereunto duly
authorized in writing, of the registered holders of not less
than 66-2/3% (or ___ %) in aggregate principal amount of the

A-15

Securities of this Series then Outstanding, or (ii) with the written consent of the registered holders of not less than 66-2/3% [or ____ %] in aggregate principal amount of the Securities of this Series then Outstanding, the Republic [and the Fiscal Agent] may modify, amend or supplement the terms or provisions contained in the Securities of this Series, in any way, and the registered holders of Securities of this Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given, or taken by registered holders of Securities of this Series; provided, however, that no such action may, without the consent of the registered holder of each Security, (A) change the due date for the payment of the principal of or any installment of interest on any Security, (B) reduce the principal amount of any Security, the portion of such principal amount which is payable upon acceleration of the maturity of such Security or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Securities of this Series is payable, (D) reduce the proportion of the principal amount of Securities of this Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of this Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of this Series to (i) any modification of any provisions of the Fiscal agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in the Fiscal Agency Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of the fiscal Agency Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities.  Any such modification, authorization or waiver shall be binding on the registered holders of Securities of this Series and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Securities of this Series as soon as practicable.

All notices to the registered holders of Securities will be published in such publications at such locations as any of the Securities are listed for the period

of time of such listing and as otherwise provided pursuant
to the terms of the Securities of this Series. If at any
time publication in any such publication is not practicable,
notices will be valid if published in an English language
newspaper with general circulation in the respective market
regions as the Republic with the approval of the Fiscal
Agent, shall determine. In addition, notices will be
published in Spanish in a newspaper of general circulation
in Argentina, as the Republic shall determine. Any such
notice shall be deemed to have been given on the date of
such publication or, if published more than once or on
different dates, on the first date on which publication is
made.

No reference herein to the Fiscal Agency Agreement
and no provision of this Security or of the Fiscal Agency
Agreement shall alter or impair the obligation of the
Republic to pay the principal of (and premium, if any[, on])
[and interest on] this Security at the times, place and
rate, and in the coin or currency, herein prescribed.

Claims against the Republic for payment in respect
of the Securities of this Series and interest payments
thereon shall be prescribed and become void unless made
within 10 years (in the case of principal) and 5 years (in
the case of interest) from the appropriate Relevant Date in
respect thereof.

This Security shall be governed by and construed
in accordance with the laws of the State of New York, except
with respect to authorization and execution by the Republic.

The Republic has in the Fiscal Agency Agreement
irrevocably submitted to the jurisdiction of any New York
state or federal court sitting in the Borough of Manhattan,
The City of New York and the courts of the Republic of
Argentina (the "Specified Courts") over any suit, action, or
proceeding against it or its properties, assets or revenues
with respect to the Securities of this Series or the Fiscal
Agency Agreement (a "Related Proceeding"). The Republic has
in the Fiscal Agency Agreement waived any objection to
Related Proceedings in such courts whether on the grounds of
venue, residence or domicile or on the ground that the
Related Proceedings have been brought in an inconvenient
forum. The Republic agrees that a final non-appealable
judgment in any such Related Proceeding (the "Related
Judgment") shall be conclusive and binding upon it and may
be enforced in any Specified Court or in any other courts to
the jurisdiction of which the Republic is or may be subject
(the "Other Courts"), by a suit upon such judgment.

The Republic has in the Fiscal Agency Agreement agreed that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nación Argentina, presently located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose.

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or Other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, form attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that such waiver shall not be effective (i) with respect to the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (ii) with respect to property of the public domain located in the territory of The Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service, and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Fiscal Agent or a holder of Securities of this Series to enforce or execute a Related Judgment.  The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Securities of this Series and the Fiscal Agency Agreement and under no

52

circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Securities of this Series or the Fiscal Agency Agreement.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be entitled to any benefit under the Fiscal Agency Agreement or be valid or obligatory for any purpose.

A-19

53

FOR VALUE RECEIVED the undersigned hereby sell(s), assigns
or transfers unto
PLEASE INSERT SOCIAL SECURITY OR OTHER
   IDENTIFYING NUMBER OF ASSIGNEE

_____

Please print or typewrite name and address including postal

zip code of assignee

the within Security and all rights thereunder, hereby

irrevocably constituting and appointing to transfer such

Security on the books of the Trustee, with full power of

substitution in the premises.

Dated: _____        Signature: _____

                              Notice:  the signature to
                              this assignment must
                              correspond with the name
                              as written upon the face
                              of the written instrument
                              in every particular,
                              without alteration or
                              enlargement or any change
                              whatever.

A-20

# EXHIBIT B

PUBLIC DEBT

Law 26,017

Provisions additional to the provisions governing the bonds of the National State that are eligible for the swap established in Decree No. 1735/2004, but that have not been submitted for the swap ordered by the aforementioned decree. Let Decree No. 1733/2004 be ratified.

Passed: February 9, 2005

Promulgated: February 10, 2005

The Senate and Chamber of Deputies of the Argentine Nation, in Congress assembled, etc.
do pass with force of Law:

ARTICLE 1 – Without prejudice to the effectiveness of any laws and regulations that may apply, the bonds of the National State that are eligible for the swap established in Decree No. 1735 dated December 9, 2004 that have not been submitted for the swap as established in the aforementioned decree shall be subject additionally to the provisions of this law.

ARTICLE 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

ARTICLE 3 – The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

ARTICLE 4 – The national Executive Power must—within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions—order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

ARTICLE 5 – The national Executive Power shall submit a report to the Congress of the Nation that reflects the effects of the swap and the new levels of debt and reduction therein.

ARTICLE 6 – Without prejudice to the above provisions, the bonds of the national State that are eligible pursuant to Decree No. 1735/04 that are deposited for any reason or on any basis to the order of courts of any instance, authority or jurisdiction, whose owners have not adhered to the swap ordered by the aforementioned decree or have not expressly stated, in the respective court proceedings, their intent not to adhere to the aforementioned swap before the closing date thereof, according to the timetable established in the aforementioned decree No. 1735/04 shall be replaced, automatically, by the "2038 STEP UP BONDS OF THE REPUBLIC OF ARGENTINA AT PAR," under the conditions established for the allocation, liquidation and issuance of such bonds by Decree No. 1735/04 and complementary provisions.

Let the Ministry of Economy and Production be authorized to issue any necessary complementary provisions to implement the replacement ordered in this article.

ARTICLE 7 – Let Decree No. 1733 dated December 9, 2004 be ratified.

ARTICLE 8 – Be it communicated to the national Executive Power.

ISSUED IN THE HALL OF SESSIONS OF THE ARGENTINE CONGRESS, IN BUENOS AIRES, ON FEBRUARY NINTH, TWO THOUSAND FIVE.

–RECORDED UNDER No. 26,017–

EDUARDO O. CAMAÑO. – DANIEL O. SCIOLI. – Eduardo D. Rollano. – Juan Estrada.

law 26017.doc



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK      )
                       )      ss
COUNTY OF NEW YORK     )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached Law 26,017.

