UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
NML CAPITAL, LTD.,

                Plaintiff,

           v.

THE REPUBLIC OF ARGENTINA,

                Defendant.
------------------------------------------------------- x

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)
14 Civ. 8988 (TPG)

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

                Plaintiffs,

           v.

THE REPUBLIC OF ARGENTINA,

                Defendant.
------------------------------------------------------- x

09 Civ. 8757 (TPG)
09 Civ. 10620 (TPG)

AURELIUS OPPORTUNITIES FUND II, LLC
and AURELIUS CAPITAL MASTER, LTD.,

                Plaintiffs,

           v.

THE REPUBLIC OF ARGENTINA,

              Defendant.
------------------------------------------------------- x

10 Civ. 1602 (TPG)
10 Civ. 3507 (TPG)

**(captions continued on next page)**

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTIONS FOR LEAVE TO AMEND AND SUPPLEMENT COMPLAINTS

3077193.1

```
------------------------------------------------------- x
AURELIUS CAPITAL MASTER, LTD. and                      :
AURELIUS OPPORTUNITIES FUND II, LLC,                   :    10 Civ. 3970 (TPG)
                                                       :    10 Civ. 8339 (TPG)
                        Plaintiffs,                    :
                                                       :
           v.                                          :
                                                       :
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                        Defendant.                     :
------------------------------------------------------- x
BLUE ANGEL CAPITAL I LLC,                              :
                                                       :
                        Plaintiff,                     :    10 Civ. 4101 (TPG)
                                                       :    10 Civ. 4782 (TPG)
           v.                                          :
                                                       :
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                        Defendant.                     :
------------------------------------------------------- x
OLIFANT FUND, LTD.,                                    :
                                                       :
                        Plaintiff,                     :    10 Civ. 9587 (TPG)
                                                       :
           v.                                          :
                                                       :
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                        Defendant.                     :
------------------------------------------------------- x
```

**TABLE OF CONTENTS**

Page

**ARGUMENT** ...................................................................................................................1

    I.      THE PROPOSED NEW CLAIMS ARE NOT FUTILE ..........................................1

          A.      Plaintiffs Properly Allege that the BONAR 2024s Are External Indebtedness ................................................................................................1

          B.      Plaintiffs' Claim For Equal Treatment with Respect to All External Indebtedness Satisfies the Notice Pleading Requirements of Rule 8 ..........8

    II.     ARGENTINA CANNOT SHOW PREJUDICE OR BAD FAITH ........................11

**CONCLUSION** ....................................................................................................................12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005)......................................................................................1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................2, 8, 9

*CL-Alexanders Laing & Cruickshank v. Goldfeld*,
  739 F. Supp. 158 (S.D.N.Y. 1990)........................................................................11

*Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp)*,
  752 F.2d 1334 (9th Cir. 1984) ...............................................................................11

*Conley v. Gibson*,
  355 U.S. 41 (1957)..................................................................................................8

*Cresswell v. Sullivan & Cromwell*,
  922 F.2d 60 (2d Cir. 1990).....................................................................................12

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)...................................................................................2

*Evans v. Syracuse City Sch. Dist.*,
  704 F.2d 44 (2d Cir. 1983).....................................................................................12

*Foman v. Davis*,
  371 U.S. 178 (1962)...............................................................................................11

*Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*,
  No. 11 Civ. 1456 (THK), 2011 WL 6034481 (S.D.N.Y. Dec. 5, 2011)..................11

*Henrietta D. v. Bloomberg*,
  331 F.3d 261 (2d Cir. 2003)...................................................................................10

*Int'l Bus. Machines Corp. v. BGC Partners, Inc.*,
  No. 10 Civ. 128, 2010 WL 1924715 (S.D.N.Y. May 12, 2010)..............................10

*Kanyi v. United States*,
  No. 99 Civ. 5851 (ILG), 2002 WL 1471648 (E.D.N.Y. May 3, 2002) ..................11

*Kreisler v. Second Ave. Diner Corp.*,
   731 F.3d 184 (2d Cir. 2013) .................................................................................................10

*Lavaggi v. Republic of Argentina*,
   No. 04 Civ. 5068 (TPG), 2008 WL 4449347 (S.D.N.Y. Sept. 30, 2008) ..................................1

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012) ...................................................................................................9

