UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

NML CAPITAL, LTD.,

                    Plaintiff,

             - against -               14 Civ. 8601 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant.

---------------------------------------------------------------- X

NML CAPITAL, LTD.,

                    Plaintiff,

             - against -               14 Civ. 8988 (TPG)

THE REPUBLIC OF ARGENTINA,

                    Defendant.

---------------------------------------------------------------- X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE <u>MOTION BY NML CAPITAL, LTD. FOR SPECIFIC PERFORMANCE</u>

**DECHERT LLP**
Robert A. Cohen
Dennis H. Hranitzky
Jennings F. Durand (*pro hac vice*)
Mariel R. Bronen
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Plaintiff*
*NML Capital, Ltd.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      ARGENTINA DOES NOT DISPUTE THE LEGAL STANDARD OR THE FACTS THAT SHOW NML'S ENTITLEMENT TO SPECIFIC PERFORMANCE ........................................................................................................ 2

     A.      Argentina Does Not Dispute That NML Lacks an Adequate Remedy at Law for the Republic's Ongoing Breach of the Pari Passu Clause ....................... 2

     B.      The Balance of Equities Strongly Favors Specific Performance, and Argentina's Arguments Do Not Suggest Otherwise ............................................. 4

         1.      Equity favors giving NML the benefit of its contractually guaranteed rights under the Pari Passu Clause—a factor that Argentina does not dispute in its discussion of the equities ..................... 4

         2.      The requested injunction will not prejudice the Exchange Bondholders ................................................................................................ 5

         3.      Argentina can comply with the proposed injunction ................................. 6

     C.      The Public Interest Favors Entering NML's Proposed Injunction ....................... 9

         1.      The proposed injunction would not make sovereign debt restructurings more difficult .................................................................... 9

         2.      The proposed injunction would not impede settlement ........................... 11

II.      THE FSIA DOES NOT PROHIBIT NML'S REQUESTED INJUNCTION ................ 12

CONCLUSION .................................................................................................................. 14

i

# TABLE OF AUTHORITIES

**CASES**

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ..................................................................................................2

*Litwin v. OceanFreight, Inc.*,
   865 F. Supp. 2d 385 (S.D.N.Y. 2011)............................................................... 7-8

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
   75 F. Supp. 3d 592 ...................................................................................................7

*Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*,
   992 F.2d 430 (2d Cir. 1993) ...................................................................................2

*NML Capital, Ltd. v. Republic of Argentina*,
   No. 14 Civ. 8601, 2015 WL 3542535 (S.D.N.Y. June 5, 2015)...........................2, 5

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013) .................................. passim

*NML Capital, Ltd. v. Republic of Argentina*,
   727 F.3d 230 (2d Cir. 2013).......................................................................... passim

*Texas v. Mexico*,
   482 U.S. 124 (1987)...............................................................................................11

## PRELIMINARY STATEMENT

In the Memorandum of Law of the Republic of Argentina in Opposition to Motions in 45 Actions Seeking Specific Performance ("Opp'n"), Argentina does not, and cannot, dispute that its ongoing conduct violates the Pari Passu Clause[1] as interpreted by this Court and the Second Circuit.  Nor does the Republic dispute the legal standard for awarding specific performance or that NML has no adequate remedy at law for Argentina's ongoing contractual breach.

Instead, Argentina recycles its previously-rejected arguments that an injunction forcing it to comply with its Pari Passu obligations would cause some speculative harm to itself, to Exchange Bondholders, or to some vague notion of the public interest.  But this Court and the Second Circuit have already rightly determined that:  (1) the interest in protecting NML's contractual rights under the Pari Passu Clause outweighs any perceived harm to Argentina or the Exchange Bondholders (to whom Argentina has already defaulted on its obligations) and (2) issuing a Pari Passu injunction would not threaten future sovereign debt restructurings or cause any other harm to sovereign debt markets.

Argentina also argues that the immunity from attachment in aid of execution under the Foreign Sovereign Immunities Act ("FSIA") somehow forbids the requested injunction.  Again, that position has already been conclusively rejected by the Second Circuit, which correctly held that the FSIA has no relation whatsoever to an order requiring Argentina to honor its contractual promise to pay all of its creditors ratably if it chooses to pay any of them.