Sara Rosner, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this _18_ day of _MAY_ , 20 _07_ .

EVAN FINCH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FI6134600
Qualified in New York County
My Commission Expires October 03, 2009

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A., tel 212.631.7432 fax 212.631.7778
San Francisco  220 Montgomery Street, 3rd Floor, San Francisco, CA 94104, U.S.A., tel 415.576.9500 fax 415.520.0525
London  107-111 Fleet Street, London EC4A 2AB, United Kingdom tel +44.(0)20.7936.9002 fax +44.(0)20.7990.9909
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com i www.geotext.com

**DEUDA PUBLICA**

**Ley 26.017**

**Disposiciones adicionales a las que quedarán sujetos los bonos del Estado Nacional que resulten elegibles para el canje establecido en el Decreto Nº 1735/2004 y que no hubiesen sido presentados al canje dispuesto por el mencionado decreto. Ratifícase el Decreto Nº 1733/2004.**

**Sancionada: Febrero 9 de 2005**

**Promulgada: Febrero 10 de 2005**

El Senado y Cámara de Diputados de la Nación Argentina reunidos en Congreso, etc. sancionan con fuerza de Ley:

**ARTICULO 1º** — Sin perjuicio de la vigencia de las normas que resulten aplicables, los bonos del Estado nacional que resulten elegibles para el canje establecido en el Decreto Nº 1735 del 9 de diciembre de 2004, que no hubiesen sido presentados al canje según lo establecido en dicho decreto, quedarán sujetos adicionalmente a las disposiciones de la presente ley.

**ARTICULO 2º** — El Poder Ejecutivo nacional no podrá, respecto de los bonos a que se refiere el artículo 1º de la presente, reabrir el proceso de canje establecido en el Decreto Nº 1735/04 mencionado.

**ARTICULO 3º** — Prohíbese al Estado nacional efectuar cualquier tipo de transacción judicial, extrajudicial o privada, respecto de los bonos a que refiere el artículo 1º de la presente ley.

**ARTICULO 4º** — El Poder Ejecutivo nacional deberá, dentro del marco de las condiciones de emisión de los respectivos bonos, y de las normas aplicables en las jurisdicciones correspondientes, dictar los actos administrativos pertinentes y cumplimentar las gestiones necesarias para retirar de cotización en todas las bolsas y mercados de valores, nacionales o extranjeros, los bonos a que se refiere el artículo anterior.

**ARTICULO 5º** — El Poder Ejecutivo nacional remitirá al Honorable Congreso de la Nación un informe que refleje los efectos del canje y los nuevos niveles de deuda y reducción de la misma.

**ARTICULO 6º** — Sin perjuicio de lo establecido precedentemente, los bonos del Estado nacional elegibles de acuerdo a lo dispuesto por el Decreto Nº 1735/04, depositados por cualquier causa o título a la orden de tribunales de cualquier instancia, competencia y jurisdicción, cuyos titulares no hubieran adherido al canje dispuesto por el decreto antes citado o no hubieran manifestado, en forma expresa, en las respectivas actuaciones judiciales, su voluntad de no adherir al mencionado canje antes de la fecha de cierre del mismo, según el cronograma establecido por el referido decreto Nº 1735/04, quedarán reemplazados, de pleno derecho, por los "BONOS DE LA REPUBLICA ARGENTINA A LA PAR EN PESOS STEP UP 2038", en las condiciones establecidas para la asignación, liquidación y emisión de tales bonos por el Decreto Nº 1735/04 y sus normas complementarias.

Facúltase al Ministerio de Economía y Producción a dictar las normas complementarias que fueren necesarias para instrumentar el reemplazo dispuesto en el presente artículo.

**ARTICULO 7º** — Ratifícase el Decreto Nº 1733 del 9 de diciembre de 2004.

**ARTICULO 8º** — Comuníquese al Poder Ejecutivo nacional.

DADA EN LA SALA DE SESIONES DEL CONGRESO ARGENTINO, EN BUENOS AIRES, A LOS NUEVE DIAS DEL MES DE FEBRERO DEL AÑO DOS MIL CINCO.

—REGISTRADO BAJO EL Nº 26.017—

EDUARDO O. CAMAÑO. — DANIEL O. SCIOLI. — Eduardo D. Rollano. — Juan Estrada.

law 26017.doc

# EXHIBIT C

**PUBLIC DEBT**

**Law No. 26.547**

**Restructuring of the Public Instruments eligible for exchange. Suspension of operation of Articles 2, 3, and 4 of Law No. 26.017.**

**Passed: 18 November 2009**

**Promulgated in fact: 9 December 2009**

The Senate and the Chamber of Deputies of the Argentine Nation, assembled in Congress, etc., pass with force of Law:

**ARTICLE 1.** The operation of Articles 2, 3, and 4 of Law No. 26.017 is suspended until 31 December 2010, or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the public instruments covered by said law is completed, whichever occurs first.

**ARTICLE 2.** The National Executive Branch, through the Ministry of Economy and Public finance, is authorized to perform all those acts that are necessary for the completion of the process of restructuring the public instruments that were eligible for the exchange established in Decree No. 1735 of 9 December 2004 and its supplementary provisions and which were not presented for said exchange, pursuant to the terms of Article 65 of Law No. 24.156 on Financial Administration and National Public Sector Control Systems and its amendments, for the purpose of adapting said debt service to the payment possibilities of the National State in the medium and long terms.

**ARTICLE 3.** The financial terms and conditions that may be offered may not be equal to or better than those offered to creditors in the debt restructuring established by Decree No. 1735/04.

**ARTICLE 4.** The public debt instruments that may be issued as a consequence of the provisions of the within law and the provisions of Articles 7 and 10 of Law No. 23.928 and its amendments, as pertinent, are excepted.

**ARTICLE 5.** Holders of public instruments that were eligible for the exchange established in Decree No. 1735/04 and its supplementary provisions who wish to participate in the restructuring operation carried out pursuant to the provisions of the within law must waive all the rights they hold by virtue of said instruments, including those rights recognized by any judicial or administrative decision, arbitration award, or decision of any other authority, and must desist from and hold the Argentine Republic harmless of any judicial, administrative, or arbitration proceedings or any other type of proceeding that has been or may be brought in the future in relation to the said instruments or the obligations of the Argentine Republic that may arise therefrom, including any action designed to collect principal or interest service on said instruments.

It is forbidden to offer to the holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings.

**ARTICLE 6.** The Ministry of Economy and Public Finance shall report quarterly to the Honorable Congress of the Nation on the progress in the negotiations and the agreements reached during the negotiation process.

**ARTICLE 7.** This Law is sent to the National Executive Branch.

GIVEN IN THE ASSEMBLY HALL OF THE ARGENTINE CONGRESS, IN BUENOS AIRES, ON THE EIGHTEENTH DAY OF THE MONTH OF NOVEMBER IN THE YEAR TWO THOUSAND NINE.