*OSRecovery Inc. v. One Groupe Int'l Inc.*,
   354 F. Supp. 2d 357 (S.D.N.Y. 2005) ....................................................................................2

*Repsol YPF, S.A. v. Republic of Argentina*,
   No. 12 Civ. 3877 (S.D.N.Y.) ..................................................................................................3

*Safka Holdings LLC v. iPlay, Inc.*,
   42 F. Supp. 3d 488, 492 (S.D.N.Y. 2013) ............................................................................10

*State Trading Corp. of India, Ltd. v. Assuranceforenigen Skuld*,
   921 F.2d 409 (2d Cir. 1990) .................................................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 8 ......................................................................................1, 8, 9, 10

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................2

Federal Rule of Civil Procedure 15(a) .....................................................................................11

Plaintiffs NML Capital, Ltd., Aurelius Capital Master, Ltd., ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, Blue Angel Capital I LLC, and Olifant Fund, Ltd. (collectively "Plaintiffs") respectfully submit this Reply Memorandum of Law in Further Support of their Motions for Leave To Amend and Supplement the Complaints in these thirteen actions to add two additional claims for declaratory and injunctive relief.

## ARGUMENT

### I.
### THE PROPOSED NEW CLAIMS ARE NOT FUTILE

Argentina asserts that Plaintiffs' motion should be denied because the new claims Plaintiffs propose to add are futile. A proposed amendment is futile, however, only if *no* set of facts could establish the new claim. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005); *Lavaggi v. Republic of Argentina*, No. 04 Civ. 5068 (TPG), 2008 WL 4449347, at *2 (S.D.N.Y. Sept. 30, 2008) ("An amendment may be denied as futile when it would be subject to immediate dismissal." (quotation marks and citation omitted)). According to the Republic, the claim seeking equal treatment with respect to the BONAR 2024 Bonds fails because, as a *factual* matter, these bonds are not External Indebtedness, and the claim seeking equal treatment with respect to all External Indebtedness fails to fulfill the notice pleading requirements of Federal Rule of Civil Procedure 8. Argentina is wrong on both counts.

**A.  Plaintiffs Properly Allege that the BONAR 2024s Are External Indebtedness**

Paragraph 1(c) of the FAA requires that Argentina rank its payment obligations under Plaintiffs' bonds equally with "all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement)."  (FAA (Rapport Decl.

Ex. 10) at 2).[1]  "External Indebtedness" is defined to include bonds "denominated or payable" in a "currency other than the lawful currency of the Republic" — "provided that no Domestic Foreign Currency Indebtedness . . . shall constitute External Indebtedness."  (*Id.* at 16).

The BONAR 2024 Bonds unquestionably satisfy the first part of the External Indebtedness definition because they are payable in U.S. dollars.  Argentina's only argument that they constitute Domestic Foreign Currency Indebtedness ("DFCI") is that, contrary to the facts as alleged in Plaintiffs' proposed amended complaints, the bonds were "offered exclusively within the Republic of Argentina."  (FAA at 17; *see* Republic's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend and Supplement Complaints ("Republic Br.") at 8-10).  But on a motion for leave to amend, the Court must apply the Rule 12(b)(6) standard, under which all allegations in Plaintiffs' proposed pleading must be taken as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The pleading plainly alleges facts sufficient to state a claim that the bonds were not offered exclusively in Argentina.  (*See, e.g.*, Proposed Am. Compl. (Rapport Decl. Ex. 1) at ¶¶ 1, 13, 50-60, 63-64).[2]  Plaintiffs' claim is therefore not futile.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("[T]he duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." (internal quotations and citation omitted)); *OSRecovery Inc. v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357, 364 (S.D.N.Y. 2005) ("The issue is not whether the plaintiff ultimately will prevail but whether the plaintiff is entitled to offer evidence to support its claims.").

---

[1] "Rapport Decl." refers to the Declaration of Daniel B. Rapport filed May 11, 2015 with the Motion for Leave to Amend and Supplement the Complaints, Docket No. 508 in Case No. 09 Civ. 8757.

[2] This Reply Memorandum cites to the proposed amended complaint in Case No. 09 Civ. 8757, which is attached as Exhibit 1 to the Rapport Declaration.  The proposed amended complaints in each of Plaintiffs' actions contain similar allegations.  *See* Rapport Decl. Exs. 2-8; Exs. 1-4 to the Declaration of Robert A. Cohen filed May 12, 2015, Docket No. 783 in Case No. 08 Civ. 6978; Ex. 1 to the Declaration of Leonard F. Lesser filed May 11, 2015, Docket No. 241 in Case No. 10 Civ. 9587.