Because NML has satisfied the requirements for specific performance, an injunction should be issued to protect NML's rights under the Pari Passu Clause.

---

[1]     All defined terms from the August 14, 2015 Memorandum of Law in Support of Motion by NML Capital, Ltd. for Specific Performance ("NML Mem.") have the same meaning when used in this Reply Memorandum.

**ARGUMENT**

**I.   ARGENTINA DOES NOT DISPUTE THE LEGAL STANDARD OR THE FACTS THAT SHOW NML'S ENTITLEMENT TO SPECIFIC PERFORMANCE.**

Argentina does not challenge the legal standard for granting specific performance. *See* NML Mem. at 13 (citing *Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 473 (2d Cir. 1980); *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir. 1993); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  Specific performance is available where (1) there is no adequate monetary remedy for the contractual breach at issue; (2) the balance of the equities favors specific enforcement of the provision; and (3) the public interest favors the remedy.  *Id.*  The Second Circuit has already concluded that NML satisfied each of these standards in the Pre-Judgment Cases.  *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 246 (2d Cir. 2012) ("*NML I*"), *cert. denied*, 134 S. Ct. 201 (2013); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 230 (2d Cir. 2013) ("*NML II*").  Argentina fails to show that NML is not entitled to the same injunctive relief in the Post-Judgment Cases.

**A.   Argentina Does Not Dispute That NML Lacks an Adequate Remedy at Law for the Republic's Ongoing Breach of the Pari Passu Clause.**

Argentina does not, and cannot, dispute that its ongoing conduct violates the Pari Passu Clause of the FAA.  On June 5, 2015, the Court held that Argentina breached the Pari Passu Clause through its ongoing illegal course of conduct, which includes both creating a class of debt superior to that held by NML and also making, or attempting to make, payments on that preferred class of debt.  *NML Capital, Ltd. v. Republic of Argentina,* No. 14 Civ. 8601, 2015 WL 3542535, at *9 (S.D.N.Y. June 5, 2015).  Argentina does not dispute that it continues to engage in that illegal course of conduct.[2]

---

[2]       Unable to deny its ongoing violative conduct, Argentina instead clings to its already-rejected argument that the Pari Passu Clause is a meaningless, "boilerplate" provision

Nor does Argentina dispute that NML lacks an adequate remedy at law to compensate it for Argentina's ongoing breach of the Pari Passu Clause.  As this Court is well aware, NML's extensive efforts to enforce its existing money judgments against Argentina have shown "that monetary damages are an ineffective remedy" for any breach.  *See* NML Mem. at 14; *see also NML I*, 699 F.3d at 262 ("it is clear to us that monetary damages are an ineffective remedy for the harm plaintiffs have suffered as a result of Argentina's breach" of the Pari Passu Clause).  And Argentina does not dispute that Argentina's failure to rank its payment obligations under NML's bonds itself causes irreparable harm because it deprives NML of its contractually-guaranteed priority.  NML Mem. at 13.

Instead, Argentina tries to divert the Court's focus to an entirely separate argument:  that NML is inappropriately seeking to use the Pari Passu Clause to obtain an injunction that compels full payment of Argentina's debts.  That fundamental misunderstanding of the Pari Passu Clause is evident from the very first line of its preliminary statement when it states that the purpose of the Pari Passu injunctions is "to coerce . . . payment" of the defaulted debt.  Opp'n at 1.  That is wrong.  The promise of full payment is a separate promise—one that Argentina broke with its 2001 default.  In contrast, the Pari Passu Clause is Argentina's promise to treat its obligations under the 1994 FAA equally with its obligations on all other unsecured unsubordinated External Indebtedness, both in ranking and through ratable payments.  The Pari Passu Clause does not ensure that NML's bonds (or any other FAA bonds) will be paid in full—or paid at all.  What it does ensure is that *if* Argentina chooses to pay some of its External Indebtedness, Argentina will pay the same ratable share to NML and all other FAA Bondholders.  Argentina can comply with

---

that does not provide any material rights to NML.  *See, e.g.*, Opp'n at 3-4.  However, this Court and the Second Circuit have repeatedly rejected that position.  *See, e.g.*, *NML I*, 699 F.3d at 259.

the Pari Passu Clause even if it never pays NML one penny, as long as Argentina affords the same treatment to all holders of its External Indebtedness. That is the promise that Argentina has broken and continues to break to NML, and it is the breach of that promise that cannot be redressed with a remedy at law.