— RECORDED UNDER No. 26.547 —

JOSE J.B. PAMPURO. – EDUARDO A. FELLNER. - Enrique Hidalgo. – Juan H. Estrada



Juris Services International
Translation Studio
23 Normandy Terrace
Bronxville, NY 10708
Tel: 212 759-5400 Fax: 212 401-8125

CERTIFICATE OF ACCURACY

State of New York            )
Village of Bronxville     : ss.:
County of Westchester      )

This is to certify that the attached translation from SPANISH into ENGLISH of the
document entitled/described below is a true and accurate rendition of the original Spanish
document:

INFOLEG                                                    Page 1 of 1

**DEUDA PÚBLICA**

**Ley 26.547**

**Reestructuración de los Títulos Públicos elegibles para el canje. Suspéndese la vigencia de los
artículos 2°, 3° y 4° de la Ley N° 26.017.**

**Sancionada: Noviembre 18 de 2009**

**Promulgada de Hecho: Diciembre 9 de 2009**

................................................................................................................................

**ARTICULO 7°** — Comuníquese al Poder Ejecutivo nacional.

DADA EN LA SALA DE SESIONES DEL CONGRESO ARGENTINO, EN BUENOS AIRES, A LOS DIECIOCHO
DIAS DEL MES DE NOVIEMBRE DEL AÑO DOS MIL NUEVE.

— REGISTRADA BAJO EL N° 26.547 —

JOSE J. B. PAMPURO. — EDUARDO A. FELLNER — Enrique Hidalgo. — Juan H. Estrada.

John E. Considine
President

Date   25/MAR 2010

**DEUDA PUBLICA**
**Ley 26.547**
**Reestructuración de los Títulos Públicos elegibles para el canje. Suspéndese la vigencia de los artículos 2°, 3° y 4° de la Ley N° 26.017.**
**Sancionada: Noviembre 18 de 2009**
**Promulgada de Hecho: Diciembre 9 de 2009**

El Senado y Cámara de Diputados de la Nación Argentina reunidos en Congreso, etc. sancionan con fuerza de Ley:

**ARTICULO 1°** — Suspéndese la vigencia de los artículos 2°, 3° y 4° de la Ley 26.017 hasta el 31 de diciembre del 2010 o hasta tanto el Poder Ejecutivo nacional, a través del Ministerio de Economía y Finanzas Públicas, declare terminado el proceso de reestructuración de los títulos públicos alcanzados por la referida norma, lo que ocurra primero.

**ARTICULO 2°** — Autorízase al Poder Ejecutivo nacional, a través del Ministerio de Economía y Finanzas Públicas, a realizar todos aquellos actos necesarios para la conclusión del proceso de reestructuración de los títulos públicos que fueran elegibles para el canje dispuesto en el Decreto N° 1735 del 9 de diciembre de 2004 y sus normas complementarias que no hubiesen sido presentados al mismo, en los términos del artículo 65 de la Ley 24.156 de Administración Financiera y de los Sistemas de Control del Sector Público Nacional y sus modificatorias, a fin de adecuar los servicios de dicha deuda a las posibilidades de pago del Estado nacional en el mediano y largo plazo.

**ARTICULO 3°** — Los términos y condiciones financieros que se ofrezcan no podrán ser iguales ni mejores que los ofrecidos a los acreedores, en la reestructuración de deuda dispuesta por el Decreto N° 1735/04.

**ARTICULO 4°** — Exceptúase a los títulos de deuda pública que se emitan como consecuencia de lo dispuesto en la presente ley, de lo dispuesto en los artículos 7° y 10 de la Ley 23.928 y sus modificaciones, de corresponder.

**ARTICULO 5°** — Los tenedores de títulos públicos que fueran elegibles para el canje dispuesto en el Decreto N° 1735/04 y sus normas complementarias que deseen participar de la operación de reestructuración que se realice en el marco de lo dispuesto en la presente ley, deberán renunciar a todos los derechos que les correspondan en virtud de los referidos títulos, inclusive a aquellos derechos que hubieran sido reconocidos por cualquier sentencia judicial o administrativa, laudo arbitral o decisión de cualquier otra autoridad, y renunciar y liberar a la República Argentina de cualquier acción judicial, administrativa, arbitral o de cualquier otro tipo, iniciada o que pudiere iniciarse en el futuro con relación a los referidos títulos o a las obligaciones de la República Argentina que surjan de los mismos, incluyendo cualquier acción destinada a percibir servicios de capital o intereses de dichos títulos.

Prohíbese ofrecer a los tenedores de deuda pública que hubieran iniciado acciones judiciales, administrativas, arbitrales o de cualquier otro tipo un trato más favorable que a aquellos que no lo hubieran hecho.

**ARTICULO 6°** — El Ministerio de Economía y Finanzas Públicas informará trimestralmente al Honorable Congreso de la Nación, el avance de las tratativas y los acuerdos a los que se arribe durante el proceso de negociación.

**ARTICULO 7°** — Comuníquese al Poder Ejecutivo nacional.

DADA EN LA SALA DE SESIONES DEL CONGRESO ARGENTINO, EN BUENOS AIRES, A LOS DIECIOCHO DIAS DEL MES DE NOVIEMBRE DEL AÑO DOS MIL NUEVE.

— REGISTRADA BAJO EL Nº 26.547 —

JOSE J. B. PAMPURO. — EDUARDO A. FELLNER. — Enrique Hidalgo. — Juan H. Estrada.

EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                             :

NML CAPITAL, LTD.,                    :

                   Plaintiff,      :     08 Civ. 6978 (TPG)

                            :     09 Civ. 1707 (TPG)

       – against –         :     09 Civ. 1708 (TPG)

                            :

REPUBLIC OF ARGENTINA,        :     **ORDER**

                            :

                 Defendant.   :

                            :
------------------------------------------------x

     Upon consideration of the motion by NML Capital, Ltd. ("NML") for partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure ("FRCP") and for injunctive relief and/or specific performance pursuant to FRCP 65(d) and the court's inherent equitable powers, the response of the Republic of Argentina (the "Republic") thereto, NML's reply, and all other arguments submitted to the court in the parties' papers and at the hearing held on September 28, 2011;

     WHEREAS the uncontested facts establish that:

     1.    The Republic issued bonds pursuant to a 1994 Fiscal Agency Agreement ("FAA").

     2.    Paragraph 1(c) of the FAA provides, among other things, that:

> The Securities [i.e., the bonds] will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and

unsubordinated External Indebtedness (as defined in this Agreement).

3.      The bonds issued pursuant to the FAA contain the following

clause, as quoted in <u>EM Ltd. v. The Republic of Argentina</u>, 720 F.Supp.2d 273,

278 (S.D.N.Y. 2010):

> The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York state or federal court sitting in the Borough of Manhattan, The City of New York and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement (a "Related Proceeding") except with respect to any actions brought under the United States federal securities laws.  The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final nonappealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

4.      NML owns bonds issued pursuant to the FAA ("NML's Bonds").

5.      The Republic issued other bonds in its 2005 and 2010 Exchange

Offers ("Exchange Bonds"), thereby creating new unsecured and

unsubordinated External Indebtedness.