Moreover, Plaintiffs have put forward abundant facts from which a trier of fact could conclude that Argentina offered the bonds outside of Argentina as part of a concerted effort to raise money from the international capital markets. When credited as true (as they must be on this motion), these facts state a viable claim for relief.

Argentina first issued BONAR 2024s — $3.25 billion in May 2014 — as compensation to settle non-Argentine claims asserted by the Spanish oil company Repsol S.A., including lawsuits in New York and Spain and an international arbitration under United Nations Commission on International Trade Law ("UNCITRAL") Rules commenced pursuant to a Spanish-Argentine treaty. The Republic contends that because the settlement agreement with Repsol was purportedly negotiated, signed and closed in Argentina, that should be a sufficient basis upon which to conclude that the bonds were offered exclusively in Argentina. (Republic Br. at 8).

Of course, none of Argentina's factual assertions have been tested by discovery, and they are of dubious value anyway. Debt offerings are certainly not limited to the formalities of closing and signing, and there is strong reason to believe that negotiations took place outside Argentina. In all events, the facts set forth by Plaintiffs overwhelmingly show that this was not an offering "exclusively in Argentina." Argentina gave the bonds to a non-Argentine entity, headquartered in Spain, as compensation to resolve disputes pending in jurisdictions outside Argentina. Repsol was represented by counsel in the United States and Spain in connection with these disputes, *see, e.g.*, *Repsol YPF, S.A. v. Republic of Argentina*, No. 12 Civ. 3877 (S.D.N.Y.), and press reports indicate that Repsol's largest shareholders — Spanish bank Caixabank SA and Mexican oil company Pemex — also participated in the discussions that led to the issuance, (Christopher Bjork, *Repsol Rejects YPF Compensation Offer*, Dow Jones & Company, June 27,

2013 (Farris Decl. Ex. 1)).  Repsol's board in Spain and shareholders around the world needed to approve the offer, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, payments on the bonds are exempt from Argentine exchange restrictions and taxes, and any disputes arising out of the agreement would be resolved by an international UNCITRAL arbitration in France.  (Repsol Settlement Agreement (Rapport Decl. Ex. 20) at 16, 19-20, 34; Repsol Press Release, Nov. 25, 2013 (Farris Decl. Ex. 2); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

And Argentina had every intent and desire that the bonds would be immediately distributed to investors around the world.  Argentina's compensation obligation to Repsol was not satisfied by mere delivery of the bonds.  (Repsol Settlement Agreement at 8).  That obligation, however, would be fulfilled if the bonds were transferred to parties other than Repsol.  (*Id.*; Repsol Official Notice, Feb. 25, 2015 (Farris Decl. Ex. 3)).  To facilitate that transfer and get the full benefit of the agreement, Argentina agreed that the bonds would clear through Euroclear because investors outside of Argentina would want the bonds to be clearable through Euroclear or some other international clearing system.  (Repsol Settlement Agreement at 51).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the bonds have since actively traded on markets in the United States and Germany.  (*See, e.g.*, Börse Frankfurt Report (Farris Decl. Ex. 4) at 1).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3077193.1

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████          ████████

██████████████████████████████████ and press reports confirmed that New York-based Fintech Advisory, Inc., among others, purchased bonds from Argentina.  (*See* Javier Blanco, *No Relief in 2015: Debt issue raises less than 10% of what was hoped*, La Nación, Dec. 13, 2014 (Rapport Decl. Ex. 54)).

And Argentina's preparation for the third and most recent issuance — $1.4 billion in April 2015 — shows that Argentina anticipated that non-Argentines would participate in the issuance and that Argentina used non-Argentines to market the BONAR 2024s outside of Argentina.  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████████  Argentina resumed the issuance process by announcing on April 21 that it would issue more BONAR 2024 Bonds, in a transaction that would settle just two days later.  (*See* Ministry of the Economy Press Release, "Invitation to Bid" (Rapport Decl. Ex. 36); Joint Resolution 31/2015 & 10/2015 (Rapport Decl. Ex. 37)).  Deutsche Bank personnel in New York and London solicited