> **B.    The Balance of Equities Strongly Favors Specific Performance, and Argentina's Arguments Do Not Suggest Otherwise.**
>
> > 1.    Equity favors giving NML the benefit of its contractually guaranteed rights under the Pari Passu Clause—a factor that <u>Argentina does not dispute in its discussion of the equities.</u>

This Court and the Second Circuit have already recognized the importance of giving a party the benefit of its contractual rights and binding others to the agreements they have made. Cohen Decl. Ex. 2 (Amended February 23 Order) at 2-3 ("Absent equitable relief, [Plaintiff] would suffer irreparable harm because the Republic's payment obligations to [Plaintiff] would remain debased of their contractually-guaranteed status, and [Plaintiff] would never be restored to the position it was promised that it would hold relative to other creditors in the event of default."); *NML II*, 727 F.3d at 248 (recognizing that the concept that parties will be held to their mutually negotiated terms is "a proposition essential to the integrity of the capital markets"). The equities here further favor specific performance given Argentina's "unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to NML." Cohen Decl. Ex. 2 at 3.

In response, Argentina utterly ignores its ongoing violations of the Pari Passu Clause and its disregard for the orders of this Court and the Second Circuit. Rather, Argentina defiantly clings to its rejected interpretation of the Pari Passu Clause. The Republic persists in arguing that the Court's view is a "novel contract interpretation, never contemplated by either the lender or the borrowers," *see* Opp'n at 23, and it brazenly deems this Court's Amended February 23

Order "grossly inequitable", *id.* at 2.  Argentina does not dispute the concept that there is a vital public interest in enforcing contracts and in reassuring creditors that they can rely on United States courts to enforce debtors' promises; instead, it argues that there should be little or no weight given to enforcement of the now-settled interpretation of the Pari Passu Clause because Argentina still believes that interpretation to be "novel."  *Id.* at 23.  But NML is entitled to the Pari Passu rights as interpreted (correctly) by this Court and the Second Circuit.  The "essential" policy interest in favor of giving a party the contractual rights for which it bargained weighs heavily in favor of granting NML's motion for the Pari Passu injunction.  *See NML II*, 727 F.3d at 248.  Argentina's stubborn insistence that the Court wrongly interpreted the Pari Passu Clause—which further demonstrates its refusal to recognize, much less respect, the orders of this Court and the Second Circuit—is just more evidence that the Republic's continuing "disregard of its legal obligations exceeds any affront to its sovereign powers."  *NML I*, 699 F.3d at 263.[3]

      2.      <u>The requested injunction will not prejudice the Exchange Bondholders.</u>

Enjoining Argentina's ongoing Pari Passu violations will not unfairly harm the Exchange Bondholders.  That is because, under the Pari Passu Clause, the Exchange Bondholders have no right to be paid if FAA Bondholders like NML are spurned.  NML's Pari Passu rights protect against such unequal treatment, and there is nothing inequitable about an injunction that protects those rights.  Indeed, the Second Circuit has already rejected Argentina's argument that a Pari Passu injunction would be unfair to the Exchange Bondholders.  In *NML II*, the Second Circuit stressed that, "before accepting the exchange offers, [FAA Bondholders] were expressly warned

---

[3]     Argentina's ongoing course of illegal conduct, which includes legislation and official pronouncements lowering the rank of NML's bonds as well as attempted payments to other creditors in violation of the FAA and the orders of the Court, is yet another reason why the equities do not tip in Argentina's favor.  *See* NML Mem. at 9-12, 14-16; *NML Capital, Ltd. v. Republic of Argentina*, 2015 WL 3542535, at *3, *9.

by Argentina in the accompanying prospectus that there could be 'no assurance' that litigation over the FAA Bonds would not 'interfere with payments' under the Exchange Bonds." *NML II,* 727 F.3d at 242 (finding "no inequitable effect on the Exchange Bondholders").  In other words, the possibility of FAA Bondholders enforcing the Pari Passu Clause was a risk that the Exchange Bondholders assumed when they accepted their Exchange Bonds.