6.      The Republic has satisfied the payment obligations that have come

due to date under the Exchange Bonds.

7.      The Republic has not paid principal or interest on NML's Bonds

since December, 2001.

8.   NML has brought the captioned actions to recover on the defaulted bonds, pursuant to its legal rights, and also pursuant to the express undertakings in the bonds.

9.   On February 10, 2005, Argentina enacted Law 26,017, providing that the "national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to bonds" that were eligible to participate in the 2005 Exchange Offer.

10.   On December 9, 2009, Argentina enacted Law 26,547, which, *inter alia*, suspended the effect of Law 26,017 for a period of time during which the 2010 Exchange Offer was launched, closed, and consummated.  Law 26,547 also provides that the "Republic of Argentina . . . is prohibited to offer holders of government bonds [including those issued pursuant to the FAA] who may have initiated judicial, administrative, arbitration or any other type of action [to enforce their rights], more favorable treatment than what is offered to those who have not done so."

WHEREAS NML claims that the Republic breached (and continues to breach) its contractual duty to rank its payment obligations under NML's Bonds at least equally with all its other present and future unsecured and unsubordinated External Indebtedness, NML seeks summary judgment on the Republic's liability for that breach, and NML seeks an injunction that would restore it to its bargained-for position among other creditors;

It is HEREBY ORDERED that:

1.   The motion for partial summary judgment pursuant to Rule 56(a) is GRANTED.

2.   It is DECLARED, ADJUDGED, and DECREED that the Republic is required under Paragraph 1(c) of the FAA at all times to rank its payment obligations pursuant to NML's Bonds at least equally with all the Republic's other present and future unsecured and unsubordinated External Indebtedness.

3.   It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

4.   It is DECLARED, ADJUDGED, and DECREED that the Republic violates Paragraph 1(c) of the FAA whenever it lowers the rank of its payment obligations under NML's Bonds below that of any other present or future unsecured and unsubordinated External Indebtedness, including (and without limitation) by relegating NML's bonds to a non-paying class by failing to pay the obligations currently due under NML's Bonds while at the same time making payments currently due to holders of other unsecured and unsubordinated External Indebtedness or by legislative enactment.

5.   It is DECLARED, ADJUDGED, and DECREED that the Republic lowered the rank of NML's bonds in violation of Paragraph 1(c) of the FAA when it made payments currently due under the Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds.

- 4 -

6.     It is DECLARED, ADJUDGED, and DECREED that the Republic lowered the rank of NML's bonds in violation of Paragraph 1(c) of the FAA when it enacted Law 26,017 and Law 26,547.

7.     It is DECLARED, ADJUDGED, and DECREED that the aforesaid laws were in direct violation of the right of NML under the FAA and the bond agreements to bring a legal action in court to recover on the defaulted bonds.

8.     The motion for injunctive relief and/or specific performance pursuant to FRCP 65(d) and the court's inherent equitable powers is DENIED at the present time to permit further consideration by the court regarding the means of enforcement of the present ORDER.

SO ORDERED.

Dated: New York, New York
          December 7, 2011

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/7/11

- 5 -

EXHIBIT E

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/23/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

NML CAPITAL, LTD.                                    08 Civ. 6978 (TPG)
                                                     09 Civ. 1707 (TPG)
                    Plaintiff,                       09 Civ. 1708 (TPG)

        v.

REPUBLIC OF ARGENTINA,

                    Defendant.
-----------------------------------------------------------x

### ~~[PROPOSED]~~ ORDER

WHEREAS, in an Order dated December 7, 2011, this Court found that, under Paragraph 1(c) of the 1994 Fiscal Agency Agreement ("FAA"), the Republic is "required . . . at all times to rank its payment obligations pursuant to NML's Bonds at least equally with all the Republic's other present and future unsecured and unsubordinated External Indebtedness."

WHEREAS, in its December 7, 2011 Order, this Court granted partial summary judgment to NML on its claim that the Republic repeatedly has breached, and continues to breach, its obligations under Paragraph 1(c) of the FAA by, among other things, "ma[king] payments currently due under the Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds."

And WHEREAS NML Capital, Ltd. ("NML") has filed a renewed motion for equitable relief as a remedy for such violations pursuant to Rule 65(d) of the Federal Rules of Civil Procedure and the Court's inherent equitable powers.

14293534

Upon consideration of NML's renewed motion, the response of the Republic of Argentina (the "Republic") thereto, NML's reply, and all other arguments submitted to the Court in the parties' papers and at oral argument, it is HEREBY ORDERED that:

1.      It is DECLARED, ADJUDGED, and DECREED that NML is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA, and that the equities and public interest strongly support issuance of equitable relief to prevent the Republic from further violating Paragraph 1(c) of the FAA, in that:

    a.  Absent equitable relief, NML would suffer irreparable harm because the Republic's payment obligations to NML would remain debased of their contractually-guaranteed status, and NML would never be restored to the position it was promised that it would hold relative to other creditors in the event of default.

    b.  There is no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA because the Republic has made clear—indeed, it has codified in Law 26,017 and Law 26,547—its intention to defy any money judgment issued by this Court.

    c.  The balance of the equities strongly supports this Order in light of the clear text of Paragraph 1(c) of the FAA and the Republic's repeated failures to make required payments to NML.  In the absence of the equitable relief provided by this Order, the Republic will continue to violate Paragraph 1(c) with impunity, thus subjecting NML to harm.  On the other hand, the Order requires of the Republic only that which it

promised NML and similarly situated creditors to induce those creditors to purchase the Republic's bonds. Because the Republic has the financial wherewithal to meet its commitment of providing equal treatment to both NML (and similarly situated creditors) and those owed under the terms of the Exchange Bonds, it is equitable to require it to do so. Indeed, equitable relief is particularly appropriate here, given that the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to NML, in direct violation of its contractual commitment set forth in Paragraph 1(c) of the FAA.

d. The public interest of enforcing contracts and upholding the rule of law will be served by the issuance of this Order, particularly here, where creditors of the Republic have no recourse to bankruptcy regimes to protect their interests and must rely upon courts to enforce contractual promises. No less than any other entity entering into a commercial transaction, there is a strong public interest in holding the Republic to its contractual obligations.