5

investors (including some of the Plaintiffs) for orders, worked with New York-based firms to ensure the success of the offering, ▬▬▬▬▬▬▬▬▬▬ (Bloomberg Message from Deutsche New York Syndicate, Apr. 21, 2015 (Rapport Decl. Ex. 38); Paola Quain, *Pepa and Szpigiel, the operators behind the "financial summer,"* Perfil, May 3, 2015 (Rapport Decl. Ex. 45)). ▬▬▬▬▬▬▬▬▬▬ and Argentina's foreign reserves increased by $1.247 billion, consistent with reports that 90% of the BONAR 2024 Bonds had been purchased by foreign investors. ▬▬▬▬▬▬▬▬▬▬ Alejandro Vanoli, Twitter, Apr. 23, 2015, 11:24 AM, https://twitter.com/VanoliAlejandro/status/591306648511246337 (Rapport Decl. Ex. 50)).

The Republic understood that the issuances would only succeed if the offer was made to foreign investors ▬▬▬▬▬▬▬▬▬▬ So Argentina enacted regulations before the second and third issuances to facilitate international investors receipt of their newly purchased bonds.  (*See* CNV Regulations (Rapport Decl. Ex. 51), Art. 70 (requiring that purchasing agents hold newly purchased securities denominated in foreign currency in an account for 72 hours before they can be transferred to the beneficial owners); CNV Resolution, Dec. 10 2014 (Rapport Decl. Ex. 52), at Art. 1 (providing an exception to the 72-hour requirement purchases that are part of "primary placement processes," such as new bond issuances)).  And according to press reports, the latest offering "built up steam" when Argentina enacted an exception to the capital controls regulations, opening a "channel that would open up access to bids in dollars from



3077193.1

abroad." (Ignacio Olivero Doll, *Bonar: issuance built up steam thanks to the dollars from abroad*, Ámbito Financiero, Apr. 22, 2015 (Ex. 53)).

Argentina points out that there was no prospectus for the second and third issuances, only a Spanish-language press release, (Republic Br. at 10), but Argentina understood that the press release and its offer would immediately reach investors around the world, and nothing in the release suggested that the bonds — which cleared through Euroclear and traded on foreign exchanges — were being offered only to investors in Argentina ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Argentina also argues that its self-imposed requirement that orders be formally placed through local Argentinean "agents" — e.g., Deutsche Bank S.A. — is dispositive of where the bonds were offered. (Republic Br. at 9). That argument defies reality. To the extent local "agents" placed these orders, it was because investors — largely located outside of Argentina — had told them they wanted to accept the Republic's offer and buy bonds. Indeed, Argentina told investors that they had to "address their expressions of interest" through the "agents." (Ministry of the Economy Press Release, "Invitation to Bid;" *see also* Ministry of the Economy Press Release, "Announcement of Early Pay-off" (Farris Decl. Ex. 5) at 7 (instructing investors in the December 2014 BONAR 2024 Offering to place bids through authorized brokers)). Argentina cannot conceal the fact that the bonds were both offered and sold outside of Argentina by the mere expediency of laundering the international offering through local "agents."[3]

---

[3] Although Argentina contends that it has "routinely" used transactions of this nature (Republic Br. at 9), it does not cite any other such transactions, and they would be irrelevant to whether Argentina offered the bonds exclusively in Argentina.

7

Although Argentina's opposition pretends as if the BONAR 2024 offers were strictly local affairs, Argentina's leaders trumpeted the offering as evidence of the Republic's ability to tap the international markets. Economy Minister Axel Kicillof gloated: "It has long been said that Argentina was isolated from the world, without access to the international markets; this [offering] lays that idea to rest." (*Kicillof: "The bids received for BONAR 24 exceeded expectations,"* Prensa Argentina, Apr. 24, 2015 (Rapport Decl. Ex. 47)). Argentina's President, Cristina Fernandez de Kirchner, triumphantly declared that the country had "returned to the capital markets at reasonable rates." (*CFK: 'We'll Never Honour International Usury Or Scam,'* Buenos Aires Herald, Apr. 28, 2015 (Rapport Decl. Ex. 48).) The President of Argentina's Central Bank similarly crowed: "The most important thing is that Argentina has the chance to access the markets." (*Kicillof: "They must be annoyed,"* La Nación, Apr. 23, 2015 (Rapport Decl. Ex. 49)).