Argentina suggests that it will have to default if it is subject to an injunction that would require it to pay all Post-Judgment Plaintiffs if it wants to pay the Exchange Bondholders, but Argentina ignores that it has ***already*** chosen to default on the Exchange Bonds, as this Court has observed.  *See* Reply Declaration of Robert A. Cohen, dated October 9 ("Cohen Reply Decl.") Ex. 1 (*NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978, Hr'g Tr. (Aug. 1, 2014)) at 17:21-25.  Because Argentina has already defaulted on the Exchange Bonds, granting NML's motion for specific performance will not cause any new harm to the Exchange Bondholders or a catastrophe in the international market for sovereign debt.  Moreover, giving weight to this argument would reward Argentina for its bad behavior.  Even though this Court determined that the Republic had the "financial wherewithal" to meet its obligations in the Pre-Judgment Cases, *see NML II*, 727 F.3d at 242, 246), Argentina refused to pay anything to the Pre-Judgment Plaintiffs, refused to negotiate a settlement, and chose to default on the Exchange Bonds.

3.   Argentina can comply with the proposed injunction.

Argentina argues that specific performance may not be ordered because "compliance would be impossible" because it lacks sufficient resources to pay in full the "approximately $8 billion" owed to NML and similarly situated bondholders in the Pre-Judgment and Post-Judgment Cases."  Opp'n at 2, 13.  Argentina's premise is wrong.  Compliance with the Pari Passu Clause does not hinge on Argentina's ability to pay "in full."  The Pari Passu Clause does not provide a right to full or even partial payment, and NML's proposed order itself will not

6

require payment in full.  Rather, the promise at issue here is the promise to treat NML the *same*

as the Exchange Bondholders.  As the Second Circuit explained with respect to the Pre-Judgment

Plaintiffs' injunctions:

> Argentina can pay all amounts owed to its exchange bondholders provided it does
> the same for its defaulted bondholders.  Or it can decide to make partial payments
> to its exchange bondholders as long as it pays a proportionate amount to holders
> of the defaulted bonds.  Neither of these options would violate the Injunctions.
> The Injunctions do not require Argentina to pay any bondholder any amount of
> money[.][4]

*NML I*, 699 F.3d at 262-63.[5]  As was true with the Pre-Judgment Plaintiffs' injunctions,

Argentina can comply with the proposed injunction as long as it makes a ratable payment

---

[4]     Although Argentina suggests that it could use only its $33 billion in reserves to pay the
$6.15 billion at issue in the Post-Judgment Plaintiffs' claims, Opp'n at 13, Argentina's
reserves are not the only resources with which the Republic could service the debt.  As a
G-20 nation, with a *GDP of $540 billion*, Cohen Reply Decl. Ex. 12 (World Bank's Data
Report on Argentina available at: http://data.worldbank.org/country/argentina (last
accessed on October 9, 2015)), Argentina could use its foreign currency reserves, any of
its other numerous and vast assets locally or abroad (for example, it has a significant
stake in Yacimientos Petrolíferos Fiscales ("YPF")), or various other sources of income.
Indeed, one of Argentina's highest ranking officials recently acknowledged that reserves
are only one aspect of the Republic's ability to pay.  Cohen Reply Decl. Ex. 13 (Press
Release Oct. 6, 2015) (Argentina's Chief of Cabinet, Anibal Fernandez, asserting that
debts are not measured in relationship to reserves but rather to GDP and that Argentina is
in a "very comfortable" position at the moment because it has a "very small" debt in
comparison to its GDP).

[5]     This Court and the Second Circuit have already balanced the equities involved in this
matter and determined the propriety of an injunction enforcing the Pari Passu Clause.
Thus, the cases on which Argentina relies, concerning different facts and equitable
considerations, are irrelevant.  *See* Opp'n at 13 (citing *Marblegate Asset Mgmt. v. Educ.
Mgmt. Corp.*, 75 F. Supp. 3d 592, 609 (S.D.N.Y. 2014); *Litwin v. OceanFreight, Inc.*,
865 F. Supp. 2d 385, 401-02 (S.D.N.Y. 2011)).  Further, the cases cited by Argentina do
not support its position.  *Marblegate* denied injunctive relief that would have stopped a
critical restructuring of an entity that needed the restructuring to retain its eligibility for
government funding, where the plaintiff arguably would have *benefited* from the proposed
restructuring (and thus did not face any actual and imminent harm), and where
any potential harm would not have been irreparable.  75 F. Supp. 3d at 594-96, 604-09.
Similarly, *Litwin* determined that the plaintiff-shareholder was not likely to succeed on
the merits of his claims and was unlikely to suffer any irreparable harm at all.  865 F.

to NML when it pays the Exchange Bondholders—whether the payment percentage applied to both NML and the Exchange Bondholders is 100%, 75%, or some other percentage of what is owed to each.