2.   The Republic accordingly is permanently ORDERED to specifically perform its obligations to NML under Paragraph 1(c) of the FAA as follows:

a.   Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the

3

2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the Republic shall concurrently or in advance make a "Ratable Payment" (as defined below) to NML.

b.   Such "Ratable Payment" that the Republic is ORDERED to make to NML shall be an amount equal to the "Payment Percentage" (as defined below) multiplied by the total amount currently due to NML in respect of the bonds at issue in these cases (08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708), including pre-judgment interest (the "NML Bonds").

c.   Such "Payment Percentage" shall be the fraction calculated by dividing the amount actually paid or which the Republic intends to pay under the terms of the Exchange Bonds by the total amount then due under the terms of the Exchange Bonds.

d.   The Republic is ENJOINED from violating Paragraph 1(c) of the FAA, including by making any payment under the terms of the Exchange Bonds without complying with its obligation pursuant to Paragraph 1(c) of the FAA by concurrently or in advance making a Ratable Payment to NML.

e.   Within three (3) days of the issuance of this ORDER, the Republic shall provide copies of this ORDER to all parties involved, directly or indirectly, in advising upon, preparing, processing, or facilitating any payment on the Exchange Bonds (collectively, "Agents and Participants"), with a copy to counsel for NML. Such Agents and Participants shall be bound by the terms of this ORDER as provided by Rule 65(d)(2) and

prohibited from aiding and abetting any violation of this ORDER, including any further violation by the Republic of its obligations under Paragraph 1(c) of the FAA, such as any effort to make payments under the terms of the Exchange Bonds without also concurrently or in advance making a Ratable Payment to NML.

    f.    Concurrently or in advance of making a payment on the Exchange Bonds, the Republic shall certify to the Court and give notice of this certification to its Agents and Participants, and to counsel for NML, that the Republic has satisfied its obligations under this ORDER to make a Ratable Payment to NML.

3.    NML shall be entitled to discovery to confirm the timing and amounts of the Republic's payments under the terms of the Exchange Bonds; the amounts the Republic owes on these and other obligations; and such other information as appropriate to confirm compliance with this ORDER;

4.    The Republic is permanently PROHIBITED from taking action to evade the directives of this ORDER, render it ineffective, or to take any steps to diminish the Court's ability to supervise compliance with the ORDER, including, but not limited to, altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds, without obtaining prior approval of the Court;

5.   This Court shall retain jurisdiction to monitor and enforce this ORDER, and to modify and amend it as justice requires to achieve its equitable purposes and to account for changing circumstances.

Dated: _Feb. 23, 2012_

Thomas P. Griesa

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
                             :

NML CAPITAL, LTD.,          :

              Plaintiff,     :

                             :

      – against –        :

REPUBLIC OF ARGENTINA,   :

                             :

           Defendants.    :

                             :
---------------------------------------------x

**ORDER**

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

## AMENDED FEBRUARY 23, 2012 ORDER

WHEREAS, in an Order dated December 7, 2011, this Court found that, under Paragraph 1(c) of the 1994 Fiscal Agency Agreement ("FAA"), the Republic is "required . . . at all times to rank its payment obligations pursuant to NML's Bonds at least equally with all the Republic's other present and future unsecured and unsubordinated External Indebtedness."

WHEREAS, in its December 7, 2011 Order, this Court granted partial summary judgment to NML on its claim that the Republic repeatedly has breached, and continues to breach, its obligations under Paragraph 1(c) of the FAA by, among other things, "ma[king] payments currently due under the Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds."

1

And WHEREAS NML Capital, Ltd. ("NML") has filed a renewed motion for equitable relief as a remedy for such violations pursuant to Rule 65(d) of the Federal Rules of Civil Procedure and the Court's inherent equitable powers.

Upon consideration of NML's renewed motion, the response of the Republic of Argentina (the "Republic") thereto, NML's reply, and all other arguments submitted to the Court in the parties' papers and at oral argument, it is HEREBY ORDERED that:

1.   It is DECLARED, ADJUDGED, and DECREED that NML is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA, and that the equities and public interest strongly support issuance of equitable relief to prevent the Republic from further violating Paragraph 1(c) of the FAA, in that:

   a. Absent equitable relief, NML would suffer irreparable harm because the Republic's payment obligations to NML would remain debased of their contractually-guaranteed status, and NML would never be restored to the position it was promised that it would hold relative to other creditors in the event of default.

   b. There is no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA because the Republic has made clear – indeed, it has codified in Law 26,017 and Law

26,547 – its intention to defy any money judgment issued by this Court.

c.  The balance of the equities strongly supports this Order in light of the clear text of Paragraph 1(c) of the FAA and the Republic's repeated failures to make required payments to NML.  In the absence of the equitable relief provided by this Order, the Republic will continue to violate Paragraph 1(c) with impunity, thus subjecting NML to harm.  On the other hand, the Order requires of the Republic only that which it promised NML and similarly situated creditors to induce those creditors to purchase the Republic's bonds.  Because the Republic has the financial wherewithal to meet its commitment of providing equal treatment to both NML (and similarly situated creditors) and those owed under the terms of the Exchange Bonds, it is equitable to require it to do so.  Indeed, equitable relief is particularly appropriate here, given that the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to NML, in direct violation of its contractual commitment set forth in Paragraph 1(c) of the FAA.

d.  The public interest of enforcing contracts and upholding the rule of law will be served by the issuance of this Order, particularly here, where creditors of the Republic have no

recourse to bankruptcy regimes to protect their interests and must rely upon courts to enforce contractual promises. No less than any other entity entering into a commercial transaction, there is a strong public interest in holding the Republic to its contractual obligations.

2.  The Republic accordingly is permanently ORDERED to specifically perform its obligations to NML under Paragraph 1(c) of the FAA as follows:

a.  Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the Republic shall concurrently or in advance make a "Ratable Payment" to NML (as defined below and as further defined in the Court's Opinion of November 21, 2012).

b.  Such "Ratable Payment" that the Republic is ORDERED to make to NML shall be an amount equal to the "Payment Percentage" (as defined below) multiplied by the total amount currently due to NML in respect of the bonds at issue in these cases (08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708), including pre-judgment interest (the "NML Bonds").

c.  Such "Payment Percentage" shall be the fraction calculated by dividing the amount actually paid or which the Republic

4

intends to pay under the terms of the Exchange Bonds by the total amount then due under the terms of the Exchange Bonds.

d. The Republic is ENJOINED from violating Paragraph 1(c) of the FAA, including by making any payment under the terms of the Exchange Bonds without complying with its obligation pursuant to Paragraph 1(c) of the FAA by concurrently or in advance making a Ratable Payment to NML.

e. Within three (3) days of the issuance of this ORDER, the Republic shall provide copies of this ORDER to all participants in the payment process of the Exchange Bonds ("Participants"). Such Participants shall be bound by the terms of this ORDER as provided by Rule 65(d)(2) and prohibited from aiding and abetting any violation of this ORDER, including any further violation by the Republic of its obligations under Paragraph 1(c) of the FAA, such as any effort to make payments under the terms of the Exchange Bonds without also concurrently or in advance making a Ratable Payment to NML.

f. "Participants" refer to those persons and entities who act in active concert or participation with the Republic, to assist the Republic in fulfilling its payment obligations under the Exchange Bonds, including: (1) the indenture trustees and/or registrars under the Exchange Bonds (including but not limited to The Bank of New York Mellon f/k/a/ The Bank of New York);

(2) the registered owners of the Exchange Bonds and nominees

of the depositaries for the Exchange Bonds (including but not

limited to Cede & Co. and The Bank of New York Depositary

(Nominees) Limited) and any institutions which act as

nominees;  (3) the clearing corporations and systems,

depositaries, operators of clearing systems, and settlement

agents for the Exchange Bonds (including but not limited to the

Depository Trust Company, Clearstream Banking S.A.,

Euroclear Bank S.A./N.V. and the Euroclear System);  (4)

trustee paying agents and transfer agents for the Exchange

Bonds (including but not limited to The Bank of New York

(Luxembourg) S.A. and The Bank of New York Mellon (including

but not limited to the Bank of New York Mellon (London));  and

(5) attorneys and other agents engaged by any of the foregoing

or the Republic in connection with their obligations under the

Exchange Bonds.