Accordingly, Plaintiffs have plausibly alleged that the BONAR 2024 Bonds were not offered exclusively in Argentina and constitute External Indebtedness, and have properly stated a viable claim for equal treatment with respect to the BONAR 2024 Bonds.

**B.** **Plaintiffs' Claim For Equal Treatment with Respect to All External Indebtedness Satisfies the Notice Pleading Requirements of Rule 8**

Argentina erroneously attacks Plaintiffs' claim for equal treatment with respect to all of the Republic's External Indebtedness on the ground that it does not satisfy Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading must "give the defendant fair notice of what the claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rule 8 does not require "detailed factual allegations," *Twombly*, 550 U.S. 544, only "facial plausibility" with "factual content that allows the court to draw the reasonable inference that the defendant is

8

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiffs' proposed pleading clearly meets this standard.

The proposed pleading alleges that Plaintiffs own defaulted bonds (Proposed Am. Compl. ¶¶ 25-26) and that Argentina has refused to pay on those bonds and judgments arising from those bonds, (*id.* ¶¶ 5, 28-29, 47, 65), has issued other External Indebtedness, including the Exchange Bonds and the BONAR 2024s, (*id.* ¶¶ 10-13, 35-36, 49-57), has paid its other External Indebtedness while continuing to pay Plaintiffs nothing, (*id.* ¶¶ 10, 12-13, 36-37, 44-45, 61-62, 64-65), and has impermissibly lowered the rank of its payment obligations to Plaintiffs in violation of paragraph 1(c) of the FAA, (*id.* ¶¶ 103, 104).  The Second Circuit has already affirmed this Court's determination that Argentina's payments on the Exchange Bonds breached the Equal Treatment Provision, *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 258-61 (2d Cir. 2012), and Argentina does not present any reason why issuing and making payment on other forms of External Indebtedness would not also breach the FAA.

Argentina nonetheless asserts that the claim fails to comply with Rule 8 because it does not identify "specific" External Indebtedness or "what exact relief plaintiffs seek or what relief the Court could grant." (Republic Br. at 13-14).  There is, of course, no requirement that the pleading contain such detailed allegations.  *See Twombly*, 550 U.S. at 555 (Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (other internal quotation marks omitted)).  But in all events, the proposed pleading describes the characteristics of External Indebtedness, (Proposed Am. Compl. ¶¶ 51-60), identifies two particular examples (the Exchange Bonds and the BONAR 2024 Bonds) (*id.* ¶¶ 35-36, 42, 49-60), and explains the type of relief sought:  "a mandatory injunction requiring

9

the Republic of Argentina to pay plaintiffs ratably whenever it pays interest to the holders of External Indebtedness." (*Id.* ¶ 105). See *Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128, 2010 WL 1924715, at *2 (S.D.N.Y. May 12, 2010) (denying motion to dismiss a contract claim because "*Twombly* and *Iqbal* do not require the pleading of specific evidence or extra facts beyond what is needed to make a claim plausible" (citation omitted)).

Argentina also complains that because the claim covers future External Indebtedness yet to be issued it lacks the necessary "specificity" for Rule 8 and "sufficient immediacy" to state a case or controversy under Article III. (Republic Br. at 14). Given that Argentina has made clear its desire to return to the international capital markets and its intention to issue more External Indebtedness (including more BONAR 2024s), its obdurate refusal to comply with its contractual obligations to Plaintiffs, and its now unequivocal refusal to negotiate with Plaintiffs, there is nothing hypothetical or speculative about Plaintiffs' claim for equal treatment with respect to all of Argentina's External Indebtedness. *Cf. Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013) (finding constitutional standing to pursue injunctive relief because it was "reasonable to infer" future harm based on allegations of past harm); *Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 492 (S.D.N.Y. 2013) (denying motion to dismiss breach of contract claim brought "before the time for performance has arisen"). Moreover, injunctive relief prohibiting future violations could be properly granted to remedy Argentina's ongoing violations, which are indisputably justiciable. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 290 (2d Cir. 2003) (affirming district court order enjoining future unlawful actions because "[c]ourts are free to assume that past misconduct is highly suggestive of the likelihood of future violations" (quotation marks and citation omitted)).