Moreover, even if Argentina's ability to satisfy its debts were relevant, Argentina's conduct has unquestionably demonstrated that it can make payments on its debt when it chooses to do so—such as Argentina's October 2015 payment of nearly $6 billion to creditors, its February 2014 settlement with the Spanish oil company Repsol S.A. for $5 billion, and its May 2014 settlement with the Paris Club nations for $9.7 billion.  Cohen Decl. Ex. 2 ("Argentina Raises $669 Million in New Dollar Bond Sale," Reuters Oct. 6, 2015); Ex. 3 ("Repsol in $5 Billion Settlement with Argentina" New York Times Feb. 25, 2014); Ex. 4 ("Argentina Agrees to Pay $9.7 Billion to Paris Club" Wall Street Journal May 29, 2014).[6]  Argentina's insistence that it cannot pay Post-Judgment Creditors should be treated with great skepticism—especially coming from an entity that has so brazenly rebuked and misled the United States courts.  For example, Argentina first promised, in its petition for a writ of certiorari, that it would abide by the Pari Passu injunctions if they were upheld, Cohen Reply Decl. Ex. 5 (Reply Brief of Petitioner, No. 13-990 (U.S. May 27, 2013)) at 13, but then as soon as the Supreme Court denied the petition Argentina announced publicly that it had no intention of abiding by

---

Supp. 2d at 392-401 (also finding, not surprisingly, that the balance of equities did not favor entering an injunction).

[6]   Just as the Second Circuit noted in *NML II* that "Argentina failed to present the district court with any record evidence to support its assertions" that it could not pay the Exchange Bondholders and the Pre-Judgment Plaintiffs, Argentina again offers no support for its "cannot pay" assertions here.

the injunctions.  *See* Cohen Reply Decl. Ex. 6 (Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 civ. 6978 (TPG) (S.D.N.Y. June 20, 2014)).[7]

     **C.**     **The Public Interest Favors Entering NML's Proposed Injunction.**

Granting NML equitable relief will promote the public interest of enforcing contracts, a vital component "in maintaining New York's status as one of the foremost commercial centers." *NML II*, 727 F.3d at 248; *see also* NML Mem. 16-18.  In response, Argentina argues, *first*, that the proposed injunction would run afoul of international law and complicate future sovereign debt restructurings, and *second,* that an injunction would impair Argentina's ability and willingness to reach a settlement with the plaintiffs.  Neither line of argument withstands serious scrutiny, and certainly neither outweighs the strong public interest in enforcing contractual rights.

     1.     The proposed injunction would not make
                 sovereign debt restructurings more difficult.

The Second Circuit has already rejected Argentina's recycled contention that an injunction requiring ratable payments to enforce the Pari Passu Clause would somehow threaten future sovereign debt restructurings:

> [G]oing forward, sovereigns and lenders are free to devise various mechanisms to avoid holdout litigation if that is what they wish to do.  They may also draft different *pari passu* clauses that support the goal of avoiding holdout creditors.  If, in the future, parties intend to bar preferential payment, they may adopt language like that included in the FAA.  If they mean only that subsequently issued securities may not explicitly declare subordination of the earlier bonds, they are free to say so.  But none of this establishes why the plaintiffs should be barred from vindicating their rights under the FAA.

---

[7]     Further illustrating Argentina's lack of candor to this Court, counsel for Argentina insisted that it was willing to negotiate towards a good faith resolution, *see* Ex. 14 (*NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), Hr'g Tr. (S.D.N.Y. June 18, 2014) at 4:17-6:9; Ex. 15 (*NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), Hr'g Tr. (S.D.N.Y. Jul 22, 2014) at 50:24-51:2, but, in truth, Argentina obstinately refused.