g. Nothing in this ORDER shall be construed to extend to the

conduct or actions of a third party acting solely in its capacity

as an "intermediary bank," under Article 4A of the U.C.C. and

N.Y.C.L.S. U.C.C. § 4-A-104, implementing a funds transfer in

connection with the Exchange Bonds.

h. Any non-party that has received proper notice of this ORDER,

pursuant to Rule 65(d)(2), and that requires clarification as to

its duties, if any, under this ORDR may make an application to this Court, with notice to the Republic and NML. Such clarification will be promptly provided.

   i.   Concurrently or in advance of making a payment on the Exchange Bonds, the Republic shall certify to the Court and give notice of this certification to its Participants, and to counsel for NML, that the Republic has satisfied its obligations under this ORDER to make a Ratable Payment to NML.

3.   NML shall be entitled to discovery to confirm the timing and amounts of the Republic's payments under the terms of the Exchange Bonds; the amounts the Republic owes on these and other obligations; and such other information as appropriate to confirm compliance with this ORDER;

4.   The Republic is permanently PROHIBITED from taking action to evade the directives of this ORDER, render it ineffective, or to take any steps to diminish the Court's ability to supervise compliance with the ORDER, including, but not limited to, altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds, without obtaining prior approval by the Court;

5.   This Court shall retain jurisdiction to monitor and enforce this ORDER, and to modify and amend it as justice requires to achieve its equitable purposes and to account for changing circumstances.

Dated:  New York, New York
        November, 21 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
#:
DATE FILED: 11/21/12

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

NML CAPITAL, LTD.,                                       :        08 Civ. 6978 (TPG)
                                                        :        09 Civ. 1707 (TPG)
     Plaintiff,                                      :        09 Civ. 1708 (TPG)
                                                        :
v.                                                      :
                                                        :
THE REPUBLIC OF ARGENTINA,                              :
                                                        :
     Defendant.                                     :

```
+--------------------------------------------+
| USDC SDNY                                  |
| DOCUMENT                                   |
| ELECTRONICALLY  FILED                      |
| DOC #: _____                      |
| DATE FILED:  6/20/14                       |
+--------------------------------------------+
```

------------------------------------------------------ x

AURELIUS CAPITAL MASTER, LTD. and                       :
ACP MASTER, LTD.,                                       :        09 Civ. 8757 (TPG)
                                                        :        09 Civ. 10620 (TPG)
     Plaintiffs,                                     :
                                                        :
v.                                                      :
                                                        :
THE REPUBLIC OF ARGENTINA,                              :
                                                        :
     Defendant.                                     :

------------------------------------------------------ x

AURELIUS OPPORTUNITIES FUND II, LLC                     :        10 Civ. 1602 (TPG)
and AURELIUS CAPITAL MASTER, LTD.,                      :        10 Civ. 3507 (TPG)
                                                        :
     Plaintiffs,                                     :
                                                        :
v.                                                      :
                                                        :
THE REPUBLIC OF ARGENTINA,                              :
                                                        :
     Defendant.                                     :        (captions continued on next page)

------------------------------------------------------ x

**ORDER**

```
------------------------------------   :
AURELIUS CAPITAL MASTER, LTD. and      :
AURELIUS OPPORTUNITIES FUND II,        :   10 Civ. 3970 (TPG)
LLC,                                   :   10 Civ. 8339 (TPG)
                                       :
         Plaintiffs,                   :
                                       :
v.                                     :
                                       :
THE REPUBLIC OF ARGENTINA,             :
                                       :
         Defendant.                    x
------------------------------------   :
BLUE ANGEL CAPITAL I LLC,              :
                                       :
         Plaintiff,                    :   10 Civ. 4101 (TPG)
                                       :   10 Civ. 4782 (TPG)
v.                                     :
                                       :
THE REPUBLIC OF ARGENTINA,             :
                                       :
         Defendant.                    x
------------------------------------   :
OLIFANT FUND, LTD.,                    :
                                       :
         Plaintiff,                    :   10 Civ. 9587 (TPG)
                                       :
v.                                     :
                                       :
THE REPUBLIC OF ARGENTINA,             :
                                       :
         Defendant.                    x
------------------------------------   :
PABLO ALBERTO VARELA, et al.,          :
                                       :
         Plaintiff,                    :   10 Civ. 5338 (TPG)
                                       :
v.                                     :
                                       :
THE REPUBLIC OF ARGENTINA,             :
                                       :
         Defendant.                    :
------------------------------------   x
```

1. In his June 17, 2014 speech, Argentina's Economy Minister Axel Kicillof proposed that Argentina initiate steps to carry out a debt exchange to pay the exchange bondholders in Argentina under Argentine law.

2. This court rules that the above proposal of the Economy Minister is in violation of the rulings and procedures now in place in the Southern District of New York, and the Republic of Argentina is prohibited from carrying out the proposal of the Economy Minister.

SO ORDERED.

Dated:   New York, New York
         June 20, 2014

Thomas P. Griesa
United States District Judge

EXHIBIT H

C SDNY
UMENT
TRONICALLY FILED
# :
DATE FILED: 8/6/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x

NML CAPITAL, LTD.,                          :

           Plaintiff,      :      08 Civ. 6978 (TPG)
                     :      09 Civ. 1707 (TPG)
                     :      09 Civ. 1708 (TPG)

           v.                      :

THE REPUBLIC OF ARGENTINA,      :

           Defendant.      :
------------------------------------------------------- x

AURELIUS CAPITAL MASTER, LTD. and      :
ACP MASTER, LTD.,                               :      09 Civ. 8757 (TPG)
                     :      09 Civ. 10620 (TPG)

           Plaintiffs,      :

           v.                      :

THE REPUBLIC OF ARGENTINA,      :

           Defendant.      :

------------------------------------------------------- x

AURELIUS OPPORTUNITIES FUND II, LLC   :
and AURELIUS CAPITAL MASTER, LTD.,      :      10 Civ. 1602 (TPG)
                     :      10 Civ. 3507 (TPG)

           Plaintiffs,      :

           v.                      :

THE REPUBLIC OF ARGENTINA,      :

           Defendant.      :      **(captions continued on next page)**
------------------------------------------------------- x