10

Because the proposed pleading gives the Republic "fair notice" and sets forth an actual "case and controversy," the claim for equal treatment with respect to all External Indebtedness is not futile.[4]

## II.
## ARGENTINA CANNOT SHOW PREJUDICE OR BAD FAITH

As even Argentina concedes, a motion pursuant to Federal Rule of Civil Procedure 15(a) should be freely granted absent extraordinary circumstances. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Argentina also acknowledges that "prejudice" is a touchstone for a finding of extraordinary circumstances, but all it can muster in this regard is that it would have to litigate the proposed claims, and the pendency of that litigation might impede its ability to raise more money. (Republic Br. at 21-22). Of course, Argentina faces no prejudice from having to litigate valid claims, and Argentina has only itself to blame for any collateral consequences on its capital markets activities.

The cases cited by Argentina make clear that none of the circumstances necessary to bar an amended pleading exist here. In those cases, the parties sought to amend after they had already lost or were on the brink of losing, *see State Trading Corp. of India, Ltd. v. Assuranceforenigen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990), *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 165-66 (S.D.N.Y. 1990), *Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp)*, 752 F.2d 1334, 1338 (9th Cir. 1984), *Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, No. 11 Civ. 1456 (THK), 2011 WL 6034481, at *8 (S.D.N.Y. Dec. 5, 2011), or the new claims, asserted after discovery was complete or on the eve of trial, would have delayed resolution of the litigation, *see Kanyi v.*

---

[4] Argentina repeatedly raises the red herring of multilateral IMF debt, which Plaintiffs previously agreed was not covered by paragraph 1(c) of the FAA. (Republic Br. at 2, 13, 19 & n.11). Plaintiffs' position has not changed, and the claims in the proposed pleading do not implicate such debt, so all of Argentina's arguments in that regard are beside the point.

11

*United States*, No. 99 Civ. 5851 (ILG), 2002 WL 1471648, at *2 (E.D.N.Y. May 3, 2002), *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir. 1983), *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). By contrast, Plaintiffs have prevailed on their claims and any responsibility for delay in resolution of this litigation lies squarely at Argentina's feet.

Argentina derides Plaintiffs' proposed pleading as "tactical" and suggests that Plaintiffs have agreed to forgo their contractual rights with respect to External Indebtedness other than the Exchange Bonds. (Republic Br. at 19-20). But Plaintiffs never made such a concession, and Plaintiffs acted entirely reasonably when, in the first instance, they sought relief limited to the Exchange Bonds in the hope that the Republic would comply with the injunction entered by the Court or at least negotiate with Plaintiffs. Argentina has done neither — indeed, it has affirmatively rejected all offers to negotiate — and Plaintiffs have therefore been left with no choice but to continue to pursue their contractual rights, especially in the face of Argentina's recent creation of additional External Indebtedness and continuing deliberate disregard and violation of its obligations under the Equal Treatment provision.[5]

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiffs' brief, the Court should grant Plaintiffs' Motion for Leave to Amend and Supplement the Complaints in these actions.

---

[5] Argentina complains about a press release issued by Aurelius Capital Management, LP to potential purchasers purportedly warning them that the BONAR 2024 Bonds were subject to the pari passu clause, (Republic Br. at 10, 21), but there is nothing inaccurate in the release ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12

3077193.1

Dated:   New York, New York
         June 8, 2015

                          Respectfully Submitted,

                          *Edward A. Friedman*

                          _____
                          Edward A. Friedman (efriedman@fklaw.com)
                          Daniel B. Rapport (drapport@fklaw.com)
                          Marc G. Farris (mfarris@fklaw.com)
                          FRIEDMAN KAPLAN SEILER
                             & ADELMAN LLP
                          7 Times Square
                          New York, New York  10036-6516
                          (212) 833-1100

                          *Attorneys for Plaintiffs Aurelius Capital Master, Ltd., ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, and Blue Angel Capital I LLC*

                          Robert A. Cohen (robert.cohen@dechert.com)
                          Dennis H. Hranitzky (dennis.hranitzky@dechert.com)
                          DECHERT LLP
                          1095 Avenue of the Americas
                          New York, NY 10036-6797
                          (212) 698-3500

                          *Attorneys for Plaintiff NML Capital, Ltd.*

                          Leonard F. Lesser (llesser@simonlesser.com)
                          SIMON LESSER PC
                          355 Lexington Avenue, 10th Floor
                          New York, New York 10017
                          (212) 599-5455

                          *Attorneys for Plaintiff Olifant Fund, Ltd.*