*NML II*, 727 F.3d at 248.  The Second Circuit's prediction has been borne out in practice.

Despite Argentina's speculation of dire consequences resulting from a Pari Passu injunction,

there have already been successful restructurings since the Court entered the Pre-Judgment

Plaintiffs' Pari Passu injunction—including in Greece, Belize, Ukraine, and Grenada.  Cohen

Reply Decl. Ex. 7 ("Ukraine agrees 'win-win' debt restructuring deal," The Guardian Aug. 27,

2015); *Id.*, Ex. 8 ("Grenada Reaches Deal to Restructure $262 Million in Debt," Wall Street

Journal Apr. 9, 2015); Cohen Decl. Ex. 32 ("Sovereign Default Series: The Role of Holdout

Creditors and CACs in Sovereign Debt Restructurings," Moody's Investors Services Apr. 10,

2013).

      In an attempt to bolster its public policy argument, Argentina points to a non-binding

United Nations General Assembly resolution to suggest that compelling Argentina to live up to

the promise it made in the Pari Passu Clause would violate international law.  The non-binding

resolution, which was aggressively promoted by Argentina, and which the United States voted

against, does not carry the force of law and has no bearing on whether the Pari Passu Clause is

specifically enforceable.  Cohen Reply Decl. Ex. 9 ("Debt campaigners hail UN vote as

breakthrough," The Guardian Sept. 11, 2015).

      In any event, Argentina has failed to comply with the very same principles that it

promoted to the United Nations, including the requirement of the debtor to timely share data to

enhance accountability, participate in constructive negotiations, and honor the original contract

until it is changed by a formal agreement.  *See* Cohen Reply Decl. Ex. 10 ("What is Kicillof

celebrating?" El Cronista Sept. 25, 2015); Ex. 11 ("Doubts over potential 'anti-vulture'

legislation," Clarin Sept. 21, 2015).  Argentina has done none of those things with respect to

NML.

To the contrary, Argentina is unique in its defiance and its contempt for judicial orders. Argentina's academic and international sources fail to recognize that "specific performance is never demandable as a matter of absolute right, but as one which rests entirely in judicial discretion." *Texas v. Mexico*, 482 U.S. 124, 131 (1987). Other sovereigns can avoid a ratable payment injunction by declining to follow Argentina's deliberate and contumacious path, which displayed a "unique[ly] . . . unilateral and coercive approach to the debt restructuring." Cohen Decl. Ex. 32 ("Sovereign Default Series: The Role of Holdout Creditors and CACs in Sovereign Debt Restructurings," Moody's Investors Services Apr. 10, 2013); *see also NML II*, 727 F.3d at 247 ("this case is an exceptional one with little apparent bearing on transactions that can be expected in the future"; "Argentina's extraordinary behavior was a violation of the *pari passu* clause found in the FAA").

### 2.   The proposed injunction would not impede settlement.

Contrary to Argentina's argument, the proposed injunction will not "further complicate the situation" or drive the parties further from "a resolution." *See* Opp'n at 19. The biggest obstacle to settlement is Argentina itself—not any decision by this Court to order specific performance of the Pari Passu Clause. Argentina makes the laughable suggestion that it might have settled the Pre-Judgment Plaintiffs' claims, if only there had never been Pari Passu injunctions in those cases. *See* Opp'n at 1. But the simple fact is that, notwithstanding its occasional feinted suggestion that it might be willing to negotiate, Argentina has refused to negotiate with NML or (to NML's knowledge) any of the Post-Judgment Plaintiffs. *See NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978, Hr'g Tr. (Apr. 22, 2015) at 16:3-5 (Judge Griesa: "I hope the Republic at long last will be willing to negotiate."). This current recalcitrance is exactly the same behavior that Argentina's highest ranking officials exhibited while NML litigated the Pre-Judgment Cases. *See NML II*, 727 F.3d at 238 n.4 (President

Cristina Fernández de Kirchner:  Argentina will pay on the Exchange Bonds "but not one dollar to the 'vulture funds'"; Economy Minister Hernán Lorenzino:  "Argentina isn't going to change its position of not paying vulture funds.").