## ████████ ORDER

2964498.7

```
----------------------------------------- x
AURELIUS CAPITAL MASTER, LTD. and        :
AURELIUS OPPORTUNITIES FUND II, LLC,     :      10 Civ. 3970 (TPG)
                                         :      10 Civ. 8339 (TPG)
                    Plaintiffs,          :
                                         :
           v.                            :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                    Defendant.           :
----------------------------------------- x
BLUE ANGEL CAPITAL I LLC,                :
                                         :
                    Plaintiff,           :      10 Civ. 4101 (TPG)
                                         :      10 Civ. 4782 (TPG)
           v.                            :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                    Defendant.           :
----------------------------------------- x
OLIFANT FUND, LTD.,                      :
                                         :
                    Plaintiff,           :      10 Civ. 9587 (TPG)
                                         :
           v.                            :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                    Defendant.           :
----------------------------------------- x
PABLO ALBERTO VARELA, et al.,            :
                                         :
                    Plaintiff,           :      10 Civ. 5338 (TPG)
                                         :
           v.                            :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                    Defendant.           :
----------------------------------------- x
```

2964498.7

WHEREAS, on November 12, 2012, this Court issued Amended February 23, 2012 Orders in each of the above-captioned cases (the "Amended February 23 Orders"), which provide, among other things, that:  (a) whenever the Republic of Argentina ("Argentina") pays any amount due under the Exchange Bonds, it shall concurrently or in advance make a Ratable Payment to Plaintiffs; (b) Argentina is enjoined from making any payment on the Exchange Bonds without complying with its obligation to make a Ratable Payment to Plaintiffs; (c) concurrently or in advance of making a payment on the Exchange Bonds, Argentina shall certify to the Court, with notice to, among others, counsel for Plaintiffs, that it has satisfied its obligations to make a Ratable Payment to Plaintiffs; and (d) Argentina is permanently prohibited from taking action to evade the directives of the Amended February 23 Orders; and

WHEREAS, on June 26, 2014, Argentina set in motion the process of making certain payments to Exchange Bondholders in defiance of the Orders by transferring the equivalent of approximately $539 million ($230,922,521.14 in US dollars and 225,852,475.66 in Euros) to The Bank of New York Mellon ("BNY") into BNY accounts at the Banco Central de la Republica de Argentina (the "BCRA") (this transfer, together with any other funds, if any, that Argentina has transferred to BNY relating to payments on the Exchange Bonds due on or after June 16, 2014 collectively, the "Funds"); and

WHEREAS, on June 27, 2014 and July 22, 2014, the Court held hearings in these matters, and ruled that the payment by Argentina to BNY described above was a violation of the Amended February 23 Orders and illegal;

2964498.7

**IT IS HEREBY ORDERED** that:

1.     For the reasons stated on the record at the June 27, 2014 and July 22, 2014 hearings, the payment by Argentina to BNY described above was illegal and a violation of the Amended February 23 Orders.

2.     BNY shall retain the Funds in its accounts at the BCRA pending further Order of this Court, and shall not make or allow any transfer of the Funds unless ordered by the Court.

3.     Argentina will take no steps to interfere with BNY's retention of the Funds in accordance with the terms of this Order.

4.     BNY's retention of the Funds in its accounts at the BCRA pursuant to this Order shall not be deemed a violation of the Amended February 23 Orders.  BNY shall incur no liability under the Indenture governing the Exchange Bonds or otherwise to any person or entity for complying with this Order and the Amended February 23 Orders.

Dated: New York, New York
　　　 August _6_, 2014

_____
Thomas P. Griesa
United States District Judge

2

# EXHIBIT I

LEGAL NOTICE

# HOLDERS OF ARGENTINE DEBT SECURITIES - 2005 AND 2010 SOVEREIGN EXCHANGE OFFERS UNDER THE LAWS OF NEW YORK AND UNDER THE LAWS OF ENGLAND AND WALES

The Republic of Argentina hereby notifies the Holders of Argentine Debt Securities who entered into the 2005 and 2010 Sovereign Exchange Offers governed by the laws of the State of New York, United States of America, and by the Laws of England and Wales (the "Exchange Bondholders") that, in light of the failure of The Bank of New York Mellon ("BNY Mellon") to resign as Trustee under the Trust Indenture dated as of June 2, 2005, as amended as of April 30, 2010, between the Republic of Argentina and BNY Mellon (the "Trust Indenture"), as it is required to do pursuant to Section 5.8 of the Trust Indenture because it has ceased to be eligible to serve as Trustee in accordance with the provisions of that Section, the Republic of Argentina has formally requested, in a letter dated 22 September 2014 to The Bank of New York Mellon, that it tender its resignation immediately.

If BNY Mellon does not immediately resign, as requested pursuant to Section 5.8 of the Trust Indenture, both the Exchange Bondholders and the Republic of Argentina are entitled to remove it as Trustee and appoint another entity as successor trustee, in accordance with Section 5.9 (b) and (c) of the Trust Indenture.

Firstly, BNY Mellon is no longer eligible to serve as Trustee because it does not have "a trustee, or representative office in the City of Buenos Aires", one of the requirements mandated by Section 5.8 of the Trust Indenture. That Section also provides that "[i]f at any time the Trustee... shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect hereinafter specified in this Indenture".

Indeed, by means of Resolution N° 437 of the Superintendent of Financial and Exchange Institutions of the Central Bank of the Republic of Argentina (the "Central Bank") of August 25, 2014, the authorizations granted to the two individuals who, until then, acted as sole representatives of BNY Mellon in Argentina were revoked. Therefore, since BNY Mellon is neither licensed by the Central Bank to operate as a financial institution in Argentina, nor is it otherwise registered to render services as Trustee, nor is it duly authorized to act through local representatives under the Central Bank regulations on "Representatives of foreign financial institutions not authorized to operate in the country", said bank does not have a trustee or representative office in Argentina, as required under Section 5.8 of the Trust Indenture and, accordingly, it has "ceased to be eligible" to serve as Trustee and should have already complied with its obligation to "resign immediately". Moreover, BNY Mellon has not complied with the Trust Indenture by failing to make both the Exchange Bondholders and the Republic of Argentina aware of this significant change of status, which places it in breach of its obligations, and obliges it to resign immediately and unconditionally.

Secondly, BNY Mellon lacks eligibility to act as Trustee since it has become "incapable of acting", which prevents it from discharging its functions and places it in a clear breach of the Trust Indenture.

As informed in the Legal Notices dated June 27, July 7 and August 7, 2014, the Republic of Argentina deposited on June 26, 2014 the amounts of interests on Debt Securities issued under the Trust Indenture due on June 30, 2014. However, BNY Mellon continues to ignore the repeated requests of the Republic of Argentina (through its letters dated August 6 and 25, 2014) that it comply with its obligations to distribute the amounts paid by the Republic of Argentina to the Exchange Bondholders, in accordance with Sections 3.1, 3.5(a), 4.5 and 4.9 of the Trust Indenture, nor has it undertaken actions, judicial or extrajudicial, in order to effectively comply with its obligations under the Indenture. Hence, it is evident that BNY Mellon has become incapable of acting as Trustee pursuant to Section 5.9 (b) of the Trust Indenture.

For the reasons stated above, the Republic of Argentina has requested that BNY Mellon resign as Trustee immediately and that it stand ready to assign, transfer and deliver, to the successor trustee to be appointed in its place, all property and monies currently held by it, and to execute and deliver an instrument transferring to such successor trustee all rights, powers, duties and obligations of the Trustee, in accordance with Section 5.10 of the Trust Indenture.