Argentina is wrong to argue that providing the same Pari Passu relief to these Post-Judgment Plaintiffs would "exacerbate the situation further," *see* Opp'n at 2, because Argentina has always refused to pay *any* creditors that rejected the Exchange Offers.  Whether a specific performance injunction benefits only a few plaintiffs (those in the Pre-Judgment Cases) or also Post-Judgment Plaintiffs, the situation is the same:  Argentina refuses to pay any creditor other than the Exchange Bondholders, and giving the same relief to Post-Judgment Plaintiffs like NML would not "exacerbate" Argentina's already demonstrated refusal to honor its Pari Passu promise or this Court's orders.  NML would most welcome meaningful settlement discussions with Argentina before the Special Master, but the Court should not let Argentina dictate the terms under which it would engage in such discussions.  Nor should the Court countenance the Republic's implication that it will boycott any potential settlement discussions if the requested Pari Passu injunction is issued.

## II.      The FSIA Does Not Prohibit NML's Requested Injunction.

Finally, Argentina argues that NML's proposed injunction is barred by the FSIA.  This argument is foreclosed by the Second Circuit's decision in *NML I*, which rejected Argentina's contention that the injunctions in the Pre-Judgment Cases were prohibited "attachments" under the FSIA.  *NML I*, 699 F.3d at 262 ("[B]ecause compliance with the Injunctions would not deprive Argentina of control over any of its property, they do not operate as attachments of foreign property prohibited by the FSIA.").

Section 1609 of the FSIA prohibits only "attachment[,] arrest[,] and execution" of sovereign property.  Each of these actions requires a court to exercise dominion or control over

sovereign property.  The Second Circuit found that the injunctions in the Pre-Judgment Cases

were "not barred by § 1609" because they did "not attach, arrest, or execute upon any property"

and that the injunctions could "be complied with without the court's ever exercising dominion

over sovereign property."  *NML I*, 699 F.3d at 262.

Argentina attempts to distinguish *NML I* because it concerned the Pre-Judgment Cases,

whereas NML has money judgments, but that is a distinction without a difference.  Here, the

proposed injunction—just like the injunctions in the Pre-Judgment Cases—would not require the

Court to exercise "dominion" over Argentina's property, nor would it "attach, arrest, or execute

upon" Argentina's assets, *id.*, despite Argentina's insistence that the injunction would be an

unlawful "attachment" because NML has been awarded money judgments on these bonds, *see*

Opp'n at 10-12.  NML's money judgments were issued to remedy Argentina's breach of its

promise to pay principal and interest, and NML will continue to seek to enforce its money

judgments for non-payment through the ordinary procedures.  In contrast, the proposed

injunction at issue here would remedy Argentina's breach of the Pari Passu Clause—a separate

contractual breach.  Indeed, Argentina could comply with the proposed injunction without

turning over any cash or property, and it could pay its creditors (if it so chose) with any property

it saw fit to use.  NML's proposed injunction thus is not a "judgment enforcement" device,

Opp'n at 10, and the FSIA presents no barrier to NML's proposed injunction.[8]

---

[8]     Because NML's motion and the requested injunction do not seek to enforce any
judgment, the cases Argentina cites regarding the limits of enforcement under the FSIA,
*see* Opp'n at 9-12, are irrelevant.  For the same reason, it is irrelevant for this motion
whether NML would be able to enforce its judgments against Argentina's central bank.
*See id.* at 13-17; *see also NML II*, 727 F.3d at 240-41 (stressing that Pre-Judgment
Plaintiffs' Pari Passu injunctions do not execute upon any property under the FSIA but
rather "allow Argentina to pay its FAA debts with whatever resources it likes.").

## CONCLUSION

For the foregoing reasons, the Court should specifically enforce the Pari Passu Clause by entering the Proposed Order requiring Argentina to pay NML ratably if and when it makes payment on the Exchange Bonds.

Respectfully submitted,

DECHERT LLP

October 9, 2015

By:   /s/Robert A. Cohen
Robert A. Cohen
robert.cohen@dechert.com
Dennis H. Hranitzky
dennis.hranitzky@dechert.com
Jennings F. Durand (*pro hac vice*)
jennings.durand@dechert.com
Mariel R. Bronen
mariel.bronen@dechert.com
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*