Notwithstanding all of the steps already taken by the Republic of Argentina which are described above, and all those which it may take in the future to protect the best interests of the Exchange Bondholders, said Exchange Bondholders should be aware that the Trust Indenture also grants them the rights and tools necessary to remedy the lack of eligibility of BNY Mellon to serve as Trustee, as well as its ongoing breach of its obligations, in particular its obligation to transfer the payments made by the Republic of Argentina to the Exchange Bondholders.

Section 5.9(b) of the Trust Indenture provides that if the Trustee has become ineligible under Section 5.8 and fails to resign after written request, or the Trustee becomes incapable of acting as such, then any Exchange Bondholder who has been a bona fide holder of a Debt Security of any effected Series for at least six months may on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor trustee with respect to the Debt Securities of such Series.

In addition, Section 5.9(c) of the Trust Indenture provides that the Holders of a Majority in aggregate principal amount Outstanding of the Debt Securities of any Series may at any time remove the Trustee and appoint a successor trustee.

The foregoing is without prejudice to the possibility of the Exchange Bondholders actively pursuing any other actions as may be proper to enforce their rights, such as the filing of appeals from the orders of the District Court for the Southern District of New York in the case NML Capital LTD., et al, v. Republic of Argentina, which the Exchange Bondholders may deem to be detrimental to their interests, nor the possibility of commencing new actions as they may deem fit and proper.

This notice shall not be construed or understood as legal advice from, or guidance by, the Republic of Argentina.

The Ministry of Economy and Public Finance shall continue to regularly provide you information as this situation unfolds.

## PRESIDENCY OF THE NATION
## ARGENTINE REPUBLIC

Contact: Analía Rach   Tel. + 54 (11) 4114-9595   Email: privada@jefatura.gob.ar

Ministry of Foreign Affaires and Worship of the Argentine Republic. Esmeralda 1212, C.A.B.A. C1007ABR. Republica Argentina.

Tel. + 54 (11) 4819-7000   •   info@cancilleria.gob.ar   •   http://www.mrecic.gov.ar/

EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/14
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NML CAPITAL, LTD.,

                     Plaintiff,

    – against –

THE REPUBLIC OF ARGENTINA,

                     Defendant.

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

                     Plaintiffs,

    – against –

THE REPUBLIC OF ARGENTINA,

                     Defendant.

09 Civ. 8757 (TPG)
09 Civ. 10620 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AURELIUS OPPORTUNITIES FUND II,
LLC and AURELIUS CAPITAL MASTER,
LTD.,

                     Plaintiffs,

    – against –

THE REPUBLIC OF ARGENTINA,

                     Defendant.

10 Civ. 1602 (TPG)
10 Civ. 3507 (TPG)
10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

**(captions continued on
next page)**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
-------------------------------------x
                                     :
BLUE ANGEL CAPITAL I LLC,            :
                                     :
                     Plaintiff,      :      10 Civ. 4101 (TPG)
                                     :      10 Civ. 4782 (TPG)
           – against –               :
                                     :
THE REPUBLIC OF ARGENTINA,           :
                                     :
                     Defendant.      :
                                     :
-------------------------------------x
                                     :
OLIFANT FUND, LTD.,                  :
                                     :
                     Plaintiff,      :      10 Civ. 9587 (TPG)
                                     :
           – against –               :
                                     :
THE REPUBLIC OF ARGENTINA,           :
                                     :
                     Defendant.      :
                                     :
-------------------------------------x
                                     :
PABLO ALBERTO VARELA, et al.,        :
                                     :
                     Plaintiffs,     :      10 Civ. 5338 (TPG)
                                     :
           – against –               :
                                     :
THE REPUBLIC OF ARGENTINA,           :
                                     :
                     Defendant.      :
                                     :
-------------------------------------x
```

2

## **ORDER**

On September 24, 2014, plaintiffs moved by order to show cause to hold the Republic of Argentina in civil contempt of court for violating the Amended February 23, 2012 order. For the reasons given at the hearing today, the court holds that Argentina is in civil contempt of court. The court will reserve decision on the issue of sanctions for further briefing.

SO ORDERED.

Dated:  New York, New York
        September 29, 2014

Thomas P. Griesa
U. S. District Judge

3

EXHIBIT K

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/3/14_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

NML CAPITAL, LTD.,

                Plaintiff,

      – against –

THE REPUBLIC OF ARGENTINA,

              Defendant.

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

              Plaintiffs,

      – against –

THE REPUBLIC OF ARGENTINA,

              Defendant.

09 Civ. 8757 (TPG)
09 Civ. 10620 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

AURELIUS OPPORTUNITIES FUND II,
LLC and AURELIUS CAPITAL MASTER,
LTD.,

              Plaintiffs,

      – against –

THE REPUBLIC OF ARGENTINA,

              Defendant.

10 Civ. 1602 (TPG)
10 Civ. 3507 (TPG)
10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

**(captions continued on
next page)**

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
------------------------------------x
                                    :
BLUE ANGEL CAPITAL I LLC,           :
                                    :
                    Plaintiff,      :      10 Civ. 4101 (TPG)
                                    :      10 Civ. 4782 (TPG)
        – against –                 :
                                    :
THE REPUBLIC OF ARGENTINA,          :
                                    :
                    Defendant.      :
                                    :
------------------------------------x
                                    :
OLIFANT FUND, LTD.,                 :
                                    :
                    Plaintiff,      :      10 Civ. 9587 (TPG)
                                    :
        – against –                 :
                                    :
THE REPUBLIC OF ARGENTINA,          :
                                    :
                    Defendant.      :
                                    :
------------------------------------x
                                    :
PABLO ALBERTO VARELA, et al.,       :
                                    :
                    Plaintiffs,     :      10 Civ. 5338 (TPG)
                                    :
        – against –                 :
                                    :
THE REPUBLIC OF ARGENTINA,          :
                                    :
                    Defendant.      :
                                    :
------------------------------------x
```

2

## AMENDED AND SUPPLEMENTAL ORDER

On September 29, 2014, pursuant to an order to show cause, the court held a hearing, at the conclusion of which it found that the Republic of Argentina was in civil contempt of court. The reasons for this finding were stated on the record.

The court now reaffirms this finding, and incorporates it by reference in this order.

Pursuant to Local Civil Rule 83.6(c), a finding of contempt should include a statement of conditions the performance of which will operate to purge the contempt. The court believes that it is clear what such conditions are. The Republic of Argentina will need to reverse entirely the steps which it has taken constituting the contempt, including, but not limited to, re-affirming the role of The Bank of New York Mellon as the indenture trustee and withdrawing any purported authorization of Nación Fideicomisos, S.A. to act as the indenture trustee, and complying completely with the February 23, 2012 injunction.

The current order amends and supplements the order of September 29, 2014.

SO ORDERED.

Dated:  New York, New York
        October 3, 2014

Thomas P. Griesa
U. S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/3/14

3